# 24-1421

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆ ◆

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

—against—

RICHARD STUART ROSS,

*Claimant-Appellant,*

COMPANY 1,

*Claimant,*

$4,183,402.74 IN U.S. CURRENCY, seized from Regions Bank account *1113 R.S. IOTA TRUST ACCT., $722,327.52 IN U.S. CURRENCY, seized from Regions General Ledger (GL) *200 BEARING COST CODE (CC) *300,

*Defendants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX FOR CLAIMANT-APPELLANT

STEPHEN RAIOLA
SANGYOON NATHAN PARK
KIBLER FOWLER & CAVE, LLP
500 Fifth Avenue, 12th Floor
New York, New York 10110
(917) 909-6350

ZIEN HALWANI
KIBLER FOWLER & CAVE, LLP
11100 Santa Monica Boulevard,
 Suite 360
Los Angeles, California 90025
(310) 409-0400

*Attorneys for Claimant-Appellant*

## STATEMENT REGARDING ORAL ARGUMENT

Appellant respectfully submits that oral argument would be helpful to the disposition of this appeal. This case presents important questions of law that are of precedential significance, including whether a civil forfeiture claimant is a prevailing party when he or she successfully recovers funds that the government has seized and tried to forfeit. In addition, the public has an interest in this case (as evidenced by the numerous Amici that will file briefs in support of Appellant) because it involves the government's knowing attempt to circumvent a federal statute and the unconstitutional seizure of innocent client funds from an attorney Interest on Trust Account ("IOTA") in violation of the Department of Justice's Asset Forfeiture Policy Manual.

# TABLE OF CONTENTS

INTRODUCTION ................................................................................1

JURISDICTIONAL STATEMENT ....................................................3

STATEMENT OF THE ISSUES.........................................................4

STATEMENT OF THE CASE.............................................................4

    A.    The History of Civil Forfeiture in America. ........................5

    B.    The Anti-Drug Abuse Act of 1986 and 18 U.S.C. § 984......................9

    C.    The Civil Asset Forfeiture Reform Act................................11

    D.    Factual History. ......................................................12

    E.    Procedural History.....................................................15

SUMMARY OF THE ARGUMENT ...................................................22

STANDARD OF REVIEW ................................................................25

ARGUMENT ....................................................................................26

I.    The District Court Should Have Awarded Ross Fees, Costs, and Interest. ...........................................................26

    A.    Ross Substantially Prevailed Within the Meaning of CAFRA. ..........27

    B.    The Multiple Claims Exception Does Not Apply...............................33

    C.    In the Alternative, The District Court Abused Its Discretion in Granting a Voluntary Dismissal Without Prejudice. ........................35

II.    The Government's Conduct in this Case Violated the Constitution. ...........42

    A.    The Prosecution of the Innocent Funds Under 18 U.S.C. § 984 for More than a Year Violated the Constitution. ................................43

    B.    The Default Judgment Violated the Constitution. .............................46

III.    The District Court's Certificate of Good Cause Ruling Was Erroneous.
.................................................................................................49

CONCLUSION ...........................................................................................53

# TABLE OF AUTHORITIES

## Cases

*Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*,
821 F.3d 352 (2d Cir. 2016) ...............................................46

*Bank Markazi v. Peterson*,
578 U.S. 212 (2016)...........................................................43

*Bennis v. Michigan*,
516 U.S. 442 (1996)...........................................................6

*Bobo v. Christus Health*,
227 F.R.D. 479 (E.D. Tex. 2005) .......................................41

*Boyd v. United States*,
116 U.S. 616 (1886)...........................................................5

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health &
Human Res.*,
532 U.S. 598 (2001)............................................. 22, 26, 28, 32

*Camilli v. Grimes*,
436 F.3d 120 (2d Cir. 2006) ............................... 25, 37, 38

*Cantrell v. Int'l Bhd. of Elec. Workers, AFL–CIO, Local 2021*,
69 F.3d 456 (10th Cir. 1995) ............................................33

*Colombrito v. Kelly*,
764 F.2d 122 (2d Cir. 1985) .................................... 38, 40

*Cone v. W. Va. Pulp & Paper Co.*,
330 U.S. 212 (1947)...........................................................38

*CRST Van Expedited, Inc. v. E.E.O.C.*,
578 U.S. 419 (2016) .............................................. 21, 27, 31, 32

*Culley v. Marshall*,
601 U.S. 377 (2024)............................................. 8, 17, 24, 45

iv

*Czyzewski v. Jevic Holding Corp.*,
580 U.S. 451 (2017)................................................................48

*Dattner v. Conagra Foods, Inc.*,
458 F.3d 98 (2d Cir. 2006) ....................................................25

*Doe v. Sch. Bd. Of Ouachita Parish*,
274 F.3d 289 (5th Cir. 2001) ................................................49

*Dufort v. City of New York*,
874 F.3d 338 (2d Cir. 2017) ..................................................51

*Envtl. Conservation Org. v. City of Dallas*,
307 Fed. App'x. 781 (5th Cir. 2008) ....................................29

*GFE Global Fin. & Eng'g Ltd. v. ECI Ltd. (USA), Inc.*,
291 F.R.D. 31 (E.D.N.Y. 2013)............................................39

*Goodyear Atomic Corp. v. Miller*,
486 U.S. 174 (1988)...............................................................28

*Goss v. Lopez*,
419 U.S. 565 (1975)...............................................................48

*Hardt v. Reliance Standard Life Ins. Co.*,
560 U.S. 242 (2010)...............................................................28

*Heien v. North Carolina*,
574 U.S. 54 (2014).................................................................49

*Henson v. Santander Consumer USA Inc.*,
582 U.S. 79 (2017).................................................................29

*Home Am. Credit, Inc. v. Investors Title Ins. Co.*,
199 F.R.D. 563 (E.D.N.C. 2001) ..........................................41

*Hudson Eng'g Co. v. Bingham Pump Co.*,
298 F. Supp. 387 (S.D.N.Y. 1969) .......................................37

*In re Terrorist Bombings of U.S. Embassies in E. Africa*,
552 F.3d 93 (2d Cir. 2008) ....................................................26

v

*Kwan v. Schlein*,
    634 F.3d 224 (2d Cir. 2011) .......................................................... 23, 25

*Leonard v. Texas*,
    137 S. Ct. 847 (2017) ..................................................................... 5, 6, 44

*Marine Midland Bank, N.A. v. United States*,
    11 F.3d 1119 (2d Cir. 1993) ....................................................................52

*Mastrio v. Sebelius*,
    768 F.3d 116 (2d Cir. 2014) ....................................................................25

*McCoy v. Goord*,
    255 F. Supp. 2d 233 (S.D.N.Y. 2017) ....................................... 30, 36

*Millea v. Metro-North R. Co.*,
    658 F.3d 154 (2d Cir. 2011) ....................................................................25

*O'Connor v. Pierson*,
    426 F.3d 187 (2d Cir. 2005) ....................................................................48

*Ohio Valley Envtl. Coal., Inc. v. Wheeler*,
    387 F. Supp. 3d 654 (S.D. W.Va. 2019)...............................................29

*Pacheco v. Serendensky*,
    393 F.3d 348 (2d Cir. 2004) ....................................................................45

*Paysys Int'l, Inc. v. Atos IT Servs. Ltd.*,
    901 F.3d 105 (2d Cir. 2018) ....................................................................40

*Pohl v. MH Sub I, LLC*,
    407 F. Supp. 3d 1253 (N.D. Fla. 2019) ...............................................40

*Silberstein v. Digital Art Solutions, Inc.*, No. 02-cv-8187,
    2003 WL 21297291 (S.D.N.Y. June 4, 2003) ....................................33

*United States Funds in the Amount of $9,800*,
    952 F. Supp. 1254 (N.D. Il. 1996) ........................................................52

*United States v. $107,702.66 in U.S. Currency*, No. 7:14-CV-00295-F,
    2016 WL 413093 (E.D.N.C. Feb. 2, 2016)..........................................39

vi

*United States v. $14,782 in U.S. Currency*, Case No. 2:13-cv-01096
(D. Nev. Apr. 29, 2015) .................................................................50

*United States v. $293,316 in U.S. Currency, More or Less*, No. 03-cv-
278, 2005 WL 2476270 (E.D.N.Y. 2005) ........................................34

*United States v. $3,148,884.40 U.S. Currency (Seized From Accounts
of Bital)*, 76 F. Supp. 2d 1063 (C.D. Cal. 1999).........................10, 53

*United States v. $4,183,402.74 in U.S. Currency*, 5:22-cv-138,
2023 WL 2329480 (N.D.N.Y. Mar. 2, 2023) ....................................4

*United States v. $70,670 in U.S. Currency*,
929 F.3d 1293 (11th Cir. 2019) .......................................................1

*United States v. Albertini*,
472 U.S. 675 (1985).........................................................................48

*United States v. Bailey*, No. 1:11-cr-10,
2012 WL 569744 (W.D.N.C. Feb. 12, 2012) ....................................47

*United States v. Bd. of Cnty. Comm'rs of Hamilton Cnty.*, No. 1:02-
cv-00107,
2005 WL 2033708 (S.D. Ohio Aug. 23, 2005) .................................30

*United States v. Brig Burdett*,
34 U.S. (9 Pet.) 682 (1835).............................................................5

*United States v. Certain Real Prop.*,
543 F. Supp. 2d 1291 (N.D. Ala. 2008)...........................................39

*United States v. Contents in Account No. 059-644190-69*,
253 F. Supp. 2d 789 (D. Vt. 2003) ..............................................9, 10

*United States v. Craig*,
694 F.3d 509 (3d Cir. 2012) .............................................................1

*United States v. Davis*,
648 F.3d 84 (2d Cir. 2011) ..............................................................33

vii

*United States v. Dougherty*,
486 F. App'x 621 (8th Cir. 2012) ............................................................1

*United States v. Funds Representing Proceeds of Drug Trafficking in
the Amount of $75,868.62*, 52 F. Supp. 2d 1160 (C.D. Cal. 1999) .....................10

*United States v. FXDD Account '7807*, No. 14-cv-00051,
2015 WL 1391935 (C.D. Cal. July 6, 2015).................................. 34, 47

*United States v. Ito*,
472 F. App'x 841 (9th Cir. 2012) ................................................ passim

*United States v. Jacobsen*,
466 U.S. 109 (1984)..............................................................................45

*United States v. James Good Real Prop.*,
510 U.S. 43 (1993)..................................................................................8

*United States v. Khan*,
497 F.3d 204 (2d Cir. 2007) ................................................... 1, 11, 31

*United States v. Minh Huynh*,
334 F. App'x 636 (5th Cir. 2009) .........................................................1

*United States v. One Lincoln Navigator 1998*,
328 F.3d 1011 (8th Cir. 2003) ..........................................................29

*United States v. Rajaratnam*,
719 F.3d 139 (2d Cir. 2013) ..............................................................26

*United States v. Thirty-Two Thousand Eight Hundred Twenty Dollars
and Fifty-Six Cents in U.S. Currency*, No. C13-4102,
2015 WL 3385003 (N.D. Iowa May 22, 2015) ...............................36

*United States v. Totaro*,
345 F.3d 989 (8th Cir. 2003) ............................................................45

*Waetzig v. Halliburton Energy Servs. Inc.*,
82 F.4th 918 (10th Cir. 2023) ...........................................................50

*Ysleta Del Sur Pueblo v. Texas*,
  596 U.S. 685 (2022) .................................................................28

*Zagano v. Fordham Univ.*,
  900 F.2d 12 (2d Cir. 1990) ......................................................37

**Statutes**

18 U.S.C. § 981 ................................................................... 9, 52

18 U.S.C. § 982 .......................................................................9

18 U.S.C. § 983 ................................................................ passim

18 U.S.C. § 984 ................................................................ 10, 30

28 U.S.C. § 2465(a) ........................................................... passim

28 U.S.C. § 2465(b)(1) ................................................ 1, 12, 26, 28

28 U.S.C. § 2465(b)(2)(C) ................................................... 26, 34

**Other Authorities**

Act of May 26, 1790, ch. 12, § 1, 1 Stat. 122 (repealed 1797) .................6

ALEXANDER HAMILTON, THE PAPERS OF ALEXANDER HAMILTON
  (Harold C. Syrett ed., digital ed. 2011) .....................................6

ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE
  INTERPRETATION OF LEGAL TEXTS (1st ed. 2012) ..............................28

BLACK'S LAW DICTIONARY (11th ed. 2019) ...........................................33

BLACK'S LAW DICTIONARY (12th ed. 2024) ................................. 39, 43, 50

Department of Justice, Asset Forfeiture Policy Manual (2021) ..................... 14, 44

Department of Justice, Asset Forfeiture Policy Manual (2023) ..........................10

H.R. 5484, 99th Cong., 100 Stat. 3207 (1986) .........................................9

H.R. Rep. No. 102–28, pt. 1 (1991) ...................................................9

H.R. Rep. No. 106-192 (1999) ................................................... 1, 11, 12, 39

Kevin Arlyck, *The Founders' Forfeiture*, 119 COLUM. L. REV. 1449 (2019) ................................................................................................ 6, 7

*Merriam-Webster Collegiate Dictionary* (10th ed. 1993) ............................... 28, 29

Stephen B. Herpel, *Toward a Constitutional Kleptocracy: Civil Forfeiture in America*, 96 MICH. L. REV. 1910 (1998) ....................................... 7, 8

*The Annals of Congress*, Twelfth Congress-Second Session, Volume 25 (1813) .................................................................................................. 7

**Rules**

Fed. R. App. P. 4(a)(1) ........................................................................... 3

Fed. R. App. P. 4(a)(4) ........................................................................... 3

Fed. R. Civ. P. 41(a)(2) ..................................................................... 33, 37

**Treatises**

9 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE (4th ed. 2024) .................................................................... 38

## INTRODUCTION

In 2000, Congress passed the Civil Asset Forfeiture Reform Act ("CAFRA") in response "to public outcry over the government's too-zealous pursuit of civil and criminal forfeiture." *United States v. Khan*, 497 F.3d 204, 208 (2d Cir. 2007). One of CAFRA's central aims was to give innocent property owners "the means to . . . make themselves whole after wrongful government seizures." H.R. Rep. No. 106-192, at 11 (1999). As a result, a "claimant [who] substantially prevails" in a civil forfeiture action may now recover attorneys' fees. 28 U.S.C. § 2465(b)(1).

Unfortunately, the government has come up with a tactic to circumvent CAFRA: voluntarily dismissing a case that has no merit, and then arguing that the owner has not substantially prevailed and is therefore not entitled to attorneys' fees. The Ninth Circuit has rejected this practice. *See United States v. Ito*, 472 F. App'x 841 (9th Cir. 2012). But other courts have allowed it. *See United States v. $70,670 in U.S. Currency*, 929 F.3d 1293 (11th Cir. 2019); *United States v. Craig*, 694 F.3d 509 (3d Cir. 2012); *United States v. Dougherty*, 486 F. App'x 621 (8th Cir. 2012); *United States v. Minh Huynh*, 334 F. App'x 636 (5th Cir. 2009). So the government now employs this tactic in any jurisdiction it can get away with it.

This case is the chance to put an end to this shameful practice in the Second Circuit. Appellant Richard Ross is a licensed Florida attorney who has no criminal history. JA167. But after he became the victim of fraud, the government seized his

1

entire Interest on Trust Account ("IOTA")—including funds that it admitted were "unrelated" to any crime (the "Innocent Funds"). JA378. Then, the government tried to forfeit those funds in violation of written Department of Justice ("DOJ") policy.

As a result of the government's actions, Ross had to litigate for over a year, spending over $100,000 in attorneys' fees to protect his property interests and those of his innocent clients. JA328. But as soon as Ross stated that he intended to move for summary judgment, the government moved for a voluntary dismissal.

Suspecting that the government was seeking a without-prejudice dismissal to later argue that Ross was not entitled to fees under CAFRA, Ross opposed the government's motion and instead requested (1) a judgment on the merits, (2) a with-prejudice dismissal, or (3) a dismissal that was conditioned on the payment of interest, costs, and attorneys' fees. JA258–83. In so doing, Ross warned the District Court that the government was attempting to circumvent CAFRA and argued that this alternative relief was necessary to avoid the resulting prejudice. JA271–77. Nevertheless, the District Court granted the motion, SPA3–22, and then held that Ross was not entitled to attorneys' fees because the dismissal was without prejudice. SPA26–28. Worse yet, the District Court granted a certificate of reasonable cause in doing so, even though the government lacked probable cause for this action.

For the reasons set forth below, the District Court's decision must be reversed. Ross is entitled to recover his attorneys' fees. The underlying prosecution and

default judgment that the government pursued were unconstitutional. And in light of these circumstances, no certificate of reasonable cause should have been issued.

## JURISDICTIONAL STATEMENT

The District Court had subject-matter jurisdiction over this case under 28 U.S.C. §§ 1331, 1345, 1355 because the action was initiated by the United States, *see* 28 U.S.C. § 1345, to pursue an in rem civil forfeiture, *see id.* § 1355, under a federal statute. *Id.* § 1331; *see also* JA11–20. This Court has jurisdiction over this appeal under 28 U.S.C. § 1291 because the judgment the District Court entered on March 6, 2023, JA8, (1) denying Ross's cross-motion for judgment on the pleadings, (2) granting the government's motion to dismiss the Innocent Funds, and (3) granting the government's motion to forfeit the remainder of the funds it had seized was a final decision that disposed of all the parties' claims.

Finally, this appeal is timely because Ross filed his appeal on May 17, 2024, which was within 60 days of the District Court's March 22, 2024 decision denying his timely motion for attorneys' fees and the District Court extended the time to appeal its judgment under Rule 58(e). JA8–10; Fed. R. App. P. 4(a)(4) (providing that "the time to file an appeal runs" from the District Court's order on attorney's fees "if the district court extends the time to appeal under Rule 58"); Fed. R. App. P. 4(a)(1)(B) (providing 60 days to appeal civil cases involving the United States).

## STATEMENT OF THE ISSUES

1.      Whether a civil forfeiture claimant who secures the return of property that the government has wrongfully seized is entitled to fees, costs, and interest.

2.      Whether the prosecution and forfeiture of "unrelated" victim funds under 18 U.S.C. §§ 981 and 984 violates the Constitution.

3.      Whether a district court abuses its discretion in granting a certificate of reasonable cause to prosecutors that knowingly try to forfeit innocent funds.

## STATEMENT OF THE CASE

Appellant Richard Stuart Ross is an attorney who has never been accused of criminal wrongdoing. But after he became a bank fraud victim, the government seized his entire IOTA—including funds belonging to Ross and his innocent clients that it admitted were "unrelated" to the subject fraud. JA378. Then, prosecutors unconstitutionally tried to forfeit those innocent funds in violation of DOJ policy.

Approximately a year after the government's seizure, Ross indicated that he intended to move for summary judgment. Knowing it could not prevail, however, the government moved for a voluntary dismissal without prejudice to undermine any subsequent motion for attorneys' fees. Over Ross's objection, the District Court (Sharpe, J.) granted the government's motion for a voluntary dismissal and a certificate of reasonable cause. *United States v. $4,183,402.74 in U.S. Currency*, 5:22-cv-138, 2023 WL 2329480 (N.D.N.Y. Mar. 2, 2023). Then, the District Court

4

(Scullin, J.) denied a subsequent motion for attorneys' fees on the grounds that the voluntary dismissal was without prejudice. SPA24–33. This appeal follows.

### A.     The History of Civil Forfeiture in America.

For the first 200 years of our history, the government couldn't seize victim funds that were "unrelated" to a crime through civil forfeiture. To the extent it was permitted, civil forfeiture was "limited to a few specific subject matters" where "the party responsible for the crime was frequently located overseas and thus beyond the personal jurisdiction of United States Courts." *Leonard v. Texas*, 137 S. Ct. 847, 849 (2017) (Thomas, J., statement regarding denial of certiorari). In addition, forfeiture "typically covered only the instrumentalities of the crime (such as the vessel used to transport the goods)." *Id.* (Thomas, J., statement regarding denial of certiorari).

During this early American history, the Supreme Court also indicated that forfeiture actions were quasi-criminal proceedings in which constitutional protections applicable to criminal defendants applied. *See, e.g.*, *United States v. Brig Burdett*, 34 U.S. (9 Pet.) 682, 690 (1835) ("The object of the prosecution against the Burdett is to enforce a forfeiture of the vessel . . . . This prosecution then is a highly penal one, and the penalty should not be inflicted, unless the infractions of the law shall be established beyond reasonable doubt."); *Boyd v. United States*, 116 U.S. 616, 633–634 (1886) ("We are . . . clearly of [the] opinion that proceedings instituted for the purpose of declaring the forfeiture of a man's property by reason of offenses

5

committed by him, though they may be civil in form, are in their nature criminal"). And to the extent that civil forfeiture was permitted, the forfeiture was *in rem* against the property under the theory that property was guilty of an offense, rather than *in personam* against the owner as punishment for a crime. *Leonard*, 137 S. Ct. at 849 (Thomas, J., statement regarding the denial of certiorari).

At the time of the Founding, *in rem* civil forfeiture did not require "proof of the owner's wrongdoing." *Bennis v. Michigan*, 516 U.S. 442, 454 (1996) (Thomas, J., concurring). But in 1790, Alexander Hamilton warned against "heavy and ruinous forfeitures" being imposed for infractions resulting from "inadvertence" and argued that a "discretionary power of granting relief" was "indispensable." Kevin Arlyck, *The Founders' Forfeiture*, 119 COLUM. L. REV. 1449, 1482-83 (2019) (quoting ALEXANDER HAMILTON, THE PAPERS OF ALEXANDER HAMILTON (Harold C. Syrett ed., digital ed. 2011)). Heeding that warning, Congress adopted the 1790 Remission Act, which afforded property owners the right to petition the Secretary of Treasury to have a civil forfeiture remitted on the grounds that the infraction justifying the forfeiture was not the result of "willful negligence or any intention of fraud." Act of May 26, 1790, ch. 12, § 1, 1 Stat. 122, 122–23 (repealed 1797). And the manner in which the first three Treasury Secretaries exercised this remission authority suggests that Founders understood remission to be constitutionally necessary if a property owner lacked fraudulent intent. Arlyck, *The Founders' Forfeiture*, 119 COLUM. REV.

6

at 1504-14; *The Annals of Congress*, Twelfth Congress-Second Session, Volume 25 at 1285 (1813) (reporting that the "Secretary of the Treasury . . . does not consider himself authorized to inflict the whole penalty, in cases where . . . there has been neither intention of fraud, or . . . willful negligence").

Overall, the Secretary of Treasury granted ninety-one percent of remission petitions under a very lenient standard. Arlyck, *The Founders' Forfeiture*, 119 COLUM. LAW. REV. at 1487-91. Consequently, individuals with a viable basis for challenging a forfeiture did not need to go to court, and courts didn't have much opportunity to evaluate the constitutional limits of *in rem* forfeiture. *Id*. at 1513-14.

Over time, civil forfeiture started to expand beyond customs, regulations, and war prizes. But initially, the courts curbed this expansion. Following the Civil War, for example, forfeiture expanded to state liquor prohibition statutes in which the government's standard of proof was a preponderance of the evidence, but courts struck down many of those statutes as unconstitutional. Stephen B. Herpel, *Toward a Constitutional Kleptocracy: Civil Forfeiture in America*, 96 MICH. L. REV. 1910, 1920-21 & n.41 (1998). And when civil forfeiture was first expanded at the federal level "outside the admiralty, revenue, and war power fields in any significant way" during "Prohibition in 1920," those forfeitures were affected under internal revenue law rather than criminal laws, until Prohibition was repealed in 1932. *Id*. 1922-23.

For the first 200 years of this nation's history then, civil forfeiture was hardly ever permitted. But "civil forfeiture gained new prominence in the 1980s, when the federal government began using it aggressively in the enforcement of laws prohibiting or regulating the possession or sale of controlled substances." *Id*. at 1923. The expansion was left largely unchecked, resulting in more than 150 new federal civil forfeiture statutes. *Id*. And unlike criminal statutes, where "the government must comply with strict procedural rules and prove the defendant's guilt beyond a reasonable doubt," those civil forfeiture statutes allow the government to "simply take the property and later proceed to a court to earn the right to keep it under a much more forgiving burden of proof." *Culley v. Marshall,* 601 U.S. 377, 395 (2024) (Gorsuch, J., concurring).

As Justice Thomas has noted for three decades and a majority of the Supreme Court noted this past term, the result is a jarring expansion of forfeiture beyond its historical origins that raises serious constitutional concerns. *See, e.g.*, *United States v. James Good Real Prop.*, 510 U.S. 43, 85 (1993) (Thomas, J., concurring in part and dissenting in part) (noting that "ambitious modern statutes and prosecutorial practices have all but detached themselves from the ancient notion of civil forfeiture."); *Culley*, 601 U.S. at 397 (Gorsuch, J., concurring) ("To my mind, the due process questions surrounding these relatively new civil forfeiture practices are many."); *id*. at 403-15 (Sotomayor, J., dissenting) (raising Due Process concerns).

8

**B.     The Anti-Drug Abuse Act of 1986 and 18 U.S.C. § 984.**

Amidst the broader expansion of forfeiture in the 1980s, Congress passed the Anti-Drug Abuse Act of 1986 to "to strengthen Federal efforts to encourage foreign cooperation in eradicating illicit drug crops and in halting international drug traffic." H.R. 5484, 99th Cong., 100 Stat. 3207 (1986) (enacted). As part of the Act, Congress adopted two new forfeiture statutes—18 U.S.C. §§ 981 and 982.

As amended, Section 981 is a civil forfeiture statute that permits the seizure and forfeiture of any property involved in or traceable to unlawful monetary transactions, *id.* § 981 (a)(1)(A), derived from criminal activity abroad, *id.* § 981(a)(1)(B), or derived from certain criminal offenses like computer, bank, or wire fraud. *Id.* § 981(a)(1)(C). Section 982, by contrast, is a criminal forfeiture statute that authorizes the forfeiture of any property in imposing a sentence on a person convicted of various criminal offenses, including money laundering.

Because Section 981 requires the government to "prove that the property is itself involved in, or is traceable to property involved in, a proscribed transaction," the statute contains a loophole through which criminal defendants can "zero-out their accounts by moving funds in and out of an account in order to avoid government seizure." *United States v. Contents in Account No. 059-644190-69*, 253 F. Supp. 2d 789, 792 (D. Vt. 2003) (cleaned up). So to avoid "reward[ing]" criminals "who contrive sophisticated shell games," H.R. Rep. No. 102–28, pt. 1, at 47 (1991), and

to "sidestep this 'zeroed out' loophole," *United States v. Funds Representing Proceeds of Drug Trafficking in the Amount of $75,868.62*, 52 F. Supp. 2d 1160, 1164 (C.D. Cal. 1999), Congress passed 18 U.S.C. § 984, which eliminates the traceability requirement for cash by providing that "any identical property found in the same place or account as the property involved in the offense that is the basis for the forfeiture shall be subject to forfeiture." 18 U.S.C. § 984(a)(2).

The DOJ has since recognized that the point of Section 984 is to target money launderers, not to seize innocent funds unconnected to any crime. As a result, the DOJ's Asset Forfeiture Policy Manual provides: "To avoid the seizure of untainted third party funds, prosecutors should not rely on the fungible property statute, 18 U.S.C. § 984, when seizing funds from CTA or IOLTA accounts." Department of Justice, Asset Forfeiture Policy Manual, p. 2-13 (2023). And courts have agreed: because the purpose of Section 984 is to cure the government's inability to identify the specific funds involved in the offense, "innocent funds are not forfeitable simply because they have been commingled with tainted funds," unless the innocent funds "have been used in some way to hide the nature of the tainted funds." *Contents in Account No. 059-644190-69*, 253 F. Supp. 2d at 799; *see also United States v. $3,148,884.40 U.S. Currency (Seized From Accounts of Bital)*, 76 F. Supp. 2d 1063, 1068 (C.D. Cal. 1999) (rejecting the government's efforts to use 984 in a case where the money it tried to seize was "identifiable").

10

### C.     The Civil Asset Forfeiture Reform Act.

Responding "to public outcry over the government's too-zealous pursuit of civil and criminal forfeiture," *Khan*, 497 F.3d at 208, Congress passed CAFRA in 2000. Significant reforms by CAFRA included the enactment of 18 U.S.C. § 983, which (1) gives the government the burden "to establish, by a preponderance of the evidence, that the property is subject to forfeiture," *id*. § 983(c), and (2) prohibits an "innocent owner's interest in property" from being "forfeited under any civil forfeiture statute." *Id*. § 983(d). But of particular relevance here, CAFRA also sought to reimburse property owners for the costs of wrongful forfeitures.

As an example of harrowing injustice, the House Report for CAFRA included the testimony of Billy Munnerlyn, the owner and operator of a successful air charter service. *See* H.R. Rep. No. 106-192, at 8 (1999). In 1989, the government seized one of Munnerlyn's planes, after he transported a client carrying drug money without Munnerlyn's knowledge. *Id*. Munnerlyn spent $85,000 on legal fees, selling his three other planes to fund the litigation to retrieve his plane. *Id*. The plane did return, but with severe damages from the government's search for drugs or other evidence. *Id*. But Munnerlyn could not sue the government because any claim he could have raised was barred by sovereign immunity. *Id*. Munnerlyn, in the end, declared bankruptcy. *Id*. at 9. No doubt informed by such horror stories, CAFRA enacted a provision which provides that a "claimant [who] substantially prevails" in a civil forfeiture

11

proceeding may recover interests, costs, and attorneys' fees, 28 U.S.C. § 2465(b)(1), in order to "to give owners innocent of any wrongdoing the means to . . . make themselves whole." H.R. Rep. No. 106-192, at 11 (1999).

### D. Factual History.

Richard Stuart Ross is sixty-five years old and has been licensed to practice law in Florida for nearly 40 years. JA167. He has never been the subject of disciplinary or criminal proceedings of any kind. *Id*. In July 2021, Ross received a communication regarding a potential new client in Mexico who purportedly needed an attorney to resolve a copyright infringement matter in the United States. *Id*. Believing that the representation was legitimate, Ross agreed to represent the client and spent several months trying to resolve the alleged dispute. *Id*.

In October 2021, Ross's purported client informed Ross that the dispute was resolved, and his business partner was to pay approximately $29 million dollars to resolve the alleged infringement. *Id*. Consistent with that representation, in early October 2021, Ross's bank confirmed the receipt of $29 million into his IOTA. *Id*. Then, Ross began receiving written wire transfer instructions from his client regarding disbursement of the settlement proceeds. *Id*.

At the time that the $29 million dollars was transferred into Ross's IOTA, his account contained the deposits of other clients. JA169. In addition, Ross sold his home for $1,201,310.25 on October 22, 2021, and represented himself in the

transaction. JA168. As a result, Ross deposited the sale proceeds into his IOTA as permitted by the Rules Regulating the Florida Bar. *Id*.

On October 26, 2021, Ross's bank, Regions Bank informed Ross of a possible fraud in connection with the $29 million that had been transferred into his IOTA— the first time that Ross received any such information. *Id*. The following day, Santander Bank informed Ross of potential fraud in connection with an account to which Ross had transferred settlement proceeds in accordance with his client's instruction. *Id*. As a result, Ross immediately directed Regions Bank to recall a $1.5 million wire transfer and prevented the fraudster from obtaining those funds. *Id*.

Unbeknownst to Ross at the time, on November 16, 2021, the government filed a warrant application to seize his entire IOTA. JA372–81. In that warrant application, the government acknowledged that it only had "probable cause to believe" that $2.9 million of the funds in Ross's IOTA were the "proceeds" of the fraud scheme, and that the other $1.2 million of the funds it was seizing were "unrelated" to the subject fraud. JA378. In addition, the government stated that an imposter with a different voice than Ross had telephoned Regions Bank trying to access Ross's IOTA, and that fraudsters often "trick third parties into serving as unwitting money mules." JA378–79. Nevertheless, the government moved to seize the entire IOTA under 18 U.S.C. §§ 981 and 982 on the grounds that Ross "*may be involved in the scheme under investigation.*" JA379 (emphasis added).

13

Around January 2022, Ross learned that his IOTA had no funds in it. JA169. As a result, Ross contacted the government, which confirmed the seizure of his entire IOTA, including (1) $11,802.86 in deposits from other clients having nothing to do with the subject fraud, and (2) the $1,201,310.25 Ross received from the sale of his home which also had nothing to do with the subject fraud. *Id.* Ross then advised the government that the seized funds included the proceeds from the sale of his home as well as the funds of several other clients who had nothing to do with the alleged fraud. *Id.* In support, Ross provided the HUD-1 from the sale of his home, *id.*, which was confirmed by Regions Bank. JA364.

Despite possessing documents evidencing that Ross's IOTA had over $1.2 million in innocent funds that were "unrelated" to any fraud, the government filed an action to forfeit the full $4,183,404.74 it had seized from Ross's IOTA, including the Innocent Funds. JA11–20. In so doing, the government never accused Ross of wrongdoing. Instead, it invoked 18 U.S.C. § 984 and maintained that all the funds contained in Ross's IOTA —including the "unrelated" funds—were forfeitable as proceeds "of violations of Title 18, United States Code, Sections 1343 (wire fraud), 1030 (computer fraud), 1956(a) and (h) (money laundering) and 1957 (engaging in monetary transactions in property derived from specified unlawful activity)" in violation of DOJ policy governing Section 984. JA11–12; *see also* Department of Justice, Asset Forfeiture Policy Manual, Section 5(D) (2021) ("To avoid the seizure

14

of untainted, third party funds, prosecutors should not rely on the fungible property statute, 18 U.S.C. § 984, when seizing funds from CTA or IOLTA accounts.").

### E.    Procedural History.

Following the filing of the government's complaint, Ross filed a verified claim to $1,213,113.11 of the seized funds, asserting that $1,201,310.25 of the funds seized consisted of proceeds from the sale of his home and that $11,802.86 of the funds consisted of client deposits. *See* JA25–27. Then, Ross filed a petition to release his property under 18 U.S.C. § 983(f). JA28–30. Notwithstanding the fact that 18 U.S.C. § 983(f) entitles the claimant "to *immediate release* of seized property," *id.* (emphasis added), the District Court let a year go by without addressing his petition. JA1–10. At that point, it simply dismissed his petition as moot. SPA20–21.

After Ross filed the petition to release property and verified claim, Company 1, another victim of the fraud scheme that had transferred funds into Ross's IOTA without Ross's authority or knowledge, filed a second verified claim. JA47–50. In its claim, Company 1 stated that it was "an innocent owner" that had "an interest in all the funds in the Subject Accounts," JA49, which meant that none of the IOTA funds could be forfeited. 18 U.S.C. § 983(d) ("An innocent owner's interest in property shall not be forfeited under any civil forfeiture statute"). But rather than making a claim to all the money the government has seized, Company 1 purported to limit its claim to the Innocent Funds, *i.e.* the same $1,213,113.11 over which Ross

15

asserted a claim. JA47–49. Company 1 stated it was "not filing a claim to the $3,692,617.15" to "enable the Government to file a motion for a partial default judgment" and would instead seek the recovery of those funds through a post-forfeiture remission petition. JA49.

With Company 1's verified claim, two different parties—Ross and Company 1—had lodged two claims totaling $2,426,226.22 against the $4.9 million that the government had seized. But instead of moving to default $2.5 million and paying out both $1.2 million claims, the government treated Company 1's claim as limited to the same exact $1,213,113.11 as Ross's claim and moved for the entry of default as to $3,692,617.15 of the defendant currency. JA92–95. By doing so, the government acted inconsistently with its entire case: despite relying on 18 U.S.C. § 984 to argue that the entire IOTA needed to be treated as one interchangeable pot of money, the government was now maintaining that Company 1 could identify a specific $1,213,113.11 and limit its claim to those specific funds.

Suspecting that the government sought the partial default so that it could later try to oppose a motion for attorneys' fees under 28 U.S.C. § 2465(b)(2), Ross opposed the motion, maintaining that the government failed to meet its "burden to establish that any of the seized funds are subject to forfeiture." JA99. In the alternative, Ross argued that any default should be limited to $2,479,504.04 of the seized funds—rather than $3,692,617.15—given the presence of two claims for

$1,213,113.11 that "allege different sources of the funds and could entitle both claimants to a combined $2,426,226.22." JA101. Finally, Ross argued that the requested default judgment was unconstitutional. *Id*.

Despite the serious constitutional issues Ross had raised, the District Court once again sat on Ross's constitutional arguments for over a year. Then it entered a default judgment without resolving them. SPA9.

On June 6, 2022, Ross served a limited set of discovery requests on the government. JA136. But instead of responding to those requests, the government sought an indefinite stay maintaining that "engaging in civil discovery . . . will severely interfere with its continued criminal investigation." *Id*. Ross opposed the government's stay and requested a hearing to ask what justification the government had for continuing to seize the $1.2 million that belonged to Ross and his innocent clients. JA152–58. In support, he argued that the government's "justification for the stay—that it needs to investigate—underscores the wrongful nature of the initial seizure and the lack of probable cause." JA155. In addition, Ross argued that there was no basis for the stay and that depriving him "of any opportunity for a hearing on the seizure of his assets for an indefinite period is unconstitutional." JA157.

Ross's constitutional challenge mirrored that raised a year later in a successful cert petition that led to the Supreme Court's decision in *Culley v. Marshall*, 601 U.S. 377 (2024). But despite the serious constitutional issues raised,

the District Court granted an indefinite stay and denied Ross's request for a hearing in a three-sentence order that contained no reasoning. SPA1.

Several months into the stay, Ross decided to withdraw his propounded discovery and move to lift the stay so he could "move for summary judgment, and/or a hearing." JA236. By then, more than one year had passed since the government seized the Innocent Funds. In response, the government abruptly moved to voluntarily dismiss the case, stating that it "decided to seek dismissal of the forfeiture proceedings" against the Innocent Funds "[u]pon review of information and documentation obtained in this matter." JA245. But the government renewed its request that the Court direct the Clerk's Entry of Default as to everything but the Innocent Funds. JA245–46. In addition, the government requested a certificate of reasonable cause as to the seizure and arrest of the Innocent Funds. JA246.

In response to the government's motion, Company 1 joined the government's request for an entry of default of all but the Innocent Funds and asked the District Court to convert the forfeiture action against the Innocent Funds into an interpleader action. JA288–301. Ross, on the other hand, opposed the government's dismissal motion and filed a cross-motion for judgment on the pleadings. JA253–83. In his cross-motion and opposition, Ross argued that because the voluntary dismissal was filed in response to Ross's stated intention of moving for summary judgment, it represented a strategic effort to avoid an unfavorable judgment on the merits, and

18

that the Court should instead grant Ross judgment in his favor. JA265–68. But in the event the District Court was not inclined to grant Ross's cross-motion for judgment on the pleadings, Ross requested that the Court grant the Plaintiff's motion to dismiss in part and deny in part for three reasons. JA268–77.

*First*, Ross argued that the government's proposed partial default and partial dismissal was unconstitutional because all of the funds seized by Plaintiff were from Ross and Company 1, and "there is no indication that forfeiting assets from the Defendant's victims, rather than from the target or his proxies, was ever contemplated, by any civil forfeiture statute." JA269 (cleaned up). In the alternative, Ross argued that even if a partial forfeiture were proper, two different parties had filed claims totaling $2,426,226.22, thereby requiring the government to pay out both claims prior to moving for a default. JA270.

*Second*, Ross argued that the government's "proposed dismissal *without prejudice* [was] inappropriate because it pose[d] a distinct risk of legal prejudice to Ross, specifically, the loss of his statutory right to attorneys' fees, costs, and interest under 28 U.S.C. § 2465." JA271 (emphasis in original). In support of this argument, Ross noted that Congress enacted CAFRA to ensure his recovery of attorneys' fees, and that the government could not re-file his claim because the statute of limitations for re-filing any claim had expired. JA271–77. By seeking dismissal without prejudice, however, Ross argued, the government was trying to set "itself up to argue

19

that Ross is not entitled to fees under CAFRA." JA271. Ross accordingly requested that the Court either dismiss the complaint "*with prejudice*," JA274, or condition the government's "dismissal without prejudice on an award of fees, costs, and interest," to avoid any prejudice to Ross. JA275.

*Third*, Ross opposed the government's request for a certificate of reasonable cause on the grounds that it did not have probable cause to support the seizure at the time the forfeiture proceeding was initiated. JA277–80. In addition, Ross pointed out that a certificate of reasonable cause could not issue under the plain text of CAFRA if the government obtained the voluntary dismissal it sought, because 28 U.S.C. § 2465(a)(2) requires "the entry of a judgment for claimant." JA279–80.

On March 2, 2023, the District Court ruled on the government's motion to voluntarily dismiss the case without prejudice. It granted Ross's motion to lift the stay as unopposed and then overruled Ross's objection against partial default, finding that Ross lacked standing to contest the default. SPA8–9. Then, the District Court denied Ross's motion for judgment on the pleadings as well as Company 1's request to convert the case to an interpleader action and granted the government's requests for a voluntary dismissal and a certificate of reasonable cause. SPA9–21.

As to the voluntary dismissal, the District Court found that a dismissal without prejudice was appropriate because "Ross's inability to seek attorney's fees does not constitute plain legal prejudice." SPA17. The District Court also rejected "Ross's

request to condition the without prejudice dismissal on an award of attorney's fees" without any explanation and denied Ross's petition for release of the contested funds and cross-motion for judgment on the pleadings as moot. SPA17–21.

The District Court entered judgment in this case on March 6, 2023, SPA22, prompting Ross to file a timely motion for attorneys' fees, costs and interest under CAFRA on March 16, 2023. JA321–37. But as Ross predicted, the government argued that he was not entitled to fees because the dismissal was without prejudice. JA345–49. In addition, the government invoked the multiple claims exception of 28 U.S.C. § 2465(b)(2)(C) to oppose his request for fees. JA349–50.

On reply, Ross pointed out that the government's arguments were wrong because the Supreme Court's decision in *CRST Van Expedited, Inc. v. E.E.O.C.*, 578 U.S. 419 (2016) controlled the determination of whether he was a prevailing party and established his entitlement to fees. JA354–56. In addition, Ross argued that the multiple claims exception did not apply and that if the government was right that Ross was not entitled to fees, that would merely require the District Court "to reexamine its dismissal order by proving that" the court's "failure to resolve this case on the merits or condition the Plaintiff's dismissal by making it with prejudice or contingent on the payment of fees" prejudiced Ross. JA356–58.

Later, Ross moved the District Court to reconsider its order granting the government's certificate of reasonable cause, based on newly discovered evidence

21

showing that his bank had informed the Secret Service that "over one million dollars of the money it seized related to the proceeds of the sale of his home that [had] nothing to do with the fraud giving rise to the Government's seizure." JA361. In response, the government admitted that it had seized "unrelated" funds from the sale of Ross's residence but maintained that this information was not new because the government had disclosed it in its initial sealed seizure warrant. JA370-71.

The District Court subsequently denied Ross's motion to reconsider the certificate of reasonable cause and Ross's request for attorney's fees. SPA24–33. In doing so, however, the District Court completely failed to acknowledge the Supreme Court's *CRST* decision whatsoever. Instead, it relied exclusively on cases invoking an earlier Supreme Court decision—*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001)—and held that Ross had not substantially prevailed because the government's voluntary dismissal did not alter the legal relationship between the parties. SPA26–28. Then, the District Court held that the multiple claims exception to CAFRA—28 U.S.C. § 2465(b)(2)—also barred Ross's claims for fees. SPA28–29. This timely appeal follows. JA382–83.

## SUMMARY OF THE ARGUMENT

I.     This Court should reverse either the District Court's finding that Ross was not entitled to fees, costs, and interest under CAFRA, or the District Court's grant of the government's motion for a voluntary dismissal without prejudice,

22

because Ross was entitled to recover his fees, costs, and interest as an innocent victim of a wrongful forfeiture action. Contrary to the District Court's ruling, Ross was entitled to fees, costs and interest under CAFRA because he substantially prevailed against the government by recovering his entire claim, and the multiple claims exception to CAFRA does not apply because the government did not prevail on either Ross or Company 1's supposedly competing claims. And even if the District Court was correct that Ross were not entitled to fees under CAFRA, that would simply mean that the District Court abused its discretion in permitting a voluntary dismissal that resulted in "plain legal prejudice" to Ross by depriving him of his statutory right to fees, costs, and interest. *Ito*, 472 F. App'x at 841-42; *Kwan v. Schlein*, 634 F.3d 224, 230 (2d Cir. 2011) (holding that dismissal without prejudice is "improper if the defendant would suffer some plain legal prejudice other than the mere prospect of a second lawsuit") (cleaned up). In that instance, Ross is still entitled to his fees, costs, and interest after this Court corrects the District Court's abuse of discretion by instructing the District Court to enter into a with-prejudice dismissal, or a judgment in Ross's favor, or to condition its without-prejudice dismissal on the payment of fees, costs, and interest.

II.     In addition to ruling that Ross is entitled to his fees, costs, and interest, this Court should hold that the proceedings below violated Ross's constitutional rights. Having correctly argued that the government's reliance on 18 U.S.C. § 984

23

to try to forfeit "unrelated" victim funds was unconstitutional, Ross was entitled to the dismissal of this case in the early stages of the proceeding. But because the District Court granted an indefinite stay instead of ruling on those issues, Ross was needlessly deprived of his constitutional rights, including his Due Process right to a "*timely* post-seizure forfeiture hearing." *Culley*, 601 U.S. at 384. And the partial default of victim funds that the government sought in this case was unconstitutional as well, because it interjected arbitrariness into these proceedings and was expressly prohibited by Congress. *See* 18 U.S.C. § 983(d)(1) (providing that an "innocent owner's interest in property shall not be forfeited under any civil forfeiture statute.").

III.    Finally, this Court should reverse the District Court's finding that the prosecutors were entitled to a certificate of reasonable cause. Lacking probable cause to initiate a criminal action against Ross, the government necessarily lacked probable cause to believe that it could succeed in forfeiting the "unrelated" funds of an innocent owner, Ross, at either the time it seized the funds or the time that it initiated this action. And even if it did have probable cause for its actions, a certificate of reasonable cause was prohibited by the plain text of CAFRA, which provides that a certificate could issue only "[u]pon the entry of [the] judgment for the claimant" that the government wrongfully prevented Ross from obtaining by perpetrating the gamesmanship it engaged in to try and circumvent the fee shifting provision of CAFRA. 28 U.S.C. § 2465(a).

24

**STANDARD OF REVIEW**

This Court exercises de novo review over a district court's determination on whether a litigant is entitled to fees under a fee–shifting statute. *See Mastrio v. Sebelius*, 768 F.3d 116, 120 (2d Cir. 2014) ("Because it is a legal question, we review *de novo* a district court's determination that a plaintiff is a 'prevailing party' under the EAJA."); *Dattner v. Conagra Foods, Inc.*, 458 F.3d 98, 100 (2d Cir. 2006) ("Whether a litigant is a prevailing party within the meaning of Rule 54(d) constitutes a question of law warranting *de novo* review." (cleaned up)). By contrast, "[t]his Court reviews a decision to dismiss without prejudice pursuant to Fed. R. Civ. P. 41(a)(2) for abuse of discretion." *Camilli v. Grimes*, 436 F.3d 120, 123 (2d Cir. 2006). But dismissal without prejudice is "improper if the defendant would suffer some plain legal prejudice other than the mere prospect of a second lawsuit." *Kwan*, 634 F.3d at 230 (cleaned up). And a "district court abuses its discretion if it (1) bases its decision on an error of law or uses the wrong legal standard; (2) bases its decision on a clearly erroneous factual finding; or (3) reaches a conclusion that . . . cannot be located within the range of permissible decisions." *Millea v. Metro-North R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011).

Whether a certificate of reasonable cause may issue depends on whether the government has reasonable or probable cause to believe that the property it seized is subject to forfeiture. 28 U.S.C. § 2465(a)(2). This Court reviews "for 'clear error'

the factual findings that underpin a district court's assessment of probable cause" but reviews "de novo whether a set of facts satisfies the probable cause standard." *United States v. Rajaratnam*, 719 F.3d 139, 153 (2d Cir. 2013) (cleaned up).

Finally, this Court reviews "a district court's conclusions of law, including those involving constitutional questions *de novo*." *In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 93, 135 (2d Cir. 2008) (cleaned up).

## ARGUMENT

### I. The District Court Should Have Awarded Ross Fees, Costs, and Interest.

After recovering his full $1,213,113.11 claim from the government, Ross moved for attorneys' fees, costs, and interest under CAFRA, which provides that the United States is liable for "reasonable attorney fees and other litigation costs reasonably incurred by the claimant" and "post-judgment interest" in "any civil proceeding to forfeit property under any provision of Federal law in which the claimant *substantially prevails*." 28 U.S.C. § 2465(b)(1) (emphasis added). The District Court, however, ruled that Ross could not seek attorneys' fees because the government's dismissal without prejudice deprived him of "prevailing party" status under *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001). SPA26–27. In the alternative, the District Court concluded that Ross's request for interest, costs, and fees was barred by 28 U.S.C. § 2465(b)(2)(C), which disallows claims for attorneys' fees, costs, and interest when "there are

multiple claims to the same property" and the government "prevails in obtaining forfeiture with respect to one or more of the claims." SPA28.

The District Court is incorrect. Under CAFRA and *CRST Van Expedited, Inc. v. E.E.O.C.*, 578 U.S. 419 (2016), *Buckhannon* has no application here. Even if it did, Ross is a prevailing party under *Buckhannon*, and the multiple claims exception does not apply in this case. And even if Ross wasn't a prevailing party, that would simply make the voluntary dismissal that the District Court awarded an abuse of discretion due to the District Court's failure to make the dismissal with prejudice or conditioned on the payment of Ross's attorneys' fees. *Ito*, 472 F. App'x at 841-42 (holding that a district court had abused its discretion by allowing the government seek a dismissal without prejudice in a civil forfeiture action). Under any circumstances then, the District Court must be reversed.

### A. Ross Substantially Prevailed Within the Meaning of CAFRA.

In the proceedings below, the District Court acknowledged that "by voluntarily withdrawing the action as to the [Innocent] Funds, the government is conceding that the [Innocent] Funds are not forfeitable." SPA14. Nevertheless, the District Court held that Ross was not entitled to attorneys' fees because the dismissal was without prejudice and therefore did not result in the "material alteration of the legal relationship of the parties" that is necessary in order for a party to "qualify as a 'prevailing party' in the context of a fee-shifting statute." SPA26 (citing cases

27

relying on *Buckhannon Care Home, Inc. v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598 (2001)). That analysis is wrong for three reasons.

*First*, the District Court's analysis ignored the plain text of CAFRA. Rather than awarding attorneys' fees to *prevailing parties* like other fee-shifting statutes, the plain text of 28 U.S.C. § 2465(b)(1) awards fees to any party that "*substantially prevails*." Under basic canons of statutory construction, this Court must "presume that Congress is knowledgeable about existing law pertinent to the legislation it enacts." *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 185 (1988); s*ee also* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 252-55 (1st ed. 2012) (discussing the related-statutes cannon). As a result, there is a presumption "differences in language like this convey differences in meaning." *Ysleta Del Sur Pueblo v. Texas*, 596 U.S. 685, 689 (2022) (cleaned up); *see also Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 253 (2010) (examining the different standards statutes proscribe for awarding fees and treating a "prevailing" and "substantially prevailing" standard differently).

In its decision, the District Court glossed over the difference in language between "prevailing party" and "substantially prevails." But unlike a party that prevails without qualification, a party that "*substantially* prevails" need not *fully* or *wholly* prevail. *Merriam-Webster Collegiate Dictionary* 1174 (10th ed. 1993) (defining "substantially" as "largely but not wholly that which is specified."). In

28

addition, the word "substantially" means "consisting of or relating to substance." *Id*. As a result, the test for attorneys' fees under § 2465(b)(1) sets a lower bar than the prevailing party standard that the District Court applied insofar as it directs courts to look to the substance of the result to assess whether the claimant has "largely" prevailed—even if that is not "wholly" true procedurally.[1] *See Envtl. Conservation Org. v. City of Dallas*, 307 Fed. App'x. 781, 784 (5th Cir. 2008) (holding that the phrase "substantially prevailing party" reduces "the degree to which" a party must prevail); *Ohio Valley Envtl. Coal., Inc. v. Wheeler*, 387 F. Supp. 3d 654, 658 (S.D. W.Va. 2019) ("[I]t is apparent that the Court intended to distinguish 'prevailing' from 'substantially prevailing' statutes and limit the application of *Buckhannon* to those statutes where fees are only available to the former category." ); *United States v. Bd. of Cnty. Comm'rs of Hamilton Cnty.*, No. 1:02-cv-00107, 2005 WL 2033708,

---

[1] Statutory context and legislative history confirm this interpretation of CAFRA. Under 28 U.S.C. § 2465(a), for example, the government must return property "[u]pon the entry of judgment." But Section 2465(b) orders the payment of fees to a party that "substantially prevails" as opposed to a party that obtained a "judgment", confirming that Congress intended for the availability of fees, costs, and interest to turn on the substance of the result achieved in the litigation rather than the entry of a "judgment." *Henson v. Santander Consumer USA Inc.,* 582 U.S. 79, 86 (2017) ("[W]hen we're engaged in the business of interpreting statutes we presume differences in language like this convey differences in meaning."). And the entire purpose of the statute was to make innocent property owners "whole after wrongful government seizures," which turns on the wrongfulness of the government's seizure rather than the manner in which the property is returned. *United States v. One Lincoln Navigator 1998*, 328 F.3d 1011, 1012 n.1 (8th Cir. 2003).

at *4 (S.D. Ohio Aug. 23, 2005) (holding that it "logically follows that to 'substantially prevail' a party would need to obtain a somewhat lesser degree of relief than if they were to 'prevail.'").

There is no question that the tangible results of the litigation show that Ross not just "largely" or "substantially" prevailed, but in fact "completely" prevailed. The case started with the Innocent Funds in possession of the government. It ended with the Innocent Funds in Ross's possession. The District Court recognized that "the government [had] conced[ed] that the Contested Funds are not forfeitable." SPA14. And because the statute of limitations for a Section 984 claim had expired by the time the government sought voluntary dismissal, the effect of the dismissal was a with–prejudice dismissal, because no further action could be refiled. *McCoy v. Goord*, 255 F. Supp. 2d 233, 252 (S.D.N.Y. 2017) (holding "a dismissal without prejudice is tantamount to a dismissal with prejudice if the statute of limitations has expired.").[2]  As a result, Ross didn't just obtain the temporary return of his money; he obtained the permanent return of his funds after a year of litigation. He prevailed.

---

[2] As relevant to the expiry of the statute of limitations, the government has conceded that the Innocent Funds were "unrelated" to an offense, JA370, 378, which makes Section 984 necessary to forfeiting them. But Section 984(b) provides that "[n]o action pursuant to this section to forfeit property not traceable directly to the offense that is the basis for the forfeiture may be commenced more than 1 year from the date of the offense." The statute expired on October 6, 2021, JA14, well prior to the government's November 30, 2022 voluntary dismissal motion.

*Second*, even if the District Court was right to treat the terms "prevailing party" and "substantially prevails" interchangeably, the District Court was wrong to rely on the test established by *Buckhannon* and its progeny that requires a "material alteration of the legal relationship of the parties" to conclude that Ross was not a prevailing party. Although this Court has indicated in dicta that "the Supreme Court's decision in *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources* should inform [its] understanding of the term 'substantially prevails' in CAFRA," *Khan*, 497 F.3d at 209 n.7, intervening Supreme Court authority has confirmed that *Buckhannon* does not apply here because it establishes the standard for determining whether a *plaintiff* is a prevailing party, while the Supreme Court's decision in *CRST Van Expedited, Inc. v. E.E.O.C.*, 578 U.S. 419 (2016), adopts a different standard for determining whether *defendant* is a prevailing party. Significantly, *CRST Van* establishes that unlike a plaintiff, a "defendant need not obtain a favorable judgment on the merits in order to be a 'prevailing party.'" *Id*. at 431. Instead, the "defendant has . . . fulfilled its primary objective whenever the plaintiff's challenge is rebuffed, irrespective of the precise reason for the court's decision." *Id*. And a defendant may prevail even if the Court's final judgment is based on "nonmerits" reasons. *Id*.

As applied here, Ross defended the defendant *res* and recovered his claim in its entirety—$1,213,113.11. Thus, *CRST Van* controls, not *Buckhannon* and its

progeny. And under *CRST Van*, Ross is plainly the prevailing party by permanently rebuffing the government's attempts to seize his money. *See CRST Van*, 578 U.S. at 431 ("Common sense undermines the notion that a defendant cannot 'prevail' unless the relevant disposition is on the merits. Plaintiffs and defendants come to court with different objectives. A plaintiff seeks a material alteration in the legal relationship between the parties. A defendant seeks to prevent this alteration to the extent it is in the plaintiff's favor. The defendant, of course, might prefer a judgment vindicating its position regarding the substantive merits of the plaintiff's allegations. The defendant has, however, fulfilled its primary objective whenever the plaintiff's challenge is rebuffed, irrespective of the precise reason".).

*Third*, even if *Buckhannon's* more stringent test for prevailing party status applied, Ross remains a prevailing party. For unlike voluntary cessation in a private-plaintiff lawsuit, the government's decision to voluntarily return property in a civil forfeiture action *does* give rise to a "material alteration of the legal relationship of the parties." *Buckhannon*, 532 U.S. at 604 (cleaned up).

At the start of the litigation, the government had lawful possession of Ross's property. But when the government terminated its complaint, it lost any legal basis to retain possession and the court ordered the government to return the money to Ross. Due to the expiry of the statute of limitations, there can be no further action against those funds—which means that Ross has permanently changed the legal

relationship between the parties and obtained the full relief that he sought in this action, *i.e.* to retain ownership of and obtain the return of the Innocent Funds. By definition, that makes Ross a prevailing party. *Prevail*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("To obtain the relief sought in an action"). And he prevailed through a court judgment because Rule 41(a)(2) dismissals are court judgments as evidenced by the judgment that the District Court entered. SPA22; Fed. R. Civ. P. 41(a)(2) ("[A]n action may be dismissed at the plaintiff's request only by court order").

Even under *Buckhannon* then, Ross is entitled to fees, costs, and interest. *Silberstein v. Digital Art Solutions, Inc.*, No. 02-cv-8187, 2003 WL 21297291 (S.D.N.Y. June 4, 2003) (holding that a defendant can be a prevailing party when a plaintiff voluntarily dismisses a case to avoid an adverse ruling); *see also United States v. Davis*, 648 F.3d 84, 98 (2d Cir. 2011) (explaining that the touchstone of whether a party is entitled to fees under CAFRA is whether the claimant "obtained any of the relief that she sought"); *Cantrell v. Int'l Bhd. of Elec. Workers, AFL–CIO, Local 2021*, 69 F.3d 456, 458 (10th Cir. 1995) (en banc) (holding a defendant is a "prevailing party" under Rule 54(d) when a plaintiff voluntarily dismisses its complaint, whether that dismissal is with or without prejudice).

### B.    The Multiple Claims Exception Does Not Apply.

As a second ground for denying Ross's request for attorneys' fees, the District Court held that Ross was barred from seeking fees under 28 U.S.C. § 2465 (b)(2)(C).

SPA28–29. But for that provision to apply, there must be "multiple claims to the same property" and "competing claims." 28 U.S.C. § 2465(b)(2)(C). In addition, the government must prevail "in obtaining forfeiture with respect to one or more of the claims." *Id*. Those requirements were not met in this case.

In finding otherwise, the District Court found that there were two competing claims to the same $1.2 million, and that the government recovered a separate $2.9 million that was not the subject of any claim. SPA28–29. But in this case, there were merely two claims to a fraction of the total amount of money that was seized, which means that there were not competing claims. *See United States v. $293,316 in U.S. Currency, More or Less*, No. 03-cv-278, 2005 WL 2476270, at *4 (E.D.N.Y. 2005) ("[T]he claims filed by innocent owners exceeded the amount seized and thus were 'competing claims' within the meaning of section 2465(b)(2)(C)(ii)."). And even if there were competing claims, the government prevailed on neither claim because the government voluntarily dismissed its forfeiture action without "obtaining forfeiture" with respect to either party's "claims." 28 U.S.C. § 2465(b)(2)(C).

As such, even though the government in this case can claim that it successfully recovered some funds by default, it cannot say that it "obtain[ed] forfeiture with respect to one or more of the claims." *Id*. The multiple claims exception therefore does not apply. *See United States v. FXDD Account '7807*, No. 14-cv-00051, 2015 WL 13919359, at *3 (C.D. Cal. July 6, 2015) (granting a motion for fees in a case

34

with multiple claims on the grounds that "the Government failed to prevail in obtaining forfeiture with respect to one or more of the claims in this action").

### C. In the Alternative, The District Court Abused Its Discretion in Granting a Voluntary Dismissal Without Prejudice.

On its own, this Court's correction of District Court's erroneous ruling that Ross did not substantially prevail under CAFRA entitles Ross to fees, costs, and interest. But even if the District Court were technically correct that Ross was not entitled to fees due to the without-prejudice nature of the government's dismissal, Ross would still be entitled to attorney's fees because the District Court would have abused its discretion by knowingly enabling a circumvention of CAFRA.

Importantly, in the proceedings below, the government did not voluntarily dismiss this case on its own initiative. Instead, it allowed the case to languish for several months until Ross asked the District Court to lift a stay so that "he may move for summary judgment, and /or a hearing into the continued seizure of his property." JA236. The government then responded by moving to voluntarily dismiss this case nominally "without prejudice" in order to avoid an adverse judgment on the merits.

As Ross warned the District Court, the government often seeks voluntary dismissals without prejudice once it knows that it is going to going to lose a civil forfeiture action in order to set "itself up to argue that [the claimant] is not entitled to fees under CAFRA." JA271–72; *United States v. Thirty-Two Thousand Eight*

35

*Hundred Twenty Dollars and Fifty-Six Cents in U.S. Currency*, No. C13-4102, 2015 WL 3385003 (N.D. Iowa May 22, 2015) (seeking a voluntary dismissal without prejudice and then opposing attorneys' fees). And in Ross's case, that appears to be the sole reason why the government sought voluntary dismissal without prejudice, as it had admitted that "information and documentation" confirmed that the Innocent Funds were untainted, JA245, and the one-year statute of limitations for bringing another action had expired, rendering the underlying "dismissal . . . tantamount to a with prejudice dismissal." *McCoy*, 255 F. Supp. 2d at 252.

Because government's motion for a voluntary dismissal was gamesmanship to circumvent CAFRA, Ross requested that the District Court deny the government's motion and instead (1) render a judgment on the merits, (2) issue a with prejudice dismissal, or (3) condition a without prejudice dismissal on the payment of Ross's fees. JA271–77. But instead of ordering one of the alternatives, the District Court granted a without-prejudice dismissal, reasoning that Ross "[had] not demonstrated that he is entitled to judgment on the pleadings," SPA12, and finding, contrary to the Ninth Circuit, that "Ross will not suffer 'plain legal prejudice' should the action be dismissed without prejudice," SPA16, because the "inability to seek attorney's fees does not constitute plain legal prejudice." SPA17; *see also Ito*, 472 F. App'x at 842.

In the event that this Court correctly finds that Ross is entitled to the recovery of fees, costs, and interest under CAFRA even though his dismissal was without

prejudice, then that would go a long way to mitigating the prejudice that Ross suffered from the voluntary dismissal that the District Court entered. But if the District Court were right that the without-prejudice nature of the government's dismissal deprived him of his right to recover fees under CAFRA, this Court should hold that the District Court abused its discretion in granting the voluntary dismissal without requiring the government to pay fees, costs and interest.

Federal Rule of Civil Procedure 41(a)(2) authorizes the voluntary dismissal of "an action . . . at the plaintiff's request *only* by court order, *on terms that the court considers proper*." Fed. R. Civ. P. 41(a)(2) (emphasis added). As a result, once an answer has been filed, "[v]oluntary dismissal without prejudice is . . . not a matter of right." *Zagano v. Fordham Univ.*, 900 F.2d 12, 14 (2d Cir. 1990). Instead, Rule 41 requires "the exercise of discretion by the courts" to "eliminate the evils resulting from the unqualified right of a plaintiff to take a voluntary nonsuit at any stage of the proceeding before pronouncement of judgment and after the defendant had incurred substantial expense or acquired substantial rights." *Hudson Eng'g Co. v. Bingham Pump Co.*, 298 F. Supp. 387, 388 (S.D.N.Y. 1969) (cleaned up).

In this Circuit, there are "[t]wo lines of authority . . . with respect to the circumstances under which a dismissal without prejudice might be improper." *Camilli*, 436 F.3d at 124. The first indicates that such dismissal "would be improper if 'the defendant would suffer some plain legal prejudice other than the mere

prospect of a second lawsuit.'" *Id.* (quoting *Cone v. W. Va. Pulp & Paper Co.*, 330 U.S. 212, 217 (1947)). The second indicates that "the test for dismissal without prejudice involves consideration of various factors, known as the *Zagano* factors, including (1) the plaintiff's diligence in bringing the motion, (2) any undue vexatiousness on the plaintiff's part, (3) the extent to which the suit has progressed, including the defendant's efforts and expense in preparation for trial, (4) the duplicative expense of relitigation, and (5) the adequacy of the plaintiff's explanation for the need to dismiss." *Id.* Even where dismissal passes those tests, "usually the district judge at least will require that the plaintiff pay some or all of the defendant's litigation costs" prior to granting a voluntary dismissal. 9 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 2366 (4th ed. 2024); *Colombrito v. Kelly*, 764 F.2d 122, 133 (2d Cir. 1985) ("Fee awards are often made when a plaintiff dismisses a suit without prejudice under Rule 41(a)(2) . . . to reimburse the defendant for the litigation costs incurred").

For the reasons set forth above, Ross was entitled to attorneys' fees whether or not the dismissal was without prejudice. But as Ross pointed out below, some courts have held that dismissal without prejudice would preclude him from recovering attorneys' fees and interest under CAFRA. JA272. As a result, several courts that have considered the issue have concluded that this loss of the ability to recover attorneys' fees constitutes "plain legal prejudice." *Ito*, 472 F. App'x at 842;

38

*see also United States v. $107,702.66 in U.S. Currency*, No. 7:14-CV-00295-F, 2016 WL 413093, at *4 (E.D.N.C. Feb. 2, 2016) (dismissing forfeiture case with prejudice in order not to deprive claimants of their right to seek fees CAFRA, which the court held would "work a substantial legal prejudice"); *United States v. Certain Real Prop.*, 543 F. Supp. 2d 1291, 1292 (N.D. Ala. 2008) (same).

Disregarding these cases, the District Court simply stated without any citation to legal authority that "Ross's inability to seek attorneys' fees does not constitute plain legal prejudice," and that "the *Zagano* factors weigh in favor of dismissal without prejudice" as well. SPA17. But neither statement is accurate and the District Court shouldn't have departed from the usual rule of conditioning the dismissal without prejudice on the payment of fees, costs, and interest to prevent the government from circumventing CAFRA's stated purpose of giving innocent owners "the means to . . . make themselves whole." H.R. Rep. No. 106-192, at 11.

As to the absence of "plain legal prejudice," prejudice is defined as "[d]amage or detriment to one's legal rights or claims." *Prejudice*, BLACK'S LAW DICTIONARY (12th ed. 2024); *GFE Global Fin. & Eng'g Ltd. v. ECI Ltd. (USA), Inc.*, 291 F.R.D. 31, 36 (E.D.N.Y. 2013) (holding that "[l]egal prejudice is the loss or impairment of some 'legal interest, some legal claim [or] some legal argument"). So unsurprisingly, this Court has repeatedly implied (although not yet resolved) that the government's elimination of a claim for attorney's fees, costs, and interest can constitute plain legal

prejudice by recognizing that "[f]ee awards are often made when a plaintiff dismisses a suit without prejudice under Rule 41(a)(2). *Colombrito* , 764 F.2d at 133; *see also Paysys Int'l, Inc. v. Atos IT Servs. Ltd.*, 901 F.3d 105, 110 (2d Cir. 2018) (suggesting that if the defendant had appealed a without prejudice dismissal sought to avoid the effect of a fee-shifting provision "as impermissibly prejudicial . . . we might have agreed."). And other courts have recognized this as well, expressly conditioning a without-prejudice dismissal on the payment of fees to avoid the resulting prejudice. *Pohl v. MH Sub I, LLC*, 407 F. Supp. 3d 1253, 1256 (N.D. Fla. 2019) (holding that the loss of a claim for attorneys' fees constitutes "prejudice").

Application of the *Zagano* test counsels the same result as well. It cannot be said that the government acted with diligence: its motion was filed over a year after the funds were seized, pursuant to a warrant in which the government had conceded that the money it had seized included $1.2 million that was "unrelated" to the fraud that gave rise to the forfeiture and that it only had "probable cause" to believe that only "2,973,716.96" were the proceeds of the fraud scheme. JA378. And the reason the government's motion came so late speaks to the second factor, vexatiousness. The government's motion was prompted not by some sudden discovery of new facts, but by the prospect of an imminent resolution, given Ross's decision to forego discovery so that he could move for summary judgment.

The extent to which the case has progressed favors Ross as well. Though there will not be costs of relitigation because the statute of limitations has expired, Ross filed several motions Ross that raised issues requiring the dismissal of the lawsuit, and Ross had served discovery.

Finally, the government's explanation for moving to dismiss is inadequate. It merely says that the dismissal is based on "review of information and documentation obtained in connection with this matter," JA245, without explaining what information caused it to dismiss the case when it did, rather than at the outset when it conceded that the Innocent Funds were "unrelated" to the criminal enterprise from the time it moved to seize the Innocent Funds. JA378.

Ultimately, the government's goal of avoiding an adverse judgment on the merits—prompted by Ross's stated intention of moving for summary judgment—is not an appropriate reason to allow a voluntary dismissal. *See Bobo v. Christus Health*, 227 F.R.D. 479, 481 (E.D. Tex. 2005) (refusing to grant a Rule 41 motion that was designed to "preclude the court from deciding this case on its merits" and instead entering judgment on the pleadings); *Home Am. Credit, Inc. v. Investors Title Ins. Co.*, 199 F.R.D. 563, 565 (E.D.N.C. 2001) (explaining that one of the factors a court should consider in evaluating a motion for dismissal is "whether the dismissal is being sought in order to avoid an adverse determination on the merits"). And if the District Court were correct that Ross did not substantially prevail under CAFRA,

41

then the District Court abused its discretion in granting a voluntary dismissal without prejudice that didn't condition the dismissal on the payment of fees, costs, and interest. *See Ito*, 472 F. App'x at 841-42.

## II. The Government's Conduct in this Case Violated the Constitution.

Prior to the government's knowing circumvention of CAFRA, Ross repeatedly objected to the legality of the government's actions. In March 2024, he filed a petition to release property under 18 U.S.C. § 983(f) in which he maintained that the seizure of his IOTA was unconstitutional. JA28–30, 67–69. Then, Ross objected to the government's attempts to default part of the funds in his IOTA and seek an indefinite stay, once again maintaining that those actions, along with the underlying proceeding, were unconstitutional. JA97–103, 145–66.

The District Court, however, never addressed these arguments. Instead, it granted an indefinite stay in a text order, SPA1, and sat on Ross's petition to release funds for nearly a year before denying it as moot. SPA20–21. Then, the District Court defaulted funds that Company 1—a victim—claimed an interest in without addressing Ross's constitutional objections to the default, SPA9, and denied Ross judgment on the pleadings without addressing the constitutional issues he raised in that motion either. SPA2–21.

As a threshold matter, the District Court's repeated disregard of Ross's constitutional arguments is inconsistent with its Article III "duty . . . to say what the

law is." *Bank Markazi v. Peterson*, 578 U.S. 212, 225 (2016) (cleaned up). So is the

District Court's failure to act on an 18 U.S.C. § 983(f) petition that entitled Ross to

an "immediate release of seized property" until the issue was mooted nearly a year

later. *Immediate*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("Occurring without

delay"). But the District Court's failure to address these issues is particularly

concerning here, because both the prosecution of the Innocent Funds and the

government's attempts to default victim funds violated the Constitution.

### A. The Prosecution of the Innocent Funds Under 18 U.S.C. § 984 for More than a Year Violated the Constitution.

The government initially moved to seize the Innocent Funds based on 18

U.S.C. § 981 and § 982 only. JA374–75. But by the time it initiated this forfeiture

action, the government had admitted that it lacked probable cause to forfeit the

Innocent Funds through the criminal forfeiture statute, 18 U.S.C. § 982, as it did not

criminally charge Ross or otherwise invoke 18 U.S.C. § 982 in its forfeiture

complaint. In addition, the government had admitted that the Innocent Funds were

"unrelated" to the criminal fraud scheme. JA378. Consequently, when it moved to

forfeit the Ross Funds under 18 U.S.C. § 981, the basis for the forfeiture was not to

punish a criminal or that the Innocent Funds were themselves forfeitable as involved

in the underlying crime. Instead, it was merely that the prosecutors had decided to

invoke 18 U.S.C. § 984, which gave the prosecutors the power to treat the Innocent

Funds and criminal proceeds interchangeably for the purposes of civil forfeiture under 18 U.S.C. § 981.

The question immediately becomes why a prosecutor would decide to treat the "unrelated" funds of an attorney and his clients interchangeably with criminal proceeds. But when the prosecutors in this case did so, they acted in contravention of the DOJ's civil Asset Forfeiture Manual, which prohibited this type of application of 18 U.S.C. § 984. Department of Justice, Asset Forfeiture Policy Manual, Section 5(D) (2021). And because the use of Section 984 in these circumstances lacks any historic analogue, the prosecutors' reliance on it also violated the Constitution.

Since there was no criminal prosecution of Ross here, there was no basis to seek the forfeiture of the Innocent Funds through an *in personam* criminal action. Nor was there any basis for an *in rem* forfeiture, since it has been the rule since the time of the Founding that *in rem* forfeiture existed "under the fiction that the thing itself, rather than the owner, was guilty of the crime." *Leonard*, 137 S. Ct. at 849 (Thomas, J., statement regarding denial of certiorari). And here, that fiction could not be maintained as to the Innocent Funds, as the government admitted that they were "unrelated" to the underlying crime, JA378, making the government's use of 18 U.S.C. § 984 in this case an unprecedented and unconstitutional attempt to forfeit innocent funds of innocent parties, under a diminished burden of proof in a situation in which forfeiture never would have been permitted historically. *Culley*, 601 U.S.

44

at 398 (Gorsuch, J., concurring) (recognizing the forfeiture was historically limited to "the discrete arenas of admiralty, customs, and revenue law" where the government could not obtain jurisdiction over the wrongdoer); *see also Pacheco v. Serendensky*, 393 F.3d 348, 354 (2d Cir. 2004) (recognizing that government's acquisition of "an innocent third party's interest in property" may constitute "a deprivation of that party's property without due process"); *United States v. Totaro*, 345 F.3d 989, 999 (8th Cir. 2003) ("If this court were to deem forfeited the entire estate despite a valid claim of partial ownership by a third party, . . . it would . . . punish the third party, against whom no jury has returned a verdict of guilt, and may therefore raise constitutional questions of a whole different order.").

Despite being presented with this constitutional argument early and often and receiving repeated requests for a timely forfeiture hearing, the District Court instead indefinitely stayed the case. In so doing, it violated Ross's Due Process right to a timely forfeiture hearing. *Culley*, 601 U.S. at 384 ("When States seize and seek civil forfeiture of personal property, due process requires a *timely* post-seizure forfeiture hearing." (emphasis in original)). In addition, the District Court enabled the government to violate Ross's Fourth Amendment rights by prolonging the unjustified seizure for so long that it "unreasonably infringe[d]" on "possessory interests protected by the Fourth Amendment[]". *United States v. Jacobsen*, 466 U.S. 109, 124 (1984). This Court should therefore hold that the government's prosecution

45

in this case was unconstitutional at its inception and should have been dismissed much sooner insofar as it relied on Section 984 to seek the forfeiture of the funds of non-criminal defendants, which the government admitted to be "unrelated" to any crime. JA378. In addition, this Court should hold that the District Court erred in allowing the government to obtain an indefinite stay, rather than ordering a timely forfeiture hearing or addressing the serious constitutional issues Ross had raised.

### B.    The Default Judgment Violated the Constitution.

The default judgment that the District Court entered is also unconstitutional. Specifically, 18 U.S.C. § 983(d) provides that an "innocent owner's interest in property shall not be forfeited under any civil forfeiture statute." As a result, the government lacked any authority to seek—and the District Court lacked any authority to order—the forfeiture of victim funds that Congress expressly prohibited. *See Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 360 (2d Cir. 2016) (holding that courts may not apply their own "independent policy judgment to recognize a cause of action that Congress has denied") (cleaned up).

In the proceedings below, the District Court ordered a default of over $3 million seized from Ross's IOTA, despite the fact that Company 1, a victim of the crime, asserted an interest in all of the funds, JA47–49, and Ross claimed that he was a victim and held an interest in the Innocent Funds as well. As a result, the

District Court ordered and authorized precisely what Congress *prohibited*—the forfeiture of an innocent owner's interest in property under a civil forfeiture statute.

That Company 1 consented to the forfeiture of its funds because it thought it could later recover them through remission petition, does not change that the statute prohibits the forfeiture of innocent funds, such that the District Court violated the separation of powers in ordering it. *See United States v. Bailey*, No. 1:11-cr-10, 2012 WL 569744, at *17 (W.D.N.C. Feb. 12, 2012) ("There is no indication that forfeiting assets from the Defendant's *victims*, rather than from the Defendant or his proxies, was ever contemplated"); *FXDD Account '7807*, 2015 WL 13919359, at *3 (stating that it "would be inappropriate to enter default judgment in a civil forfeiture action without making a determination as to whether the property is subject to forfeiture.").

In addition, the default judgment violated Ross's Due Process rights, as it enabled an arbitrary application of the law insofar as it allowed the government to rely on Section 984 to seize funds that the government itself admitted to be "unrelated" to any crime and then turn around and contradict Section 984's fungibility premise by maintaining that Company 1 could identify a specific $1,213,113.11 and limit its claim to those specific funds. This then allowed the government to wrongfully and arbitrarily deprive Ross of his property rights by turning the prosecution into an action in which a third party could seek the redistribution of private property that did not belong to it. *See Goss v. Lopez*, 419

47

U.S. 565, 574 (1975) (arbitrariness violates the minimal requirements of the Due Process Clause); *see also O'Connor v. Pierson*, 426 F.3d 187, 204 (2d Cir. 2005) ("This court has recognized that the substantive component of the Fourteenth Amendment's Due Process Clause forbids the government from burdening, in a constitutionally arbitrary way, an individual's property rights.").

Ignoring these issues, the District Court simply held that Ross lacked standing to object to the default. SPA9. But that doesn't give the District Court authority it lacks. *United States v. Albertini*, 472 U.S. 675, 680 (1985) ("Courts in applying criminal laws generally must follow the plain and unambiguous meaning of the statutory language."). And Ross had standing, as the default caused injuries to Ross that are redressable through a favorable decision.

Among other things, the District Court relied on the default judgment (wrongfully) to deny Ross over $100,000 in attorneys' fees. SPA28–29. In addition, the default subjected Ross to arbitrariness insofar as it depleted the pot of money so that the government could not pay out both of the claims in this case, thereby enabling the government to artificially manufacture "competing claims" that allowed Company 1 to try to stake a claim on Ross's "unrelated" funds. As a result, the default judgment caused injury to Ross. *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464 (2017) ("For standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'"); *Doe v. Sch. Bd. Of Ouachita Parish*, 274 F.3d

289, 292 (5th Cir. 2001) ("Impairments to constitutional rights are generally deemed adequate to support a finding of 'injury' for purposes of standing."). And Ross had standing to object to the requested default and the default judgment.

## III. The District Court's Certificate of Good Cause Ruling Was Erroneous.

After granting the government's motion for a voluntary dismissal, the District Court also granted the government a certificate of reasonable cause on its decision to try to forfeit the Innocent Funds under 28 U.S.C. § 2465(a)(2). SPA18–20. In support of that holding, the District Court reasoned that that "there was probable cause to seize the [Innocent Funds]" and Ross's argument "that a certificate of reasonable cause cannot be granted without a with prejudice dismissal is without merit." SPA19. The district court's ruling was clear error.

28 U.S.C. § 2465(a) provides that "if it appears that there was reasonable cause for the seizure or arrest, the court shall cause a proper certificate thereof to be entered" "[u]pon the entry of a judgment for the claimant in any proceeding to condemn or forfeit property seized or arrested under any provision of Federal law." As a result, the statute requires (1) the "entry of a judgment for the claimant" and (2) "reasonable cause," which is synonymous with probable cause, for a certificate of reasonable cause. *Id.*; *see also Heien v. North Carolina*, 574 U.S. 54, 62 (2014). In this case, neither requirement was met.

49

Contrary to the District Court's decision that it could issue a certificate of reasonable cause in a case that ended in a dismissal without prejudice, SPA19, the statute requires "the entry of a judgment for claimant." 28 U.S.C. § 2465(a). And there was no such judgment here because the government chose to tactically seek a voluntary dismissal without prejudice, heading off a final determination of the rights and obligations of the parties. S*ee, e.g., Judgment*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("A court or other tribunal's final determination of the rights and obligations of the parties in a case"); *Waetzig v. Halliburton Energy Servs. Inc.,* 82 F.4th 918, 926 (10th Cir. 2023) (holding that a dismissal without prejudice does not constitute a "judgment" because "[n]o rights have been determined" and "the plaintiff is leaving the door open for future suit."). As a result, a certificate of reasonable cause could not have issued under the plain text of the statute. Order, *United States v. $14,782 in U.S. Currency*, Case No. 2:13-cv-01096, ECF No. 21, pp. 2-3 (D. Nev. Apr. 29, 2015) (refusing to issue certificate of reasonable cause in a case where the government obtained a default on the grounds that 2465(a) limits the applicability of the statute to a case in which there was an entry of judgment in favor of the claimant). And the government cannot have it both ways. It cannot seek a without-prejudice dismissal if it also wants a certificate of reasonable cause.

Likewise, the District Court was wrong to find that the government had probable cause to seize the Innocent Funds. To the contrary, when it moved to

dismiss the action, the government "conced[ed] that the [Innocent] Funds are not forfeitable." SPA14. And the government's newly-unsealed seizure warrant and declaration confirm that the government has known this fact *since the beginning of this case* because it understood the Innocent Funds included the sales proceeds of a home that were identifiable and "unrelated" to the subject fraud, JA370, 378, making it beyond the reach of civil forfeiture. 18 U.S.C. § 983(d) (providing "[a]n innocent owner's interest in property shall not be forfeited under any civil forfeiture statute.").

Of particular significance here, the government's initial seizure warrant never alleged that there was probable cause to believe that the Innocent Funds were forfeitable under Section 981, or that Ross was anything other than an innocent owner. JA378. Instead, it admitted that $1.2 million it had seized involved was "unrelated" to the underlying fraud before stating that that of the "$4,183,402.74" in Ross's IOTA, it only had "probable cause to believe that at least $2,973,716.96 are the proceeds of the business email compromise schemes." *Id*. Then, the government admitted that fraudsters often "trick third parties into serving as unwitting money mules," and that Ross might have been tricked by the fraudsters. JA378–79. It therefore only states that Ross "*may* be involved in the underlying scheme," which hardly supplies probable cause for forfeiture under Section 982. JA379. *Dufort v. City of New York*, 874 F.3d 338, 350 (2d Cir. 2017) ("It is well settled that probable cause requires more than suspicions, even reasonable ones.") (cleaned up)).

51

When evaluating whether there is reasonable cause for the government to initiate a forfeiture action, some courts have held that "[p]robable cause is determined on the basis of information possessed by the government at the time of the forfeiture proceeding, not the initial seizure." *United States Funds in the Amount of $9,800*, 952 F. Supp. 1254, 1260 (N.D. Il. 1996); *see also Marine Midland Bank, N.A. v. United States*, 11 F.3d 1119, 1124 (2d Cir. 1993) ("[T]he seizure and forfeiture of property are two distinct events under the civil forfeiture laws."). But in this case, the government lacked probable cause at both seizure and forfeiture stage, rendering any such distinction irrelevant. For if anything, the government's case only got weaker after its probable-cause-less seizure.

Following the seizure warrant, the government never filed an action charging Ross or invoking 18 U.S.C. § 982. The government also dropped the allegation that Ross "may be involved in the underlying scheme." JA379. In doing so, the government effectively conceded that it could not move to forfeit the Innocent Funds under the criminal forfeiture statute because it lacked probable cause to believe that Ross was anything other than a victim that the fraudsters had tricked. Instead, the government based its forfeiture on 18 U.S.C. § 984, to enable the forfeiture of the "unrelated" Innocent Funds under 18 U.S.C. § 981. *Id*. at § 981(a)(1)(A)-(B).

Having by that time received documentation confirming that the Innocent Funds were unrelated to the unauthorized deposit of funds into Ross's IOTA, JA72–

76, 364–65, the government has had no choice but to admit that it has always known that the Innocent Funds it moved to forfeit included proceeds from the sale of Ross's home that were unrelated to the subject fraud, making this a case where the innocent funds were identifiable and Section 984 was not meant to apply. JA370–71; *see also $3,148,884.40 U.S. Currency (Seized From Accounts of Bital)*, 76 F. Supp. 2d at 1068 (rejecting the government's efforts to use 984 to seize money that was "identifiable"). And that confirms that when it initiated this action, the government knew that it was filing a constitutionally suspect action that not only violated its Asset Forfeiture Policy Manual, but also 18 U.S.C. § 983(d)'s instruction that "[a]n innocent owner's interest in property shall not be forfeited."

For those reasons, the government lacked probable cause to believe that it could either seize or forfeit the Innocent Funds. Instead, the government was overreaching in violation of its own policies by seizing the Innocent Funds without articulating probable cause and then treating the innocent funds of innocent people interchangeably with the criminal funds of criminal actors. This action by the government is thus contrary to Section 984, and unconstitutional. As such, no certificate of reasonable cause should have been issued.

## CONCLUSION

For the reasons set forth above, this Court should reverse the District Court's ruling that Ross did not "substantially prevail" under CAFRA as well as its

certificate of reasonable cause ruling and hold that the government's reliance on 18 U.S.C. § 984 to prosecute and forfeit victim funds violated the Constitution. In the alternative, this Court should still reverse the District Court's certificate of reasonable cause ruling and hold that the government's reliance on 18 U.S.C. § 984 violated the Constitution. But it should instead vacate the district court's order granting a voluntary dismissal without prejudice so the District Court can either (1) enter a judgment in Ross's favor, (2) make its dismissal with prejudice, or (3) condition its dismissal on the payment of attorneys' fees and interest.

Respectfully Submitted,

*Stephen Raiola*

ZIEN HALWANI
11100 Santa Monica Blvd.
Suite 360
Los Angeles, CA 90025
(310) 409-0400
zhalwani@kfc.law

STEPHEN F. RAIOLA
  *Counsel of Record*
SANGYOON NATHAN PARK
500 Fifth Avenue, 12th Floor
New York, New York 10110
(917) 909-6350
sraiola@kfc.law
npark@kfc.law

*Counsel for Claimant-Appellant Richard Stuart Ross*

August 9, 2024

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) and Second Circuit Local Rule 32.1(a)(4)(A) because this brief contains 13,590 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). I also certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word in 14-point Times New Roman font.

/s/ *Stephen F. Raiola*
Stephen F. Raiola
*Counsel for Claimant-Appellant*

August 9, 2024

## CERTIFICATE OF SERVICE

I hereby certify on August 9, 2024, I electronically filed copies of both the (1) Brief and Special Appendix of Claimant-Appellant Richard Stuart Ross, and (2) Joint Appendix with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

/s/ *Stephen F. Raiola*
Stephen F. Raiola
*Counsel for Claimant-Appellant*

August 9, 2024

# SPECIAL APPENDIX

# TABLE OF CONTENTS

PAGE

Text Only Order, dated August 17, 2022 ............................... SPA1

Memorandum Decision and Order of the Honorable Gary L. Sharpe,
    dated March 2, 2023 ............................................. SPA2

Judgement in a Civil Case, dated March 6, 2023 ...................... SPA22

Memorandum Decision and Order of the Honorable
    Frederick J. Sculin, Jr., dated March 22, 2024 .................... SPA24

# SPA1

| 08/17/2022 | 38 | TEXT ONLY ORDER --- For the reasons articulated in the United States' motion papers, its motion for a stay, (Dkt. No. 34), is GRANTED. Claimant Richard Stuart Ross' cross motion for a hearing, to compel discovery, and to impose sanctions, (Dkt. No. 36), is DENIED. It is hereby ORDERED that this matter is STAYED, pursuant to 18 U.S.C. § 981(g), until further order of the court. IT IS SO ORDERED. Issued by Senior Judge Gary L. Sharpe on 8/17/2022. (jel, ) (Entered: 08/17/2022) |

**SPA2**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **5:22-cv-138 (GLS/TWD)** |
| **Plaintiff,** | |
| **v.** | |
| **$4,183,402.74 IN U.S. CURRENCY SEIZED FROM REGIONS BANK ACCOUNT *1113, R.S. IOTA TRUST ACCT et al.,** | |
| **Defendants.** | |

_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE PLAINTIFF:** | |
| HON. CARLA B. FREEDMAN United States Attorney 100 South Clinton Street Syracuse, NY 13261-7198 | ELIZABETH A. CONGER Assistant United States Attorney |
| **FOR THE CLAIMANTS:** | |
| *Richard Stuart Ross* Pietragallo Gordon Alfano Bosick & Raspanti, LLP 7108 Fairway Drive - Suite 130 Palm Beach Gardens, FL 33418 | TAMA KUDMAN RICHMAN, ESQ. |
| One Oxford Centre, 38th Floor Pittsburgh, PA 15219 | STEPHEN F. RAIOLA, ESQ. |
| *Company 1* Arnold & Porter Kaye Scholer LLP | BARUCH WEISS, ESQ. |

601 Massachusetts Ave., NW
Washington, DC 20001-3743

Sullivan & Cromwell LLP              SHARON COHEN LEVIN, ESQ.
125 Broad Street - Room 2919
New York, NY 10004

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff United States of America commenced this forfeiture action

against defendant property $4,183,402.74 in United States currency seized

from Regions Bank account *1113, in the name of R.S. IOTA Trust Acct

and $722,327.52 in United States currency seized from Regions General

Ledger *200 bearing Cost Code (CC) *300.  (Compl., Dkt. No. 1.)  Pending

is claimant Richard Stuart Ross's motion to lift stay, (Dkt. No. 39), Ross's

petition to release $1,213,113.11 of the defendant property (hereinafter

"the Contested Funds"), (Dkt. No. 8), the government's motion to dismiss

the complaint as against the Contested Funds, (Dkt. No. 44), Ross's cross-

motion for judgment on the pleadings with respect to the Contested Funds,

(Dkt. No. 51), and the government's motion for an entry of default with

respect to the other $3,692,617.15 of the defendant property (hereinafter

2

**SPA4**

"the Uncontested Funds"), (Dkt. No. 28).  For the reasons that follow, the

stay is lifted, the government's motions for default as to the Uncontested

Funds and motion to dismiss as to the Contested Funds are granted, and

Ross's cross-motion for judgment on the pleadings and motion to release

the Contested Funds are denied as moot.

## II.  Background

The government commenced this civil forfeiture proceeding by filing a

verified complaint.  (Compl.); *see* Supplemental Rules for Admiralty or

Maritime Claims and Asset Forfeiture Actions G(2).  The Clerk then issued

an arrest warrant in rem.  (Dkt. No. 2.)  The government sent a copy of the

complaint, warrant, and notice of complaint to all known potential

claimants, and published public notice of this action on an official

government forfeiture website for thirty consecutive days.  (Dkt. No. 28,

Attach. 1 ¶¶ 5-6.)  Ross and Company 1 both filed notices of claim to the

Contested Funds.  (Dkt. Nos. 5, 11.)  There were no claims to the

Uncontested Funds filed.  (Dkt. No. 28, Attach. 1 ¶ 11.)  In July 2022, the

government requested a stay of the action, (Dkt. No. 34), which this court

granted, (Dkt. No. 38).

### III.  <u>Standards of Review</u>

### A.    <u>Motion for Default</u>

"Federal Rule of Civil Procedure 55 provides a two-step process that the [c]ourt must follow before it may enter a default judgment."  *United States v. $179,710 in U.S. Currency*, No. 1:20-CV-1607, 2021 WL 5961312, at *2 (N.D.N.Y. Nov. 2, 2021) (citation omitted).  "First, under Rule 55(a), when a party fails to plead or otherwise defend . . . the clerk must enter the party's default."  *Id.* (internal quotation marks and citation omitted); *see* Fed. R. Civ. P. 55(a).  Second, under Rule 55(b)(2), the party seeking default judgment must present its application for an entry of judgment to the court.  *See $179,710 in U.S. Currency*, 2021 WL 5961312, at *2 (citation omitted).  "Notice of the application must be sent to the defaulting party so that it has an opportunity to show cause why the court should not enter a default judgment."  *Id.* (citation omitted); *see* Fed. R. Civ. P. 55(b)(2).  "When an action presents more than one claim for relief . . ., the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties . . . if the court expressly determines that there is no just reason for delay."  *$179,710 in U.S. Currency*, 2021 WL 5961312, at *2  (quoting Fed. R. Civ. P. 54(b)).

4

**SPA6**

In considering a motion for default judgment, a court "[m]ust accept[] as true all of the factual allegations of the complaint.  However, the court cannot construe the damages alleged in the complaint as true.  Rather, the court must conduct an inquiry in order to ascertain the amount of damages with reasonable certainty."  *Id.* (internal quotation marks and citations omitted).   Ascertaining such an amount requires two steps: "[1] determining the proper rule for calculating damages on such a claim, and [2] assessing plaintiff's evidence supporting the damages to be determined under this rule."  *Id.* (internal quotation marks and citation omitted).  When calculating damages, the court does not need to find that the facts alleged by plaintiff "constitute a valid cause of action."  *Id.* (quoting *Au Bon Pain*, 653 F.2d at 65).

**B.   <u>Voluntary Dismissal</u>**

Rule 41(a) of the Federal Rules of Civil Procedure provides that, after an answer or motion for summary judgment has been filed, an action shall not be dismissed at the plaintiff's request except where all parties have signed a stipulation of dismissal, or upon order of the court.[1]  Fed. R. Civ.

---

[1]  Here, both claimants filed answers prior to the government's request for voluntary dismissal. (Dkt. Nos. 9, 10, 18, 19.)

5

P. 41(a)(1)(B), (a)(2); *D'Alto v. Dahon Cal., Inc.*, 100 F.3d 281, 283 (2d Cir. 1996) ("Once a defendant has answered the complaint, a plaintiff may no longer dismiss an action as a matter of right.").  Rule 41(a) further provides that, unless the stipulation or order states otherwise, the dismissal is without prejudice.  Fed. R. Civ. P. 41(a)(1)(B), (a)(2).  Generally, a district court may exercise its discretion to permit a plaintiff to dismiss an action pursuant to Rule 41(a)(2) "if the [opposing party] will not be prejudiced thereby."  *Correspondent Servs. Corp. v. First Equities Corp. of Fla.*, 338 F.3d 119, 126 (2d Cir. 2003); *see Paulino v. Taylor*, 320 F.R.D. 107, 109 (S.D.N.Y. 2017) ("Voluntary dismissal without prejudice is not a matter of right.  However, the presumption in this circuit is that a court should grant a dismissal pursuant to Rule 41(a)(2) absent a showing that [the opposing party] will suffer substantial prejudice as a result" (internal quotation marks and citation omitted)).  The decision whether to grant a Rule 41(a) motion for voluntary dismissal lies within the sound discretion of the court, *see Catanzano v. Wing*, 277 F.3d 99, 109 (2d Cir. 2001), and is to be ordered "on terms that the court considers proper," Fed. R. Civ. P. 41(a)(2).

## C.   Certificate of Reasonable Cause

Pursuant to 28 U.S.C. § 2465(a)(2):

6

> Upon the entry of a judgment for the claimant in any proceeding to condemn or forfeit property seized or arrested under any provision of Federal law . . . if it appears that there was reasonable cause for the seizure or arrest, the court shall cause a proper certificate thereof to be entered and, in such case, neither the person who made the seizure or arrest nor the prosecutor shall be liable to suit or judgment on account of such suit or prosecution, nor shall the claimant be entitled to costs, except as provided in [a later subsection].

## D.   <u>Judgment on the Pleadings</u>

"The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim."  *Wright v. Monroe Cmty. Hosp.*, 493 F. App'x 233, 234 (2d Cir. 2012) (internal quotation marks and citation omitted).  That standard of review is well settled and will not be repeated here.  For a full discussion of the governing standard, the court refers the parties to its prior decision in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010), *abrogated on other grounds by Altman v. J.C. Christensen & Assocs., Inc.*, 786 F.3d 191 (2d Cir. 2015).

## IV.  <u>Discussion</u>

As a preliminary matter, Ross's motion to lift the stay, (Dkt. No. 39), which the government does not oppose, (Dkt. No. 43), is granted.

**A.    Motion for Partial Default**

Regarding the government's motion for partial default, (Dkt. No. 28), the court has reviewed both the verified complaint, (Dkt. No. 1), and the government's affidavit in support, (Dkt. No. 28, Attach. 1).  For the reasons noted by the government, (Dkt. No. 28, Attach. 1 ¶¶ 5-8, 11-12), its request for an entry of partial default with respect to the Uncontested Funds is granted.  *See* Fed. R. of Civ. P. 55(a); *see also $179,710 in U.S. Currency*, 2021 WL 5961312, at *2-3.  While Ross opposes the request for default as to the Uncontested Funds, (Dkt. No. 29), he has not filed a claim to these funds, (Dkt. No. 5), and, thus, lacks standing to oppose the request.  *See $179,710*, 2021 WL 5961312, at *3.

**B.    Motion for Voluntary Dismissal**

Additionally, "[u]pon review of information and documentation obtained . . . the government has decided to seek [voluntary] dismissal of the forfeiture proceedings against the [Contested] Funds," without prejudice.  (Dkt. No. 44, Attach. 1 at 6.)  Ross argues that voluntary dismissal is inappropriate because he is entitled to a decision on the merits with respect to the Contested Funds.  (Dkt. No. 51, Attach. 1 at 8-10.)  Alternatively, Ross argues that, if the court views voluntary dismissal as

8

appropriate, the entire action should be dismissed because none of the

defendant property is forfeitable and because Rule 41(a)(2) of the Federal

Rules of Civil Procedure "limits [voluntary] dismissal to the entire action."

(*Id.* at 11.)  Additionally, and, again, in the alternative, Ross contends that,

if dismissal is proper, it should be granted as to $2,426,226.22 of the

defendant property because "two different parties have alleged two claims"

to $1,213,113.11 of the seized fund.  (*Id.* at 13.)  Company 1 objects to the

dismissal of the forfeiture action with respect to the Contested Funds

because its "interests in the[m] remain the subject of dispute," and

requests that the forfeiture action against the Contested Funds be

converted into "an interpleader action to allow both claimants the

opportunity to prove their interest in the [Contested] Funds."  (Dkt. No. 52

at 5-6.)

Additionally, if voluntary dismissal is granted, the parties dispute

whether the dismissal should be with or without prejudice.  Ross asserts

that dismissal should be with prejudice to avoid "risk of legal prejudice to

Ross, specifically, the loss of his statutory right to attorney fees, costs, and

interest."[2]  (Dkt. No. 51, Attach. 1 at 14.)  The government argues that

dismissal without prejudice is appropriate because it "has moved with

diligence and efficiency in this matter," without "ill-motive,"

"undue-vexatiousness," or "bad faith," and because "the matter has not yet

progressed to discovery."  (Dkt. No. 57 at 8-9.)

    While "Rule 41(a)(2) creates a presumption in favor of dismissal

without prejudice," *Laufer v. 7 Hills Hotel, LLC*, No. 8:22-cv-53, 2022 WL

16744309, at *4 (N.D.N.Y. Nov. 7, 2022) (internal quotation marks and

citation omitted); *see* Fed. R. Civ. P. 41(a)(2) ("Unless the order states

otherwise, a dismissal under [Rule 41(a)](2) is without prejudice."), the

Second Circuit has noted that "[t]wo lines of authority have developed with

respect to the circumstances under which a dismissal without prejudice

might be improper."  *Camilli v. Grimes*, 436 F.3d 120, 123 (2d Cir. 2006);

*see Resto-Otero v. Mohammad*, No. 9:17-cv-1115, 2019 WL 4544540, at

*2 (N.D.N.Y. Sept. 19, 2019).  One of these lines indicates that a without

prejudice dismissal would be improper "if the defendant would suffer some

plain legal prejudice" beyond simply the prospect of another lawsuit.  *See*

---

    [2]  In the alternative, Ross requests that the court "condition[]
dismissal without prejudice on an award of fees, costs, and interest."
(Dkt. No. 51, Attach. 1 at 18.)

SPA12

*Camilli*, 436 F.3d at 123 (internal quotation marks and citations omitted).

> Another line indicates that the test for dismissal without prejudice involves consideration of various factors, known as the *Zagano* factors, including (1) the plaintiff's diligence in bringing the motion, (2) any undue vexatiousness on the plaintiff's part, (3) the extent to which the suit has progressed, including the defendant's efforts and expense in preparation for trial, (4) the duplicative expense of relitigation, and (5) the adequacy of the plaintiff's explanation for the need to dismiss.

*Id.* (citing *Zagano v. Fordham Univ.*, 900 F.2d 12, 14 (2d Cir. 1990)) (other citation omitted); *see Resto-Otero*, 2019 WL 4544540, at *2 (citations omitted).  As discussed below, the motion for voluntary dismissal as to the Contested Funds is granted.

Ross's claim that dismissal is inappropriate because he has demonstrated that he is entitled to judgment on the pleadings, specifically because "the pleadings d[o] not establish that there was a plausible basis for forfeiting the" Contested Funds, (Dkt. No. 51, Attach. 1 at 9), is without merit, because, as the government notes, "[t]he complaint identifies the defendant property subject to forfeiture as the proceeds of violations of[,] . . . and property involved in and having facilitated offenses in violation of," various criminal codes.  (Dkt. No. 57 at 16; *see* Compl. ¶¶ 10-27.)

11

**SPA13**

Specifically, the complaint alleges that $29,583,354.63 in funds from Company 1, which were intended to be transferred as part of a legitimate business transaction with a separate business entity, were instead wired to and deposited into Ross's account pursuant to instructions provided in an email designed to mislead Company 1 into believing they were corresponding with the aforementioned separate business entity.  (Compl. ¶¶ 10-15, 20.)  A majority of the funds initially transferred into Ross's account were then transferred to numerous additional accounts, primarily located in Mexico.  (*Id.* ¶¶ 16-17.)  Finally, Ross, confirmed his awareness of the deposit and that he directed the subsequent transfers of the funds out of his account.  (*Id.* ¶ 20.)  Accordingly, "the complaint . . . contain[s] sufficient factual matter to state a claim to relief that is plausible on its face," *Ezra v. Bristol-Myers Squibb Co.*, 784 F. App'x 48, 50 (2d Cir. 2019) (citation omitted)—that the Contested Funds were subject to forfeiture. *See* 18 U.S.C. § 981.  For these same reasons, Ross's arguments that the government "failed to conduct an adequate investigation," prior to the seizure of the defendant property, and that the entire action should be dismissed because none of the defendant property seized is forfeitable, (Dkt. No. 51, Attach. 1 at 10-11), are without merit.  Further, Ross'

12

argument regarding his alleged innocent ownership of the Contested

Funds is unpersuasive because by voluntarily withdrawing the action as to

the Contested Funds, the government is conceding that the Contested

Funds are not forfeitable, and, thus, there can be no determination as to

the innocent owner of the Contested Funds.[3]  *See $557,933.89, More or*

*Less, in U.S. Funds*, 287 F.3d at 77 ("It must be remembered that what is

adjudicated in a judicial civil forfeiture proceeding is the government's right

to the property, not the claimant's.  If the government can establish its right

to forfeiture of the defendant property . . . the property is forfeited; if the

government fails to do so, the property is not forfeited—regardless of

whether or not the claimant turns out to be the actual owner of the

property.").  For this same reason, Company 1's argument that voluntary

dismissal is inappropriate "because [its] interests in the [Contested] Funds

remain the subject of dispute," (Dkt. No. 52 at 5), is unpersuasive, and the

--------------------

[3]  Ross adopted this position in opposing Company 1's request to convert this action to an interpleader action.  (Dkt. No. 58 ("Because the [government] has dismissed this action, it has not met its burden to prove that the [Contested] Funds are subject to forfeiture . . . . [A]nd this [c]ourt lacks any jurisdiction to adjudicate who owns the [Contested] Funds.").)

court will not convert the action to an interpleader action.[4]  *See United States v. $557,933.89, More or Less, in U.S. Funds*, 287 F.3d 66, 77 (2d Cir. 2002) ("[I]f the government fails to [establish its right to the property], the property is not forfeited—regardless of whether or not the claimant turns out to be the actual owner of the property."); *see also North Carolina v. Matthews* (In re *Matthews*), 395 F.3d 477, 482 (4th Cir. 2005) ("Once the United States voluntarily dismissed its forfeiture action, all proceedings in the action were terminated, and the district court lacked the authority to issue further orders addressing the merits of the case . . . . [A]lthough the [parties] continued to assert ownership interests . . . , the district court no longer had authority to adjudicate those interests—as it would have done had the forfeiture action gone forward.").

Ross's alternative argument that Rule 41(a)(2) does not permit partial voluntary dismissal, (Dkt. No. 51, Attach. 1 at 11), is flawed.  *See Nix v.*

---

[4]  Company 1 relies on *United States v. Barry Fischer Law Firm, LLC*, No. 10 Civ. 7997, 2012 WL 591396, at *1 (S.D.N.Y. Feb. 23, 2012), in support of their argument that the court may convert the present forfeiture action into an interpleader action.  (Dkt. No. 52 at 9.) However, in *Barry Fischer Law Firm*, "the [forfeiture] action was ultimately dismissed and the [seized] money was ordered returned" and only after "conflicting claims against the money . . . surfaced" did the government file an interpleader action.  2012 WL 591396, at *1.

## SPA16

*Officer of Comm'r of Baseball*, No. 17-cv-1241, 2017 WL 2889503, at *3,

n.2 (S.D.N.Y. July 6, 2017) ("Although some decisions within this Circuit

suggest that Rule 41(a) may only be employed to dismiss an entire

controversy, more recent cases make clear that Rule 41[](a) permit[s] the

withdrawal of individual claims." (internal quotation marks and citations

omitted)).  Additionally, because the court has granted the motion for

default as to the Uncontested Funds, voluntary dismissal here would

constitute the entirety of the remaining action.  Further, Ross's argument

that both he and Company 1 are claiming an interest in separate amounts

totaling $2,426,226.22, (Dkt. No. 52 at 13), is incorrect.  (Dkt. No. 11, at 3,

3 n.2 (Company 1's notice of claim asserting a claim as to the same

$1,213,113.11 to which Ross asserted a claim, and explicitly forgoing a

claim to the remaining $3,692,617.15).)  Accordingly, the government's

motion to voluntarily dismiss the action as to the Contested Funds is

granted.

     Further, dismissal is granted without prejudice for the following

reasons.  First, Ross will not suffer "plain legal prejudice" should the action

be dismissed without prejudice.  *See Resto-Otero*, 2019 WL 4544540, at

*2 ("As the Second Circuit has stated, [w]hen the Supreme Court identified

15

plain legal prejudice to a defendant as a circumstance that would defeat dismissal of a plaintiff's suit without prejudice, . . . the Court was concerned about the plight of a defendant who is ready to pursue a claim against the plaintiff in the same action that the plaintiff is seeking to have dismissed." (internal quotation marks and citation omitted)).  Accordingly, Ross's inability to seek attorney's fees does not constitute plain legal prejudice so as to render a dismissal without prejudice inappropriate.  Further, and for the reasons noted by the government, (Dkt. No. 57 at 8-9), the *Zagano* factors weigh in favor of dismissal without prejudice.  *See* 900 F.2d at 14. Specifically, the government brought the motion with diligence, approximately nine months after the filing of the complaint, there is no indication of "undue vexatiousness" on behalf of the government, the suit has not progressed to discovery, there appears to be little, if any, risk of "the duplicative expense of relitigation," and the government's explanation for the need to dismiss is adequate.  *See id.*  Accordingly, the motion for voluntary dismissal is granted and $1,213,113.11 of defendant property is dismissed without prejudice, and Ross's request to condition the without

prejudice dismissal on an award of attorney's fees is denied.[5]

## C.    Certificate of Reasonable Cause

Finally, the government requests the issuance of a certificate of reasonable cause in connection with the Contested Funds.  (Dkt. No. 44.) Ross asserts that a certificate of reasonable cause should not be issued because (1) the government "chose to proceed pursuant to Supplemental Rule G(3)(b)(i) which requires the clerk to issue a warrant to arrest the [seized] [f]unds without any probable cause finding," (2) the evidence at the time the defendant property was seized "did not support a reasonable belief that the government w[ould] be able to meet its burden of proof at trial," and (3) unless the court orders a dismissal with prejudice a certificate of reasonable cause would be procedurally improper.  (Dkt. No. 51, Attach. 1 at 21-23.)

"A certificate of reasonable cause shall issue only if it appears that there was 'reasonable cause' for the seizure or arrest."  *United States v. $1,399,313.74 in U.S. Currency*, 613 F. Supp. 2d 433, 436 (S.D.N.Y.

---

[5]  Because the government's motion to voluntarily dismiss the action as against the Contested Funds is granted, Ross's petition for release of the Contested Funds, (Dkt. No. 8), and cross-motion for judgment on the pleadings, (Dkt. No. 51), are correspondingly denied as moot.

2009).  Reasonable cause is synonymous with probable cause.  *See Heien v. North Carolina*, 574 U.S. 54, 62 (2014); *see also Stacey v. Emery*, 97 U.S. 642, 646 (1878) ("If there was a probable cause of seizure, there was a reasonable cause.  If there was a reasonable cause of seizure, there was a probable cause.")

Here, for the reasons already discussed above, there was probable cause to seize the Contested Funds.  *See supra* Part IV.B.; *see also* (Compl. ¶¶ 10-27.)  Additionally, "[o]n November 16, 2021, [the funds] w[ere] seized . . . pursuant to a seizure order issued by the United States District Court for the Northern District of New York," (Compl. ¶ 21), which further indicates the existence of probable cause.  And Ross's argument that a certificate of reasonable cause cannot be granted without a with prejudice dismissal is without merit.  *See United States v. $107,702.66 in U.S. Currency Seized from Lumbee Guar. Bank Account No. 82002495*, No. 7:14-CV-00295-F, 2016 WL 413093, at *4 (E.D. N.C. Feb. 2, 2016) ("Despite § 2465's language, courts have issued certificates [of reasonable cause] in cases that ended in a voluntary dismissal." (citations omitted)).  Accordingly, the government's request for a certificate of reasonable cause, (Dkt. No. 44), is granted, and this Memorandum-Decision and

Order shall serve as same.

### V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Ross's motion to lift the stay (Dkt. No. 39) is

**GRANTED**; and it is further

**ORDERED** that the stay put in place by order of the court on August

17, 2022 (Dkt. No. 38) is **LIFTED**; and it is further

**ORDERED** that the government's motion for partial default as to the

Uncontested Funds (Dkt. No. 28) is **GRANTED**; and it is further

**ORDERED** that the government's motion to dismiss as to the

Contested Funds and request for a certificate of reasonable cause (Dkt.

No. 44) is **GRANTED**; and it is further

**ORDERED** that $1,213,113.11 in U.S. currency is **DISMISSED**

without prejudice; and it is further

**ORDERED** that this Memorandum-Decision and Order shall serve as

a certificate of Reasonable Cause as to the dismissed $1,213,113.11 in

U.S. currency pursuant to 28 U.S.C. § 2465(a)(2); and it is further

**ORDERED** that Ross's petition for release of the Contested Funds

(Dkt. No. 8) and cross-motion for judgment on the pleadings (Dkt. No. 51)

are **DENIED** as moot; and it is further

      **ORDERED** that the Clerk provide a copy of this Memorandum-

Decision and Order to the parties.

**IT IS SO ORDERED.**

March 2, 2023
Albany, New York

Gary L. Sharpe
U.S. District Judge

## SPA22

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

### JUDGMENT IN A CIVIL CASE

**United States of America**
          Plaintiff(s)

vs.                                          **CASE NUMBER: 5:22-cv-138 (GLS/TWD)**

**$4,183,402.74 in U.S. Currency
seized from Regions Bank account
*1113, R.S. IOTA Trust Acct and
$722,327.52 in U.S. Currency seized
from Regions General Ledger (GL)
*200 bearing Cost Code (CC) *300**
          Defendant(s)

**Decision by Court.**  This action came to trial or hearing before the Court.  The issues have been tried or heard and a decision has been rendered.

IT IS ORDERED AND ADJUDGED that Ross's motion to lift the stay (Dkt. No. 39) is GRANTED.  That the stay put in place by order of the court on August 17, 2022 (Dkt. No. 38) is LIFTED.  That the government's motion for partial default as to the Uncontested Funds (Dkt. No. 28) is GRANTED.  That the Uncontested Funds in the amount of $3,692,617.15 of the defendant currency are hereby forfeited to the United States of America to be disposed of in accordance with the law.  That the government's motion to dismiss as to the Contested Funds and request for a certificate of reasonable cause (Dkt. No. 44) is GRANTED.  That $1,213,113.11 in U.S. currency is DISMISSED without prejudice.  That the Memorandum-Decision and Order shall serve as a certificate of Reasonable Cause as to the dismissed $1,213,113.11 in U.S. currency pursuant to 28 U.S.C. § 2465(a)(2).  That Ross's petition for release of the Contested Funds (Dkt. No. 8) and cross-motion for judgment on the pleadings (Dkt. No. 51) are DENIED as moot.

All of the above pursuant to the Memorandum-Decision and Order of the Honorable Judge Gary L. Sharpe, dated the 2nd day of March, 2023.

March 6, 2023
Albany, New York

_Clerk of Court_

John Law
Deputy Clerk

# Federal Rules of Appellate Procedure
## Rule 4. Appeal as of Right

### (a) Appeal in a Civil Case.

1. (1) *Time for Filing a Notice of Appeal.*

(A) In a civil case, except as provided in Rules 4(a)(1)(B), 4(a)(4), and 4(c), the notice of appeal required by Rule 3 must be filed with the district clerk within 30 days after entry of the judgment or order appealed from.

(B) The notice of appeal may be filed by any party within 60 days after entry of the judgment or order appealed from if one of the parties is:

(i) the United States;
(ii) a United States agency;
(iii) a United States officer or employee sued in an official capacity; or
(iv) a current or former United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf—including all instances in which the United States represents that person when the judgment or order is entered or files the appeal for that person.

(C) An appeal from an order granting or denying an application for a writ of error *coram nobis* is an appeal in a civil case for purposes of Rule 4(a).

(2) *Filing Before Entry of Judgment.* A notice of appeal filed after the court announces a decision or order—but before the entry of the judgment or order—is treated as filed on the date of and after the entry.

(3) *Multiple Appeals.* If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later.

(4) *Effect of a Motion on a Notice of Appeal.*

(A) If a party timely files in the district court any of the following motions under the Federal Rules of Civil Procedure, the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion:

(i) for judgment under Rule 50(b);

(ii) to amend or make additional factual findings under Rule 52(b), whether or not granting the motion would alter the judgment;

(iii) for attorney's fees under Rule 54 if the district court extends the time to appeal under Rule 58;

(iv) to alter or amend the judgment under Rule 59;

(v) for a new trial under Rule 59; or

(vi) for relief under Rule 60 if the motion is filed no later than 28 days after the judgment is entered.

(B)(i) If a party files a notice of appeal after the court announces or enters a judgment—but before it disposes of any motion listed in Rule 4(a)(4)(A)—the notice becomes effective to appeal a judgment or order, in whole or in part, when the order disposing of the last such remaining motion is entered.

(ii) A party intending to challenge an order disposing of any motion listed in Rule 4(a)(4)(A), or a judgment's alteration or amendment upon such a motion, must file a notice of appeal, or an amended notice

of appeal—in compliance with Rule 3(c)—within the time prescribed by this Rule measured from the entry of the order disposing of the last such remaining motion.

(5) *Motion for Extension of Time.*

(A) The district court may extend the time to file a notice of appeal if:

(i) a party so moves no later than 30 days after the time prescribed by this Rule 4(a) expires; and

(ii) regardless of whether its motion is filed before or during the 30 days after the time prescribed by this Rule 4(a) expires, that party shows excusable neglect or good cause.

(B) A motion filed before the expiration of the time prescribed in Rule 4(a)(1) or (3) may be ex parte unless the court requires otherwise. If the motion is filed after the expiration of the prescribed time, notice must be given to the other parties in accordance with local rules.

(C) No extension under this Rule 4(a)(5) may exceed 30 days after the prescribed time or 14 days after the date when the order granting the motion is entered, whichever is later.

(6) *Reopening the Time to File an Appeal.* The district court may reopen the time to file an appeal for a period of 14 days after the date when its order to reopen is entered, but only if all the following conditions are satisfied:

(A) the court finds that the moving party did not receive notice under Federal Rule of Civil Procedure 77 (d) of the entry of the judgment or order sought to be appealed within 21 days after entry;

(B) the motion is filed within 180 days after the judgment or order is entered or within 14 days after the moving party receives notice under Federal Rule of Civil Procedure 77 (d) of the entry, whichever is earlier; and

(C) the court finds that no party would be prejudiced.

(7) *Entry Defined.*

(A) A judgment or order is entered for purposes of this Rule 4(a):

(i) if Federal Rule of Civil Procedure 58 (a) does not require a separate document, when the judgment or order is entered in the civil docket under Federal Rule of Civil Procedure 79 (a); or

(ii) if Federal Rule of Civil Procedure 58 (a) requires a separate document, when the judgment or order is entered in the civil docket under Federal Rule of Civil Procedure 79(a) and when the earlier of these events occurs:

• the judgment or order is set forth on a separate document, or

• 150 days have run from entry of the judgment or order in the civil docket under Federal Rule of Civil Procedure 79 (a).

(B) A failure to set forth a judgment or order on a separate document when required by Federal Rule of Civil Procedure 58 (a) does not affect the validity of an appeal from that judgment or order.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.**                                                    **5:22-CV-138**
                                                         **(FJS/TWD)**

**$4,183,402.74 IN U.S. CURRENCY SEIZED**
**FROM REGIONS BANK ACCOUNT \*1113,**
**R.S. IOTA TRUST ACCT and $722,327.52**
**IN U.S. CURRENCY SEIZED FROM**
**REGIONS GENERAL LEDGER (GL)**
**\*200 BEARING COST CODE (cc) \*300,**

**Defendants.**
_____

| APPEARANCES | OF COUNSEL |
|---|---|
| **OFFICE OF THE UNITED STATES ATTORNEY** | **ELIZABETH A. CONGER, AUSA** |
| James Hanley U.S. Courthouse & Federal Building 100 South Clinton Street P.O. Box 7198 Syracuse, New York 13261-7198 Attorneys for Plaintiff | |
| **KUDMAN TRACHTEN ALOE POSNER LLP** | **TAMA KUDMAN RICHMAN, ESQ.** |
| 7108 Fairway Drive, Suite 130 Palm Beach Gardens, Florida 33418 Attorneys for Defendants | |

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

Plaintiff United States of America commenced this forfeiture action against Defendant

property $4,183,402.74 in United States currency seized from Regions Bank account \*1113, in

the name of R.S. IOTA Trust Acct and $722,327.52 in United States currency seized from Regions General Ledger *200 bearing Cost Code (CC) *300.  *See* Dkt. No. 1, Complaint.  The Court assumes the parties' familiarity with the facts of this case and, otherwise, directs the parties to Judge Sharpe's Memorandum-Decision and Order, *see* Dkt. No. 59, for a recitation of the relevant facts and procedural background.  That Memorandum-Decision and Order, among other things, granted the Government's motion to dismiss as to $1,213,113.11 of the Defendant property (hereinafter "The Contested Funds"), granted the Government's motion for default as to the other $3,692,617.15 of the Defendant property, and denied Claimant Richard Stuart Ross's cross-motion for judgment on the pleadings and petition to release $1,213,113.11, the Contested Funds, as moot.  *See generally id.*  Judge Sharpe also granted the Government's request for the issuance of a certificate of reasonable cause in connection with the Contested Funds.  *See id.* at 17-19.

Pending before the Court are Claimant Ross's motions for attorney's fees, costs, and interest, *see* Dkt. No. 61, to compel Plaintiff to release funds it voluntarily dismissed, *see* Dkt. No. 62, and to request an expedited ruling on the motion for attorney's fees and reconsideration of the issuance of the certificate of reasonable cause, *see* Dkt. No. 69.  For the reasons that follow, the Court denies all of Claimant Ross's motions.

## II. DISCUSSION

### A.   Motion for attorney's fees

Claimant Ross moves for attorney's fees, costs, and interest pursuant to Rule 54(d)(2) of the Federal Rules of Civil Procedure, 28 U.S.C. § 2465(b) of the Civil Asset Forfeiture Reform

Act ("CAFRA"), and 28 U.S.C. § 2412 of the Equal Access to Justice Act ("EAJA").  *See* Dkt.

No. 61-1 at 1.

The Government tenders three reasons why Claimant Ross is not entitled to attorney's

fees, costs, or interest.  First, Claimant Ross has not "substantially prevailed" for the purpose of

collecting attorney's fees under 28 U.S.C. § 2465(b) of CAFRA.  *See* Dkt. No. 63 at 7-12.

Second, Claimant Ross is barred from obtaining attorney's fees by the multiple claims exception

set forth in 28 U.S.C. § 2465(b)(2)(C).  *See id.* at 12-13.  Third, Claimant Ross cannot obtain

attorney's fees through the EAJA as "EAJA fees are not available in civil forfeiture cases because

of the fee-shifting provision already available in 28 U.S.C. § 2465(b) of CAFRA."  *See id.* at 13.

Claimant Ross argues that he has "substantially prevailed" because "he has completely . .

. recovered his full [claim] of $1,213,113.11 . . . in this action even though there has been no

decision on the merits."  *See* Dkt. No. 61-1 at 5.  To qualify as a "prevailing party" in the context

of a fee-shifting statute, such as here under CAFRA, a party must have caused a material

alteration of the legal relationship of the parties and such change must be sanctioned by the

court.  *See Garcia v. Yonkers Sch. Dist.*, 561 F.3d 97, 102 (2d Cir. 2009) (noting that "[t]he

Supreme Court has held that a 'prevailing party' is one who has favorably effected a 'material

alteration of the legal relationship of the parties' by court order." (quoting *Buckhannon Bd. &*

*Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604, 121 S. Ct. 1835,

149 L. Ed. 2d 855 (2001) (quoting *Texas State Teachers Ass'n v. Garland Indep. School Dist.*,

489 U.S. 782, 792-93, 109 S. Ct. 1486, 103 L. Ed. 2d 866 (1989))) (other citations omitted).

"[W]hile a voluntary change in one party's conduct might effectively result in the other party

receiving the relief it sought in the suit, the term 'prevailing party' as used by Congress requires a

'judicially sanctioned change in the legal relationship of the parties.'"  *United States v. Any & All*

- 3 -

*Funds on deposit at JPMorgan Chase*, No. 12 Civ. 7530 (GBD), 2013 WL 5511348, *4

(S.D.N.Y. Oct. 2, 2013) (quoting [*Buckhannon*,] 532 U.S. at 605).

In the context of civil forfeiture actions, a dismissal without prejudice does not materially

alter the parties' legal relationship.  *See United States v. $13,275.21, More or Less, in U.S.*

*Currency*, No. SA-06-CA-171-XR, 2007 WL 316455, *4 (W.D. Tex. Jan. 31, 2007).  As such,

when a civil forfeiture matter is dismissed without prejudice, courts consistently hold that

claimants are not considered to have "substantially prevailed."  *See, e.g., United States v.*

*Dougherty*, 486 F. App'x 621, 622 (8th Cir. 2012) (*per curiam*) (holding claimant "was not a

substantially prevailing party for purposes of the fee-shifting provision in 28 U.S.C.

§ 2465(b)(1)(A)" because of the government's voluntary dismissal without prejudice); *United*

*States v. Approximately $16,500.00 in U.S. Currency*, 113 F. Supp. 3d 776, 783 (M.D. Pa. 2015)

(collecting cases, wherein district courts, addressing the government's voluntary dismissal of a

civil forfeiture action without prejudice, held claimants had not substantially prevailed and, thus,

were not entitled to attorney's fees under CAFRA).  In this case, because Judge Sharpe granted

the Government's motion to voluntarily dismiss the Contested Funds from the civil forfeiture

action, Claimant Ross obtained no enforceable judgment on the merits, effected no material

alteration to the relationships of the parties, and, therefore, has not substantially prevailed.[1]  *See*

---

[1] Claimant Ross also argues that, because the statute of limitations for the Government to initiate a subsequent action has expired, "the effect of the dismissal is a dismissal with prejudice," thereby creating a material alteration to the legal relationship of the parties.  *See* Dkt. No. 61-1 at 6 n.2.  Claimant Ross relies on *McCoy v. Goord*, 255 F. Supp. 2d 233, 252 (S.D.N.Y. 2003); however, such reliance is not persuasive.  In *McCoy*, the court held that a dismissal for failure to exhaust administrative remedies, without prejudice, was "tantamount" to a dismissal with prejudice when the statute of limitations has expired.  *See id.*  Irrespective of the fact that exhaustion of administrative remedies is far from the context within which dismissal arose in this case, *McCoy* does not stand for the proposition, as Claimant Ross ostensibly suggests, that a dismissal without prejudice is somehow transformed into a dismissal with prejudice upon expiration of the statute of limitations and, thereby, creates a material alteration to the legal

Dkt. No. 59 at 8-18.  For these reasons, the Court concludes that Claimant Ross is not eligible for

attorney's fees, costs, or interest under 28 U.S.C. § 2465(b).

Second, the multiple claims exception set forth in 28 U.S.C. § 2465(b)(2)(C) bars

Claimant Ross from obtaining attorney's fees.  CAFRA's "multiple claims exception" provides as

follows:

> [i]f there are multiple claims to the same property, the United
> States shall not be liable for costs and attorneys fees associated
> with any such claim if the United States –
>     (i) promptly recognizes such claim;
>     (ii) promptly returns the interest of the claimant in the
> property to the claimant, if the property can be divided without
> difficulty and there are no competing claims to that portion of the
> property;
>     (iii) does not cause the claimant to incur additional,
> reasonable costs or fees; and
>     (iv) prevails in obtaining forfeiture with respect to one or
> more of the other claims.

28 U.S.C. § 2465(b)(2)(C); *see also United States v. Khan*, 497 F.3d 204, 209 (2d Cir. 2007).

Applying the four factors of the multiple claims exception to this case, the Court finds

that Claimant Ross is barred from obtaining attorney's fees under CAFRA.

Within months of filing the complaint, the Government recognized both Claimant Ross's

and Claimant Company 1's claims and moved to bar all future claims pursuant to Section

(l)(D)(1)-(2) of General Order #15.  *See* Dkt. No. 23.  After investigation into the matter, the

Government voluntarily sought dismissal of the Contested Funds; and, upon the Government's

motion, the court granted dismissal without prejudice and a certificate of reasonable cause was

issued.  *See* Dkt. Nos. 44, 59.  Claimant Ross has not presented evidence, and the Court is

unaware of anything in the record to indicate, that the Government caused him to incur

---

relationship of the parties.  For these reasons, the Court finds Claimant Ross's statute of
limitations argument unconvincing and unavailing.

superfluous costs or fees.  The Contested Funds were separated from the balance of the

Defendant property and returned to Claimant Ross.  *See* Dkt. No. 68.  Lastly, the Government

obtained a judgment for forfeiture as to the majority of funds subject to forfeiture in this action.

*See* Dkt. No. 60.  Accordingly, all four factors of the multiple claims exception having been met,

the Court concludes that, even if Claimant Ross had substantially prevailed, he is not eligible for

fees pursuant to 28 U.S.C. § 2465(b)(2)(C).

Finally, Claimant Ross cannot obtain attorney's fees under the EAJA because fees

pursuant to 28 U.S.C. § 2412 of the EAJA are not available in civil forfeiture cases because the

fee-shifting provision in 28 U.S.C. § 2465(b) of CAFRA is available.  *See Khan*, 497 F.3d at 211

(explaining that EAJA fees are available only when there is no other applicable law;

consequently, "the EAJA and CAFRA are irreconcilably at odds" and EAJA fees are unavailable

in cases to which § 2465(b) applies).  Therefore, because the mechanism to seek fees was

available to Claimant Ross under CAFRA, he is barred from using the EAJA to do the same.


**B.      Release of the contested funds**

Claimant Ross moved the Court to compel the Government "to comply with the judgment

of this [c]ourt entered on March 6, 2023 . . . by releasing the $1,213,113.11 of Defendant

Currency . . . that is voluntarily dismissed to [Claimant] Ross."  *See* Dkt. No. 62-1 at 1.  The

Government responded that it held the Contested Funds for sixty days in anticipation of an

appeal by Claimant Company 1; but, upon learning that no appeal would be filed, initiated the

process of returning the Contested Funds to Claimant Ross.  *See* Dkt. No. 65 at 1.  On May 9,

2023, the Government filed a Department of Treasury Process Receipts and Returns that showed

that the $1,213,113.11 in U.S. Currency was returned to Claimant Ross.  *See* Dkt. No. 68.

Therefore, as Claimant Ross has obtained the relief he requested, the Court finds that his motion to compel Plaintiff to release funds it voluntarily dismissed is moot and, therefore, denies his motion.

**C.      Expedited ruling and reconsideration**

With regard to Claimant Ross's letter motion for an expedited ruling and for reconsideration, *see* Dkt. No. 69, the Court denies this motion.  With regard to Claimant Ross's request that the Court expedite an order on his motion for attorney's fees, such order, issued herein, was issued in due course.  As to the balance of his letter motion, Claimant Ross has requested that "in the event that this [c]ourt declines to award Ross fees as the prevailing party . . ., that this [c]ourt exercise its discretion under Federal Rule of Civil Procedure 60(b) to reconsider the certificate of reasonable cause it issued on March 6, 2023 . . . based on newly discovered evidence."  *See id.* at 2.

"The standard for granting a motion for reconsideration . . . is 'strict,' . . . and a previous ruling will only be reconsidered and vacated if: (1) there is an intervening change in the controlling law; (2) new evidence not previously available comes to light; or (3) it becomes necessary to remedy a clear error of law or to prevent manifest injustice. . . ."  *United States v. Jackson*, 41 F. Supp. 3d 156, 164 (N.D.N.Y. 2014) (internal citations omitted); *see also Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (stating that "reconsideration will generally be denied unless the moving party can point to controlling decisions or date that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court" (citations omitted)).  The "new evidence" that Claimant Ross appended to his letter motion is an email between employees of the bank from which the Defendant property

# SPA31

was seized, wherein the employees mention that proceeds from the sale of Claimant Ross's home were deposited in the account from which the Defendant property was seized. *See* Dkt. No. 69, Exhibit 1. Claimant Ross contends that this "new evidence" shows that the "Government did not have reasonable cause to seize the funds in his bank account because there were some legitimately obtained funds therein. *See id.* at 2. The Government argues that the email does not, as Claimant Ross contends, show that there was "no reasonable cause to seize his funds" and, therefore, would not alter the conclusion that the Court reached. *See* Dkt. No. 74. The Court agrees with the Government.

The reasons that the email would not alter the conclusion the Court reached are twofold. First, the Government did not have to ensure that every cent in Claimant Ross's account was derived from unlawful activity before the Defendant property was seized as, by their nature, financial crimes, particularly money laundering,[2] can involve the commingling of unlawfully obtained funds with "clean" funds. *See United States v. Warshak*, 631 F.3d 266, 318 (6th Cir. 2010) (stating that "'[n]ot all of the money involved in the transactions must be derived from the unlawful activity. When money from illegal sources is co-mingled with money from unspecified other sources, all such funds are attributable to the money laundering scheme.'" (quoting *United States v. Jamieson*, 427 F.3d 394, 404 (6th Cir. 2005) (internal citations and quotation marks omitted))).

Second, because the Government relied on 18 U.S.C. § 984 as the basis for the civil forfeiture and timely filed its complaint, there was no need to directly trace the fungible property remaining in the account. *See United States v. Approximately Six Hundred & Twenty Thousand*

---

[2] One of the underlying reasons that the Government sought forfeiture of the Defendant property was suspected money laundering. *See* Dkt. No. 1 at 1.

*Three Hundred & Forty-Nine Dollars & Eighty-Five Cents*, No. 13 CV 3966, 2015 WL 3604044, *4 (E.D.N.Y. June 5, 2015) (stating that "[t]he government's right to seize funds not directly traceable to a claimant's criminal activity is tempered only by a one-year statute of limitations running from the date of the offense" (citations omitted)); *United States v. U.S. Currency Deposited in Acct. No. 1115000763247 for Active Trade Co., Located at First Natl. Bank, Chicago, Ill.*, 176 F.3d 941, 947 (7th Cir. 1999) (affirming district court's decision that the government established probable cause to seize the entirety of funds in a bank account as property involved in illegal activity because the proceeds of the illegal activity far exceeded the amount of funds in the account at the time of seizure).

For these reasons, the Court finds that the email that Claimant Ross provided as new evidence fails to present information that could reasonably be expected to alter the Court's issuance of the certificate of reasonable cause and, therefore, the Court denies Claimant Ross's motion for reconsideration.

### III. CONCLUSION

Having reviewed the entire file in this matter, the parties' submissions and the applicable law and for the above-stated reasons, the Court hereby

**ORDERS** that Claimant Ross's motion for attorney's fees, costs and interest, *see* Dkt. No. 61, is **DENIED**; and the Court further

**ORDERS** that Claimant Ross's motion to compel Plaintiff to release funds it voluntarily dismissed, *see* Dkt. No. 62, is **DENIED**; and the Court further

## SPA33

**ORDERS** that Claimant Ross's letter motion requesting an expedited ruling on his motion for attorney's fees and reconsideration of the issuance of the certificate of reasonable cause, *see* Dkt. No. 69, is **DENIED**.

**IT IS SO ORDERED.**

Dated: March 22, 2024
       Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Judge

- 10 -