# 24-1421

# United States Court of Appeals
### for the
# Second Circuit

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

– v. –

RICHARD STUART ROSS,

*Claimant-Appellant,*

COMPANY 1,

*Claimant,*

$4,183,402.74 in U.S. Currency, seized from Regions Bank account
*1113 R.S. IOTA Trust Acct., $722,327.52 in U.S. Currency, seized from
Regions General Ledger (GL) *200 Bearing Cost Code (cc) *300,

*Defendants.*

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

**BRIEF OF THE RUTHERFORD INSTITUTE AND THE BUCKEYE
INSTITUTE AS *AMICI CURIAE* IN SUPPORT OF CLAIMANT-
APPELLANT RICHARD STUART ROSS AND FOR REVERSAL**

DAVID C. TRYON
ALEX M. CERTO
THE BUCKEYE INSTITUTE
88 East Broad Street, Suite 1300
Columbus, OH 43215
(614) 224-4422
d.tryon@buckeyeinstitute.org
a.certo@buckeyeinstitute.org

August 15, 2024

JOEL S. NOLETTE
WILEY REIN LLP
2050 M Street NW
Washington, DC 20036
(202) 719-7000
jnolette@wiley.law

*Attorneys for* Amici Curiae

 (800) 4-APPEAL • (331845)

## DISCLOSURE STATEMENT

The Rutherford Institute and the Buckeye Institute are tax-exempt nonprofit organizations. Neither *amici* has a corporate parent, and no publicly-owned company owns 10% or more stock in either *amici*.

# TABLE OF CONTENTS

INTEREST OF *AMICI CURIAE* ...................................................................1

SUMMARY OF THE ARGUMENT .........................................................2

ARGUMENT ...............................................................................................3

    I.    The text and context of CAFRA show that Ross "substantially prevail[ed]" in this forfeiture proceeding.......................3

    II.   The district court's contrary conclusion contravenes the central purpose of CAFRA's fee-shifting provision. ..........................12

    III.  The district court's contrary conclusion wrongly encourages gamesmanship to evade CAFRA. ...................................16

CONCLUSION ..........................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amigos Bravos v. EPA*,
No. 99-327, 2002 WL 35650105 (D.N.M. Jan. 16, 2002) ...................................6

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*,
532 U.S. 598 (2001)....................................................................................4, 10

*Church of Scientology W. U.S. v. IRS*,
769 F. Supp. 328 (C.D. Cal. 1991) ......................................................................7

*CRST Van Expedited, Inc. v. EEOC*,
578 U.S. 419 (2016)......................................................................................5, 12

*Culley v. Marshall*,
601 U.S. 377 (2024)........................................... 2, 4–5, 12, 14–15, 17

*Gottlieb v. Carnival Corp.*,
436 F.3d 335 (2d Cir. 2006) ..................................................................................8

*Gross v. FBL Fin. Servs., Inc.*,
557 U.S. 167 (2009)..............................................................................................11

*Haley v. Pataki*,
106 F.3d 478 (2d Cir. 1997) ..................................................................................4

*Hardt v. Reliance Standard Life Ins. Co.*,
560 U.S. 242 (2010)........................................................................................6, 11

*Holmes v. Secs. Inv. Prot. Corp.*,
503 U.S. 258 (1992)................................................................................................8

*In re Indu Craft, Inc.*,
749 F.3d 107 (2d Cir. 2014) ..................................................................................6

*J.W. Goldsmith, Jr., Grant Co. v. United States*,
254 U.S. 505 (1921)..............................................................................................12

*Katz v. Cellco P'ship*,
794 F.3d 341 (2d Cir. 2015) ..................................................................9

*Leonard v. Texas*,
580 U.S. 1178 (2017).............................................................................12

*Manhattan Rev. LLC v. Yun*,
919 F.3d 149 (2d Cir. 2019) ..................................................................5

*Nardone v. United States*,
308 U.S. 338 (1939)...............................................................................16

*Parker Drilling Mgmt. Servs., Ltd. v. Newton*,
587 U.S. 601 (2019)................................................................................8

*Quarles v. United States*,
587 U.S. 645 (2019)...............................................................................16

*Reinbold v. Evers*,
187 F.3d 348 (4th Cir. 1999) ..................................................................7

*Ruckelshaus v. Sierra Club*,
463 U.S. 680 (1983)..........................................................................10–11

*SAS Inst., Inc. v. Iancu*,
584 U.S. 357 (2018)...............................................................................11

*Snyder v. Phelps*,
562 U.S. 443 (2011)..................................................................................1

*Stinnie v. Holcomb*,
77 F.4th 200 (4th Cir. 2023) ............................................................4, 17

*Sweatt v. U.S. Navy*,
683 F.2d 420 (D.C. Cir. 1982) ................................................................7

*Thompson v. Clark*,
596 U.S. 36 (2022)....................................................................................5

*Tolentino v. Friedman*,
46 F.3d 645 (7th Cir. 1995) .....................................................................9

*Union of Needletrades, Indus. & Textile Emps. AFL-CIO, CLC v. INS*,
    336 F.3d 200 (2d Cir. 2003) ................................................................5

*United States v. $107,702.66 in U.S. Currency Seized from Lumbee*
    *Guar. Bank Acct. No. 82002495*,
    No. 14-cv-295, 2016 WL 413093 (E.D.N.C. Feb. 2, 2016) ..............13

*United States v. All Assets of Statewide Auto Parts, Inc.*,
    971 F.2d 896 (2d Cir. 1992) ..............................................................13

*United States v. Balogun*,
    146 F.3d 141 (2d Cir. 1998) ..............................................................10

*United States v. Certain Real Prop., Located at 317 Nick Fitchard*
    *Rd., N.W., Huntsville, AL*,
    579 F.3d 1315 (11th Cir. 2009) ........................................................13

*United States v. Davis*,
    648 F.3d 84 (2d Cir. 2011) ..............................................................6–7

*United States v. Funds Held in the Name or for the Benefit of*
    *Wetterer*,
    210 F.3d 96 (2d Cir. 2000) ................................................................18

*United States v. Funds in the Amount of $574,840*,
    719 F.3d 648 (7th Cir. 2013) ............................................................10

*United States v. Khan*,
    497 F.3d 204 (2d Cir. 2007) ................................................6, 13, 17

*W. Va. Univ. Hosps., Inc. v. Casey*,
    499 U.S. 83 (1991)..............................................................................11

*Waterloo Distilling Corp. v. United States*,
    282 U.S. 577 (1931)..............................................................................4

*Wis. Cent. Ltd. v. United States*,
    585 U.S. 274 (2018)..............................................................................8

## Statutes

28 U.S.C. § 2465 ..............................................................................4, 9

Americans with Disabilities Act, 42 U.S.C. § 12205 ...............................................9

Civil Asset Forfeiture Reform Act of 2000, Pub. L. No. 106-185, 114
  Stat. 202 (2000)............................................................................................2, 10

Fair Housing Amendments Act, 42 U.S.C. § 3613 ..................................................9

Freedom of Information Act, 5 U.S.C. § 552 ...........................................................7

Privacy Act of 1974, 5 U.S.C. § 552a......................................................................7

Unfair Trade Practices Act, 7 U.S.C. § 2305 ...........................................................9

Voting Rights Act, 52 U.S.C. § 10310 .....................................................................9

**Other Authorities**

Alexander Hamilton, *Report on the Petition of Christopher Saddler*,
  The Papers of Alexander Hamilton, vol. 6 (Jan. 19, 1790) ...............................14

Andrew Crawford, *Civil Asset Forfeiture in Massachusetts: A Flawed
  Incentive Structure and Its Impact on Indigent Property Owners*,
  35 B.C. J. L. & Soc. Just. 257 (2015) ...............................................................15

C.J. Ciaramella, *Poor Neighborhoods Hit Hardest by Asset Forfeiture
  in Chicago, Data Shows*, Reason (June 13, 2017)......................................14–15

H.R. Rep. No. 106-192 (1999)..................................................................12–13, 16

Naomi Johnson et al., *I Don't Know Why I'm Here: Observations
  from Cook County's Civil Asset Forfeiture Courtrooms* (2023) .......................15

Stefan D. Cassella, *The Civil Asset Forfeiture Reform Act of 2000:
  Expanded Government Forfeiture Authority and Strict Deadlines
  Imposed on All Parties*, 27 J. Legis. 97 (2001) ................................................13

Terrence G. Reed, *On the Importance of Being Civil: Constitutional
  Limitations on Civil Forfeiture*, 39 N.Y.L. Sch. L. Rev. 255 (1994)................12

# INTEREST OF *AMICI CURIAE*[1]

The Rutherford Institute is a nonprofit civil liberties organization headquartered in Charlottesville, Virginia. Founded in 1982 by its President, John W. Whitehead, Rutherford provides legal assistance at no charge to individuals whose constitutional rights have been threatened or violated and educates the public about constitutional and human rights issues affecting their freedoms. Rutherford works tirelessly to resist tyranny and threats to freedom by seeking to ensure that the government abides by the rule of law and is held accountable when it infringes on the rights guaranteed by the Constitution and laws of the United States. Rutherford's work has been relied on by the Supreme Court. *See, e.g.*, *Snyder v. Phelps*, 562 U.S. 443, 448 (2011).

Founded in 1989, The Buckeye Institute is an independent research and educational institution—a think tank—whose mission is to advance free-market public policy in the states. The staff at Buckeye accomplishes the organization's mission by performing timely and reliable research on key issues, compiling and

---

[1] Ross consents to the filing of this *amicus* brief. *See* Fed. R. App. P. 29(a)(2). The government "does not oppose," but out of an abundance of caution *Amici Curiae* have moved for leave to file this brief in any event. *See id.* No party or party's counsel has authored this brief, in whole or in part, or contributed money that was intended to fund preparing or submitting this brief. No person contributed money that was intended to fund preparing or submitting this brief besides *Amici Curiae*, their members, or their counsel.

synthesizing data, formulating free-market policy solutions, and marketing those policy solutions for implementation in Ohio and replication throughout the country. Buckeye is a nonpartisan, non-profit, tax-exempt organization as defined by I.R.C. Section 501(c)(3), dedicated to protecting individual liberties, and especially those liberties guaranteed by the Constitution of the United States, against government interference. Buckeye is a leading advocate for criminal justice reform, promoting policies that keep communities safe through fair processes and fair laws that produce just outcomes. Buckeye files and joins *amicus* briefs that are consistent with its mission and goals. Most recently, Buckeye's work featured prominently in *Culley v. Marshall*, involving a due process challenge to state civil forfeiture practices. *See* 601 U.S. 377, 395–96 (2024) (Gorsuch, J., concurring); *id.* at 405–06 (Sotomayor, J., dissenting).

*Amici Curiae* have a particular interest in this case because civil forfeiture poses a grave threat to individual liberty and to the right to use and enjoy property, which fee-shifting helps deter.

## SUMMARY OF THE ARGUMENT

In the face of public outcry over the government's abuse of civil forfeiture, Congress enacted the Civil Asset Forfeiture Reform Act of 2000, Pub. L. No. 106-185, 114 Stat. 202 (2000) ("CAFRA"), for the express purpose of making forfeiture procedures fair for property owners and giving them the means to make themselves

2

whole after being wrongly forced to trudge through such procedures. To fulfill this purpose, CAFRA mandates that the government pay litigation expenses to property owners who "substantially prevail[]" in forfeiture proceedings.

After being forced to run the civil forfeiture gauntlet, Claimant-Appellant Richard Stuart Ross prevailed in these proceedings by getting back his wrongly seized money. But because he won by convincing the United States government's attorneys that the case was so meritless that they sought and obtained a voluntary dismissal, the district court concluded that Ross did not "substantially prevail[]" within the meaning of CAFRA.

The text and context of CAFRA's fee-shifting provision require a different conclusion. Also, the district court's statutory interpretation contravenes the express purpose of CAFRA. And it makes CAFRA self-defeating, giving the government a roadmap to evade the statute by inflicting the very harms CAFRA was meant to redress while avoiding the deterrence to such misconduct that Congress enacted in the law.

## ARGUMENT

### I. The text and context of CAFRA show that Ross "substantially pre-vail[ed]" in this forfeiture proceeding.

Under CAFRA, a claimant like Ross who conclusively obtains the return of his seized property "substantially prevails" in "any civil proceeding to forfeit prop-erty" under federal law, meaning that the United States "shall be liable" for his

litigation expenses.  *See* 28 U.S.C. § 2465(b)(1).  In concluding otherwise, the district court erred by ignoring the text and context of CAFRA in two critical ways.

First, contrary to the plain text of CAFRA as applied here, the district court held Ross to a higher fee-shifting standard applicable to "prevailing party" plaintiffs under other statutes.  *See* Spec. App. 25–28 (relying ultimately on *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598 (2001) (addressing the meaning of "prevailing party" in the Americans with Disabilities Act and the Fair Housing Amendments Act)).[2]  But under CAFRA, a claimant like Ross is a *de facto* defendant.  CAFRA's fee-shifting provision provides that a claimant who substantially prevails is entitled to recover fees "in any civil proceeding to forfeit property."  28 U.S.C. § 2465(b)(1).  Where—as here—the government began the *in rem* civil proceeding in question, the government is the "plaintiff," *see* App. 11, and the claimant stands in the shoes of the defendant, *cf. Waterloo Distilling Corp. v. United States*, 282 U.S. 577, 581 (1931) (recognizing that *in rem* civil forfeiture proceedings are a "legal fiction").  *See also Culley*, 601 U.S. at 395 (Gorsuch,

---

[2] In fact, while the district court required Ross to obtain an "enforceable judgment on the merits" to qualify, Spec. App. 27, not even "prevailing party" plaintiffs have to obtain a final judgment on the merits.  *See, e.g.*, *Haley v. Pataki*, 106 F.3d 478, 483–84 (2d Cir. 1997) (holding that "interim relief . . . based on the merits" is enough to make a plaintiff a "prevailing party"); *accord Stinnie v. Holcomb*, 77 F.4th 200, 209–10, 216 (4th Cir. 2023) (en banc) (collecting authorities), *cert. granted sub nom. Lackey v. Stinnie*, 144 S. Ct. 1390 (2024).  And a lower standard than that applies for determining whether a party "substantially prevails" under CAFRA.

4

J., concurring) ("In civil forfeiture . . . the government can simply take the property and later proceed to court to earn the right to keep it . . . ."); *id.* at 404 (Sotomayor, J., dissenting) ("Civil forfeiture is a hybrid, where prosecutors proceed against any property (*in rem*) they believe is connected to a crime, even when the owner is innocent.").

Thus, the district court badly faltered out of the gate in its analysis. Under the fee-shifting standard applicable to prevailing defendants like Ross, so long as "the case is resolved in the defendant's favor"—whether resolved "on the merits or not"—the defendant "prevail[s]." *See CRST Van Expedited, Inc. v. EEOC*, 578 U.S. 419, 431–32 (2016); *accord Manhattan Rev. LLC v. Yun*, 919 F.3d 149, 153 (2d Cir. 2019) (rejecting the argument that a defendant-"prevailing party" under the Copyright Act and the Lanham Act had to "obtain[] at least some relief on the merits of her claim" to qualify); *cf. Thompson v. Clark*, 596 U.S. 36, 39 (2022) (holding that, to establish the "favorable termination" element of a malicious-prosecution claim, a litigant need show only that their "criminal prosecution . . . ended without a conviction," even without any "affirmative indication" of innocence).

Second, the district court wrongly treated CAFRA's "substantially prevails" standard as interchangeable with "prevailing party" standards in other statutes.[3]

---

[3] Granted, after *Buckhannon* was decided in 2001, this Court treated as the same the "substantially prevailed" standard in the Freedom of Information Act ("FOIA") and the "prevailing party" standard in other statutes. *See Union of Needletrades, Indus.*

Start with the relevant phrase itself. "Necessarily" as a matter of grammar, a litigant who **substantially prevails** need not have "achieved" as much as "a 'prevailing party'" to qualify. *See Amigos Bravos v. EPA*, No. 99-327, 2002 WL 35650105, at *2 (D.N.M. Jan. 16, 2002). As Ross observes, the plain meaning of "substantially" in this context means that the party need prevail only in large part and as to the substance of the dispute (rather than technical form). *See* Ross Br. 28–29. Under the plain text of CAFRA, then, a party who "substantially prevails" is different from a "prevailing party."

This Court's decision in *United States v. Davis* illustrates the point. *See* 648 F.3d 84, 98 (2d Cir. 2011). There, this Court assessed whether the claimant had "substantially prevail[ed]" under Section 2465(b)(1). *Id.* at 97. To conduct the requisite analysis, this Court explained that it had to "first . . . identify the claimant's **purpose** for challenging the forfeiture" and "then . . . determine whether the claimant

---

& *Textile Emps. AFL-CIO, CLC v. INS*, 336 F.3d 200, 206–08 (2d Cir. 2003). And in dicta it has suggested that this logic "should" apply to CAFRA. *See United States v. Khan*, 497 F.3d 204, 209 n.7 (2d Cir. 2007). But neither decision controls—this case is not about FOIA, the Court is not bound by a prior panel's dicta, *In re Indu Craft, Inc.*, 749 F.3d 107, 116 n.12 (2d Cir. 2014), and the Supreme Court has since made clear that its "'prevailing party' precedents . . . do not govern the availability of fees awards" under provisions that do "not limit the availability of attorney's fees to the 'prevailing party,'" *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 253 (2010).

achieved that purpose in *some* measurable way." *Id.* at 98 (emphasis added).[4] *Davis*'s analysis comports with the plain meaning of "substantially," looking to whether success in substance has been achieved to some degree.

The common interpretation of "substantially prevailed" as used in fee-shifting statutes at the time CAFRA was enacted reinforces this plain-meaning understanding. For instance, in both FOIA and the Privacy Act, Congress authorized an award of litigation expenses to a "complainant" who "substantially prevailed" in a lawsuit against the government. 5 U.S.C. § 552(a)(4)(E)(i); *id.* § 552a(g)(2)(B). By 2000, courts generally understood this language to mean that a plaintiff was entitled to such expenses even absent formal success so long as the lawsuit led to the desired result, practically speaking (*e.g.*, in the context of FOIA and the Privacy Act, the release of the requested records). *See, e.g.*, *Reinbold v. Evers*, 187 F.3d 348, 363 (4th Cir. 1999) (collecting authorities); *Sweatt v. U.S. Navy*, 683 F.2d 420, 423 (D.C. Cir. 1982) (per curiam); *see also Church of Scientology W. U.S. v. IRS*, 769 F. Supp. 328, 330 (C.D. Cal. 1991) (concluding that the plaintiff "substantially prevailed"

---

[4] Applying that test, this Court held that the claimant had not "substantially prevail[ed]" because she sought to reclaim the property in dispute but she was "ultimately forced to relinquish possession" of it in the forfeiture proceedings. *Davis*, 648 F.3d at 98. Here, where Ross reclaimed the subject property in full, the opposite conclusion follows.

under FOIA even though it voluntarily dismissed the case after obtaining the records in question).

"It is a commonplace of statutory interpretation that Congress legislates against the backdrop of existing law." *Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 587 U.S. 601, 611 (2019) (internal quotation marks omitted). Thus, when Congress enacts language that has been the subject of "judicial gloss" of "many lower federal courts," that gloss informs the meaning of the language Congress used. *See Holmes v. Secs. Inv. Prot. Corp.*, 503 U.S. 258, 267–68 (1992) (internal quotation marks omitted). Here, when Congress enacted CAFRA, "substantially prevailed" required consideration of the ***substance***, rather than the technical form, of the litigant's success. And because Congress "used the same words" in CAFRA in 2000, it must be "assume[d]" that Congress "intended them to have the same meaning that courts had already given them." *Holmes*, 503 U.S. at 268; *see also Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 277 (2018) (emphasizing that the meaning of statutory terms "at the time Congress enacted the statute" controls (internal quotation marks omitted)); *Gottlieb v. Carnival Corp.*, 436 F.3d 335, 338 (2d Cir. 2006) ("Background principles of law ***in effect at the time Congress passes a statute*** can be useful in statutory interpretation." (emphasis added) (cleaned up)).

The context of Section 2465(b)(1) reinforces the plain meaning of "substantially prevailed." To begin, Congress's intention to create a more claimant-friendly

fee-shifting provision for civil forfeiture abuses than fee-shifting provisions in other statutes is apparent from the immediate context. Congress was so concerned about governmental abuse of civil forfeiture that it ***mandated*** fee awards rather than making them permissive—"[when] the claimant substantially prevails, the United States ***shall*** be liable . . . ." 28 U.S.C. § 2465(b)(1) (emphasis added). By contrast, fee shifting in many other statutes is discretionary. For instance, the Fair Housing Amendments Act provides that "the court, ***in its discretion, may*** allow the prevailing party . . . a reasonable attorney's fee and costs." 42 U.S.C. § 3613(c)(2) (emphasis added); *see also, e.g.*, Americans with Disabilities Act, 42 U.S.C. § 12205 (same); Unfair Trade Practices Act, 7 U.S.C. § 2305(a) (same); Voting Rights Act, 52 U.S.C. § 10310(e) (same).

The juxtaposition of these statutes shows the special solicitude Congress had for those wronged by the government's overly aggressive application of civil forfeiture, ensuring they can obtain full recovery. *See Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015) (recognizing generally that "Congress's use of a mandatory 'shall' . . . imposes discretionless obligations" (cleaned up)); *cf. Tolentino v. Friedman*, 46 F.3d 645, 651–52 (7th Cir. 1995) (highlighting how mandatory fee-shifting in the Fair Debt Collection Practices Act is a means of "fulfilling Congress's intent" of robust private enforcement to vindicate "important . . . rights" that ultimately benefits the "public as a whole" (cleaned up)). And this special solicitude for CAFRA

claimants underscores the difference between CAFRA's lenient "substantially prevails" standard versus "prevailing party" standards in other fee-shifting statutes.

Also, consider the broader context. In CAFRA, Congress enacted Section 2465(b)(1) alongside an amendment to an existing forfeiture statute providing that courts may not "allow one party to pursue discovery while the other party is substantially unable to do so." *See* CAFRA § 8(a), 114 Stat. at 216 (codified at 18 U.S.C. § 981(g)(3)). By qualifying "unable" with "substantially," Congress made clear that a party need not be wholly unable to engage in discovery to trigger this protection; they only need be "hamstr[u]ng" in their ability to do so. *See United States v. Funds in the Amount of $574,840*, 719 F.3d 648, 654 (7th Cir. 2013).

Courts "presume that Congress does not employ the same word to convey different meanings within the same statute." *United States v. Balogun*, 146 F.3d 141, 145 (2d Cir. 1998) (collecting authorities). Thus, as in Section 981(g)(3), so too in Section 2465(b)(1), a party need not "prevail" completely and in all ways to qualify for fee-shifting; less suffices.

Further, when Congress enacted CAFRA, the U.S. Code brimmed with "prevailing party" fee-shifting statutes. *See, e.g.*, *Buckhannon Bd. & Care Home*, 532 U.S. at 602 (collecting examples); *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 684 n.3 (1983) (collecting examples). If "Congress had wanted" to adopt a prevailing-party standard in CAFRA, "it knew exactly how to do so—it could have simply

10

borrowed from" those numerous examples. *SAS Inst., Inc. v. Iancu*, 584 U.S. 357, 364 (2018). Instead, "Congress opted" for something else. *Id.*; *cf. Ruckelshaus*, 463 U.S. at 689 ("Congress understood 'prevailing party' and 'partially prevailing party' as two quite different things . . . .").

"Congress's choice" in CAFRA "to depart from the model of . . . closely related statute[s] is a choice" that the courts may not "disregard." *See SAS Inst.*, 584 U.S. at 364. As the Supreme Court has emphasized specifically in the fee-shifting context, it is not the courts' "function to eliminate clearly expressed inconsistency of policy and to treat alike subjects that different Congresses have chosen to treat differently." *W. Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 101 (1991); *cf. Hardt*, 560 U.S. at 253–54 (cautioning courts interpreting fee-shifting statutes "not to apply rules applicable under one statute to a different statute without careful and critical examination" (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 174 (2009))). Instead, when faced with a clear "difference between the more parsimonious policy of an earlier enactment and the more generous policy of a later one," the courts' task is not to rewrite the law through the guise of interpretation, *see W. Va. Univ. Hosps.*, 499 U.S. at 101, but to "give effect to Congress' choice," *Gross*, 557 U.S. at 177 n.3. Here, that requires avoiding a false equivalence between "substantially prevails" and "prevailing party."

## II.   The district court's contrary conclusion contravenes the central purpose of CAFRA's fee-shifting provision.

CAFRA's text and context alone warrant reversal here.  But the district court's holding also contravenes the "policy" that "underpins" CAFRA's fee-shifting provision, *see CRST Van Expedited*, 578 U.S. at 434, further justifying reversal.

Historically, civil forfeiture laws were "narrow," *Leonard v. Texas*, 580 U.S. 1178 (2017) (Thomas, J., statement respecting denial of certiorari), limited to specific subject matters like customs and piracy, *id.*, and applied skeptically, *see, e.g.*, *J.W. Goldsmith, Jr., Grant Co. v. United States*, 254 U.S. 505, 510 (1921) (expressing concern that a civil forfeiture statute "seem[ed] to violate that justice which should be the foundation of the due process of law required by the Constitution"). But starting in the 1970s as part of the "War on Drugs," law enforcement officials "embraced forfeiture as a valuable tool in their battle with crime," and legislatures obliged with sweeping new civil forfeiture statutes.  Terrence G. Reed, *On the Importance of Being Civil: Constitutional Limitations on Civil Forfeiture*, 39 N.Y.L. Sch. L. Rev. 255, 269 (1994); *Culley*, 601 U.S. at 395 (Gorsuch, J., concurring).

By the mid-1990s, "disquieting rumblings" arose about this expansive use of forfeiture.  *See* H.R. Rep. No. 106-192, at 6 (1999).  For instance, this Court was "enormously troubled by the government's increasing and virtually unchecked use of the civil forfeiture statutes and the disregard for due process that is buried in those

12

statutes." *United States v. All Assets of Statewide Auto Parts, Inc.*, 971 F.2d 896, 905 (2d Cir. 1992).

In reaction to this "public outcry over the government's too-zealous pursuit of civil and criminal forfeiture," *Khan*, 497 F.3d at 208, Congress enacted CAFRA. The law made "the most far-reaching changes to civil forfeiture procedure ever enacted." Stefan D. Cassella, *The Civil Asset Forfeiture Reform Act of 2000: Expanded Government Forfeiture Authority and Strict Deadlines Imposed on All Parties*, 27 J. Legis. 97, 150 (2001). And its express goal was to "make federal civil forfeiture procedures fair for property owners," particularly by giving claimants "the means to recover their property and make themselves whole." H.R. Rep. No. 106-192, at 11.

"As part and parcel of this effort to deter government overreaching" through civil forfeiture, "Congress provided for the payment of 'reasonable attorney fees and other litigation costs' to claimants who 'substantially prevail[]'" in such proceedings. *Khan*, 497 F.3d at 208. CAFRA's "fee-shifting provision was designed to make claimants whole for their efforts to recover their property in a civil forfeiture action." *United States v. Certain Real Prop., Located at 317 Nick Fitchard Rd., N.W., Huntsville, AL*, 579 F.3d 1315, 1322–23 (11th Cir. 2009); *accord United States v. $107,702.66 in U.S. Currency Seized from Lumbee Guar. Bank Acct. No. 82002495*, No. 14-cv-295, 2016 WL 413093, at *1 (E.D.N.C. Feb. 2, 2016).

13

Robust application and enforcement of this fee-shifting provision is critical to serving CAFRA's purpose, as the potential for abusive forfeiture practices remains great. *See* Alexander Hamilton, *Report on the Petition of Christopher Saddler*, The Papers of Alexander Hamilton, vol. 6 (Jan. 19, 1790), https://tinyurl.com/3fh9xkxn ("[I]ncidents[] from which heavy and ruinous forfeitures ensue . . . require the constant existence of some power capable of affording relief.").

Illustrating as much, many "agencies seem to prioritize seizures they can monetize." *Culley*, 601 U.S. at 396 (Gorsuch, J., concurring) (citing Brief of *Amicus Curiae* the Buckeye Institute in Support of Petitioners at 7–8, *Culley v. Marshall*, 601 U.S. 377 (2023) (No. 22-585), 2023 WL 4352094, at *7–8). Thus, an agency's list of seized assets might include not only obvious crime proceeds—weapons seized from gang members or drugs seized from dealers—but also more prosaic items such as cufflinks and Xbox controllers that they can sell. C.J. Ciaramella, *Poor Neighborhoods Hit Hardest by Asset Forfeiture in Chicago, Data Shows*, Reason (June 13, 2017), https://tinyurl.com/9t99ews4. Or, as in this case, the government might go straight for cash. And "[s]ome agencies . . . reportedly place special emphasis on seizing low-value items and relatively small amounts of cash . . . because the cost of litigating to retrieve the property may cost more than the value of the property itself." *Culley*, 601 U.S. at 396 (Gorsuch, J., concurring) (citing Lisa Knepper et al., *Policing for Profit: The Abuse of Civil Asset Forfeiture* 9 (3d ed. 2020)).

14

Also, data shows that "'the poor and other groups'"—those "'least able to defend their interests'" such as by hiring attorneys to challenge forfeitures—"suffer most." *Id.* at 397 (Gorsuch, J., concurring) (quoting *Leonard*, 580 U.S. 1178 (Thomas, J., statement respecting denial of certiorari)); *see also id.* at 406 (Sotomayor, J., dissenting) ("[O]fficers have a financial incentive to target marginalized groups . . . who are less likely to have the resources to challenge the forfeiture in court.").

For example, a 2017 study found that police seizures in and around Chicago "were heaviest in low-income neighborhoods." Ciaramella, *supra*. A 2015 law review article recounted several studies illustrating how civil forfeiture was "especially problematic for susceptible and vulnerable population segments such as low-income parties" who "lack the resources necessary to combat an unjust seizure of property." Andrew Crawford, *Civil Asset Forfeiture in Massachusetts: A Flawed Incentive Structure and Its Impact on Indigent Property Owners*, 35 B.C. J. L. & Soc. Just. 257, 272–77 (2015). As just one case-in-point, a report last year revealed that 67% of property owners involved in civil forfeiture proceedings in Cook County, Illinois, did not have an attorney. *See* Naomi Johnson et al., *I Don't Know Why I'm Here: Observations from Cook County's Civil Asset Forfeiture Courtrooms* 1 (2023), https://tinyurl.com/5xk67fkc.

15

CAFRA's fee-shifting provision thus serves a critical role in leveling the playing field by ensuring that claimants whose property has been wrongly seized can have a chance to obtain an attorney and challenge effectively such seizures. *See* H.R. Rep. No. 106-192, at 11. Without it, many claimants would not be able even to get a meaningful foothold inside the courthouse doors. The district court's approach exacerbates these problems and deters property owners—and attorneys who wish to represent them—from seeking redress under CAFRA, by signaling that even claimants who win back their property may not be able to recoup their litigation expenses in challenging a forfeiture if the government abandons its claim voluntarily once it realizes it is going to lose. Thus, the district court's interpretation of "substantially prevails" contravenes CAFRA's purpose of ensuring fairness and restitution to innocent property owners.

## III.    The district court's contrary conclusion wrongly encourages gamesmanship to evade CAFRA.

Ordinarily, a "decent respect for the policy of Congress" prohibits courts from "imputing to it a self-defeating, if not disingenuous purpose." *Nardone v. United States*, 308 U.S. 338, 341 (1939); *accord Quarles v. United States*, 587 U.S. 645, 654 (2019) ("We should not lightly conclude that Congress enacted a self-defeating statute."). But the district court's decision does just that, providing yet another reason to reverse.

16

Under the district court's interpretation of "substantially prevails," all the government need do to avoid the consequences of pursuing a baseless forfeiture is abandon the pursuit before formally losing. Until that time, it "may freely litigate the case . . . , hoping for the best or, perhaps, [simply] to outlast an indigent" property owner. *See Stinnie*, 77 F.4th at 210. If the case starts going south, the government can then just voluntarily dismiss it and leave the property owner "holding the bag." *See id.* The "predictable outcome of this gamesmanship" will be "fewer attorneys willing to represent" civil forfeiture claimants and thus fewer claimants able to challenge wrongful forfeitures. *See id.*; *see also* Brief of the Chief Justice Earl Warren Institute on Race, Ethnicity & Diversity et al. as *Amici Curiae* in Support of Respondents at 7, *Sole v. Wyner*, 551 U.S. 74 (2007) (No. 06–531), 2007 WL 1022676, at *7 (summarizing empirical research indicating that restricting fee recovery has undermined civil rights enforcement by both conservative and liberal public interest organizations).

Especially because many property owners cannot afford the cost to challenge forfeitures, the district court's approach encourages the very seize-first, ask-questions-later mentality that Congress enacted CAFRA to deter. *See Khan*, 497 F.3d at 208; *cf. Culley*, 601 U.S. at 396 (Gorsuch, J., concurring) (observing how the government's forfeiture practices are influenced by whether the costs a claimant faces to contest forfeitures are prohibitively expensive). If this approach is upheld, the

17

government can act with impunity and thus will have every "incentive[]" to continue pursuing "aggressive but marginal claims" because, at worst, it can just abandon those claims—thereby avoiding the CAFRA-mandated fee-shifting consequences for its actions—with little downside. *See United States v. Funds Held in the Name or for the Benefit of Wetterer*, 210 F.3d 96, 110 (2d Cir. 2000).

The plain text and context of Section 2465(b)(1) render the district court's conclusion untenable. But the self-defeating results it entails for CAFRA confirms its error.

## CONCLUSION

For all these reasons, this Court should reverse.

Dated: August 15, 2024                Respectfully submitted,

                                       */s/ Joel S. Nolette*
                                       Joel S. Nolette
                                       WILEY REIN LLP
                                       2050 M Street NW
                                       Washington, DC 20036
                                       (202) 719-7000
                                       jnolette@wiley.law

                                       David C. Tryon
                                       Alex M. Certo
                                       THE BUCKEYE INSTITUTE
                                       88 East Broad Street, Suite 1300
                                       Columbus, OH 43215
                                       (614) 224-4422
                                       d.tryon@buckeyeinstitute.org
                                       a.certo@buckeyeinstitute.org

                                       *Attorneys for* Amici Curiae

18

## CERTIFICATE OF COMPLIANCE

I, Joel S. Nolette, hereby certify that this brief complies with the type-volume limit of Federal Rule of Appellate Procedure 29(a)(5) because, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f), this brief contains 4,252 words.

I, Joel S. Nolette, also hereby certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word, Microsoft 365 Apps for Enterprise, in fourteen-point Times New Roman font.

Dated: August 15, 2024

*/s/ Joel S. Nolette*
Joel S. Nolette

*Counsel for* Amici Curiae

## CERTIFICATE OF SERVICE

I, Joel S. Nolette, hereby certify that on August 15, 2024, I caused the foregoing to be filed with the Clerk of Court of the U.S. Court of Appeals for the Second Circuit by using the Court's CM/ECF system.  I further certify that all counsel of record will be served by the CM/ECF system.


Dated: August 15, 2024                          */s/ Joel S. Nolette*
                                                Joel S. Nolette

                                                *Counsel for* Amici Curiae