# 24-1421

IN THE

# United States Court of Appeals
**FOR THE SECOND CIRCUIT**

_____

UNITED STATES OF AMERICA,

                       *Plaintiff-Appellee*,

v.

RICHARD STUART ROSS,

                       *Claimant-Appellant*,

$4,183,402.74 in U.S. Currency, seized from Regions Bank account *113 R.S. IOTA Trust Acct., $722,327.52 in U.S. Currency, seized from Regions General Ledger (GL) *200 Bearing Cost Code (cc) *300,

                       *Defendants*.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
THE HONORABLE FREDERICK J. SCULLIN, NO. 5:22-CV-00138

_____

**BRIEF FOR *AMICI CURIAE* CATO INSTITUTE,
GOLDWATER INSTUTE, AND MANHATTAN INSTITUTE
IN SUPPORT OF CLAIMANT-APPELLANT**

_____

MICHAEL L. YAEGER
CARLTON FIELDS, P.A.
405 Lexington Ave., 36th Floor
New York, New York 10174
(212) 785-2577
myaeger@carltonfields.com

NATHANIEL G. FOELL
CARLTON FIELDS, P.A.
4221 W. Boy Scout Blvd., Ste. 1000
Tampa, FL 33607
(813) 229-4188
nfoell@carltonfields.com

# CONTENTS

                                                                                                                             **Page**

INTEREST OF *AMICI CURIAE* .................................................................................1

SUMMARY OF ARGUMENT .....................................................................................2

ARGUMENT .................................................................................................................3

    I.    The government has a recurring practice of seeking last-minute and unconditional dismissals without prejudice in CAFRA cases, thereby preventing wronged claimants from recovering attorney fees. .......................3

        A.    In this case, the government has frustrated CAFRA's plain meaning and Congress's clear intent to provide attorney fees. .................................3

        B.    Cases from around the country show that the government's approach in this case is not anomalous, but representative. .........................................5

        C.    The government, the only forfeiture plaintiff, and the most frequent and sophisticated forfeiture litigant in the federal courts, responds to incentives. ..................................................................................................7

    II.   The district court erred by granting the government an unconditional dismissal without prejudice. .........................................................................9

CONCLUSION ...........................................................................................................11

# AUTHORITIES

Page(s)

## Cases

*Bennis v. Michigan*,
   516 U.S. 442 (1996)...................................................................................9

*Camilli v. Grimes*,
   436 F.3d 120 (2d Cir. 2006) ..................................................................9, 10

*Kwan v. Schlein*,
   634 F.3d 224 (2d Cir. 2011) .......................................................................10

*United States v. $107,702.66*,
   No. 7:14-CV-00295 (E.D.N.C. 2014)...............................................5, 6, 7

*United States v. $13,275.21*,
   No. 5:06-CV-00171 (W.D. Tex. 2006).........................................................5

*United States v. $32,820.56*,
   No. 5:13-cv-04102 (N.D. Iowa 2013) .........................................................5

*United States v. 2002 BMW*,
   No. 4:05-cv-01155 (S.D. Tex. 2005)............................................................5

*United States v. Approximately $16,500.00*,
   No. 1:14-CV-00129 (M.D. Pa. 2014) ..........................................................5

*United States v. One 2008 Toyota Rav 4 Sports Utility Vehicle*,
   No. 2:09-cv-05672 (C.D. Cal. 2009) ...........................................................5

*Zagano v. Fordham University*,
   900 F.2d 12 (2d Cir. 1990) ..............................................................9, 10, 11

## Statutes and Legislative Materials

28 U.S.C. § 2465 ....................................................................................... 2, 3

H.R. REP. NO. 105-358 (1997)......................................................................2

H.R. REP. NO. 106-192 (1999)......................................................................3

**Other Authorities**

David Pimentel, *Forfeitures Revisited: Bringing Principle to Practice in Federal Court*, 13 NEV. L.J. 1 (2012) ............................................................. 7

Eric Blumenson & Eva Nilsen, *Policing for Profit: The Drug War's Hidden Economic Agenda*, 65 U. CHI. L. REV. 35 (1998) ..................................... 8

Federal Rule of Civil Procedure 41(a) ................................................................. 3

Jefferson E. Holcomb et al*., Civil Asset Forfeiture Laws and Equitable Sharing Activity by the Police*, 17 CRIMINOLOGY & PUB. POL'Y 101 (2018) ............................................................................................. 9

LISA KNEPPER ET AL., INSTITUTE FOR JUSTICE, POLICING FOR PROFIT: THE ABUSE OF CIVIL ASSET FORFEITURE (3d ed. 2020) ........................................ 7

Michael Van den Berg, *Proposing a Transactional Approach to Civil Forfeiture Reform*,
 163 U. PA. L. REV. 867 (2015) ..................................................................... 4

Stephen B. Herpel, *Toward a Constitutional Kleptocracy: Civil Forfeiture in America*, 96 MICH. L. REV. 1910 (1998) ........................................ 7

Tamara R. Piety, *Scorched Earth: How the Expansion of Civil Forfeiture Doctrine Has Laid Waste to Due Process*, 45 U. MIAMI L. REV. 911 (1991) ................................................................................ 7

U.S. Attorney's Office, E.D.N.Y., Eastern District of New York U.S. Attorney's Office Joins in Collections of Nearly $1.8 Billion in Criminal and Civil Actions in Fiscal Year 2023, https://www.justice.gov/usao-edny/pr/eastern-district-new-york-us-attorneys-office-joins-collections-nearly-18-billion ............................................. 8

U.S. Attorney's Office, S.D.N.Y., U.S. Attorney's Office Collects More Than $2.2 Billion In Civil And Criminal Actions In Fiscal Year 2023, https://www.justice.gov/usao-sdny/pr/us-attorneys-office-collects-more-22-billion-civil-and-criminal-actions-fiscal-year ................................................................................................................ 8

U.S. Dep't of Just., Asset Forfeiture Policy Manual 2023, https://www.justice.gov/criminal/criminal-afmls/file/839521/dl ........................ 8

U.S. Dep't of Just., Total Net Deposits to the Fund by State of Deposit (2023), htttps://www.justice.gov/d9/2024-01/report1_fy2023.pdf ........................8

## INTEREST OF *AMICI CURIAE*[1]

The Cato Institute is a nonpartisan public policy research foundation established in 1977 and dedicated to advancing the principles of individual liberty, free markets, and limited government. Cato's Robert A. Levy Center for Constitutional Studies was established in 1989 to help restore the principles of limited constitutional government that are the foundation of liberty. Toward those ends, Cato publishes books and studies, conducts conferences, produces the annual *Cato Supreme Court Review*, and files amicus briefs in cases implicating its objectives, including in lawsuits involving asset forfeiture.

The Goldwater Institute was established in 1988 as a nonpartisan public policy foundation devoted to principles of limited government, individual freedom, and constitutional protections. Through its Scharf-Norton Center for Constitutional Litigation, Goldwater litigates cases and files amicus briefs when its or its clients' objectives are implicated, and it has represented parties in asset-forfeiture cases in federal and state courts across the country.

The Manhattan Institute (MI) is a nonpartisan public policy research foundation whose mission is to develop and disseminate new ideas that foster

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(a)(2), *amici* state that all parties have consented to the filing of this brief. Further, no party's counsel authored any part of this brief and no person other than *amici* made a monetary contribution to fund its preparation or submission.

greater economic choice and individual responsibility. To that end, MI has sponsored scholarship and filed briefs supporting economic freedom and property rights, including with regard to asset forfeiture.

This case interests *amici* because it involves governmental abuses that endanger constitutionally protected rights and liberties.

## SUMMARY OF ARGUMENT

The Civil Asset Forfeiture Reform Act (CAFRA) was an overwhelmingly bipartisan package of reforms designed to make "innocent property owners . . . whole." H.R. REP. NO. 105-358, at 23 (1997). One such reform is that claimants can recover "attorney fees and other litigation costs" when they have "substantially prevailed" in their civil forfeiture proceeding. 28 U.S.C. § 2465. But in the 24 years since CAFRA's enactment, the government has developed a litigation strategy that seriously undermines this reform by leaving wronged claimants far from whole.

As Claimant-Appellant Richard Ross's brief shows, he has been treated terribly by the government—and he is not an anomaly. Indeed, the principal contribution of this brief is to show that Ross is merely the latest in a long line of innocent victims who, despite CAFRA, have been denied attorney fees as a result of a deliberate government strategy of litigating aggressively but then seeking

voluntary dismissals without prejudice once it is clear a claimant would prevail on the merits.

Analysis of a motion for voluntary dismissal without prejudice under Federal Rule of Civil Procedure 41(a) focuses on whether the defendant would suffer plain legal prejudice or, alternatively, on a host of non-exhaustive factors concerning (among other things) the plaintiff's conduct in the case. Under either standard, the district court erred by granting the government an unconditional dismissal without prejudice.

## ARGUMENT

I. **The government has a recurring practice of seeking last-minute and unconditional dismissals without prejudice in CAFRA cases, thereby preventing wronged claimants from recovering attorney fees.**

   A. **In this case, the government has frustrated CAFRA's plain meaning and Congress's clear intent to provide attorney fees.**

Congress enacted CAFRA to discourage "wrongful government seizures,"[2] and one way the statute does that is by allowing claimants to recover "reasonable attorney fees" from the government whenever the claimant has "substantially prevailed" in the "civil proceeding to forfeit property." 28 U.S.C. § 2465(b)(1). Suing the government can be quite daunting, as the cost of attorney fees can

---

[2] H.R. REP. NO. 106-192, at 11 (1999).

3

outpace the monetary value of the item seized, so the ability to recover attorney fees is a powerful incentive for claimants to bring suits checking forfeiture abuse.[3]

The government's decisions in this case have frustrated CAFRA's stated aim. The government seized the entire contents of a lawyer's Interest on Trust Account, totaling over $4.1 million, even though the government acknowledged, in its application for the seizure warrant, that more than $1.2 million of the funds it sought to seize were "unrelated" to the fraud it was investigating. JA378. In fact, as the lawyer, Claimant-Appellant Richard Ross, advised the government soon after the seizure, that unrelated $1.2 million in funds was actually deposits from his other clients and proceeds from the sale of his own home. But the government still filed a forfeiture action in February 2022 for all funds in the account. After more than a year of litigation that cost him attorney fees in excess of $100,000, Ross sought to move for summary judgment, but when the government learned of Ross's intention to do so, it hastily moved to voluntarily dismiss the case without prejudice. Ross opposed the motion, warning the District Court that granting the government an unconditional dismissal without prejudice could circumvent CAFRA's fee provision and thereby cause prejudice, but the District Court granted the motion nonetheless.

---

[3] *See* Michael Van den Berg, *Proposing a Transactional Approach to Civil Forfeiture Reform*, 163 U. PA. L. REV. 867, 889 & n.114 (2015).

**B. Cases from around the country show that the government's approach in this case is not anomalous, but representative.**

Unfortunately, the events of this case are not unusual. The government, a frequent plaintiff in civil forfeiture actions around the country, often moves for belated voluntary dismissals without prejudice and thereby avoids paying attorney fees under CAFRA. *See, e.g.*, *United States v. 2002 BMW*, No. 4:05-cv-01155 (S.D. Tex. 2005), ECF No. 110, Order at 6–7; *United States v. $13,275.21*, No. 5:06-CV-00171 (W.D. Tex. 2006), ECF No. 84, Order at 5–7; *United States v. One 2008 Toyota Rav 4 Sports Utility Vehicle*, No. 2:09-cv-05672 (C.D. Cal. 2009), ECF No. 28; *United States v. $32,820.56*, No. 5:13-cv-04102 (N.D. Iowa 2013), ECF No. 38, Order at 7; *United States v. Approximately $16,500.00*, No. 1:14-CV-00129 (M.D. Pa. 2014), ECF No. 19, Mem. at 14; *United States v. $107,702.66* (*$107,702.66*), No. 7:14-CV-00295 (E.D.N.C. 2014), ECF No. 35.

The government's deliberate use of voluntary dismissals to avoid paying attorney fees, and the prejudice that strategy causes claimants, was especially apparent in *$107,702.66*. That case is worth examining in detail.

The $107,702.66 referred to in the caption of that case included the life savings of Lyndon McClellan, a convenience store owner. His savings were in the store's bank account. The government filed a complaint against McClellan in December 2014, seeking forfeiture of the funds in the store's account due to

5

alleged "illegal structur[ing]." *$107,702.66*, ECF No. 18, Govt. Motion for Voluntary Dismissal Without Prejudice at ¶ 1. The government seized the entire account, including both the store's money and McClellan's savings. *Id.* The government filed the complaint despite the IRS having released a policy months before stating that the structuring laws would no longer be used against individuals like McClellan, for whom the government had "no probable cause that the funds structured were generated from otherwise unlawful activity." *Id.* at ¶ 8.

In May of 2015, the government filed a motion to dismiss without prejudice. McClellan's counsel challenged the motion, noting that McClellan had already spent $15,000 on attorney fees litigating the case and that, before filing its motion, the government had asked McClellan to waive his right to attorney fees as a condition for the return of his seized money. *$107,702.66*, ECF No. 23, Resp. of Claimants at 2, 12–13. Only after McClellan rejected this offer did the government file its motion to dismiss without prejudice.

The district court denied the government's motion and held that the case should be dismissed with prejudice instead. *$107,702.66*, ECF No. 35, Order at 4. In making this determination, the court observed that it would not be limited to the four factors typically used when deciding motions to dismiss in its circuit. *Id.* at 5. As the Fourth Circuit had itself found, those factors were "non-exclusive," and the purpose of having discretion over voluntary motions to dismiss was "to protect

6

nonmovants from unjust results." *Id.* at 6. Next, the court found that granting the motion would cause injustice by preventing claimants from receiving relief intended for them by Congress. *Id.* at 7. The court reasoned that the right lost is not just that of recovering attorney fees, it is "the right of a citizen to seek the relief Congress afforded" that is enshrined in CAFRA. *Id.* That is, the right to be made whole. *See id.* at 2-3 (citing H.R. REP. NO. 106-192, at 11).

### C. The government, the only forfeiture plaintiff, and the most frequent and sophisticated forfeiture litigant in the federal courts, responds to incentives.

The government has been initiating civil forfeiture actions since America's founding,[4] but the practice had increased dramatically by the end of the 20th century.[5] Cash forfeitures in particular are an area where the government has a strong incentive to conduct as many civil forfeitures as possible.[6] In 2023, nearly two and a half billion dollars were seized by the U.S. Attorney's Offices in New

---

[4] Tamara R. Piety, *Scorched Earth: How the Expansion of Civil Forfeiture Doctrine Has Laid Waste to Due Process*, 45 U. MIAMI L. REV. 911, 935–42 (1991).

[5] Stephen B. Herpel, *Toward a Constitutional Kleptocracy: Civil Forfeiture in America*, 96 MICH. L. REV. 1910, 1916–23 (1998).

[6] *See* LISA KNEPPER ET AL., INSTITUTE FOR JUSTICE, POLICING FOR PROFIT: THE ABUSE OF CIVIL ASSET FORFEITURE 19 (3d ed. 2020); David Pimentel, *Forfeitures Revisited: Bringing Principle to Practice in Federal Court*, 13 NEV. L.J. 1, 31–32 (2012).

7

York State through civil asset forfeiture,[7] with most of that activity coming from the offices in New York City.[8] Prosecution does not follow most seizures, however, meaning the government also has a strong incentive to forfeit property first and worry about the propriety of its seizure later.[9]

The government is aware of the power its motions to dismiss have, as DOJ policy makes clear that attorney fees will not be paid if a voluntary dismissal is ordered by the court. Indeed, the DOJ's Asset Forfeiture Policy Manual 2023 states that "the government is not liable for attorneys' fees where it . . . agrees to voluntary dismissal."[10]

Absent judicial enforcement of Congressional guardrails, the government will continue to use the civil forfeiture system like "a roulette wheel" against

---

[7] U.S. Dep't of Just., Total Net Deposits to the Fund by State of Deposit (2023), https://www.justice.gov/d9/2024-01/report1_fy2023.pdf.

[8] *See* U.S. Attorney's Office, E.D.N.Y., Eastern District of New York U.S. Attorney's Office Joins in Collections of Nearly $1.8 Billion in Criminal and Civil Actions in Fiscal Year 2023, https://www.justice.gov/usao-edny/pr/eastern-district-new-york-us-attorneys-office-joins-collections-nearly-18-billion; U.S. Attorney's Office, S.D.N.Y., U.S. Attorney's Office Collects More Than $2.2 Billion In Civil And Criminal Actions In Fiscal Year 2023, https://www.justice.gov/usao-sdny/pr/us-attorneys-office-collects-more-22-billion-civil-and-criminal-actions-fiscal-year.

[9] Eric Blumenson & Eva Nilsen, *Policing for Profit: The Drug War's Hidden Economic* Agenda, 65 U. CHI. L. REV. 35, 40 (1998).

[10] U.S. Dep't of Just., Asset Forfeiture Policy Manual 2023 at 12-1, https://www.justice. gov/criminal/criminal-afmls/file/839521/dl.

8

"innocent but hapless owners whose property is unforeseeably misused." *Bennis v. Michigan*, 516 U.S. 442, 456 (1996) (Thomas, J., concurring).

The government responds to incentives, however, and will change course if directed to do so by courts.[11]

## II. The district court erred by granting the government an unconditional dismissal without prejudice.

A district court's decision to grant an unconditional dismissal without prejudice is reviewed for abuse of discretion. *Camilli v. Grimes,* 436 F.3d 120, 123 (2d Cir. 2006). Here, the district court exceeded its discretion by granting the government an unconditional dismissal without prejudice.

"Two lines of authority have developed with respect to the circumstances under which a dismissal without prejudice might be improper." *Id.* Under one line, granting an unconditional dismissal without prejudice is improper where the defendant suffers "plain legal prejudice." *Id.* Under the other, determining whether to grant an unconditional dismissal without prejudice "involves consideration of various factors, known as the *Zagano* factors, including (1) the plaintiff's diligence in bringing the motion, (2) any undue vexatiousness on the plaintiff's part, (3) the extent to which the suit has progressed, including the defendant's efforts and expense in preparation for trial, (4) the duplicative expense of relitigation, and (5)

---

[11] Jefferson E. Holcomb, et al., *Civil Asset Forfeiture Laws and Equitable Sharing Activity by the Police*, 17 CRIMINOLOGY & PUB. POL'Y 101, 106 (2018).

9

the adequacy of the plaintiff's explanation for the need to dismiss." *Id.* (citing *D'Alto v. Dahon California, Inc.*, 100 F.3d 281, 283 (2d Cir. 1996), and *Zagano v. Fordham University*, 900 F.2d 12, 14 (2d Cir. 1990)). The *Zagano* factors are not exhaustive. *Kwan v. Schlein*, 634 F.3d 224, 230 (2d Cir. 2011).

As to the first line of authority, Ross's brief ably explains—and Part I of the Argument section reinforces—why an unconditional dismissal without prejudice causes plain legal prejudice to Ross. *See* Brief for Claimant-Appellant at 37–40. If an unconditional dismissal without prejudice means that when it comes to attorney fees the government can sidestep CAFRA's requirement that innocent claimants be made whole—Ross argues that CAFRA should not be applied that way (*id.* at 27–33), but acknowledges that some courts have applied it that way (*id.* at 38–39)—the legal prejudice caused by unconditional dismissal without prejudice is more than plain.

As to the second line of authority, when a district court conducts the *Zagano* analysis in a civil forfeiture case, it should be mindful of the considerations discussed in Part I of this brief. Take, for example, the second and fifth of the non-exhaustive *Zagano* factors: "any undue vexatiousness on the plaintiff's part" and "the adequacy of the plaintiff's explanation for the need to dismiss." *Camilli,* 436 F.3d at 123. One expects that the government's capable attorneys will be able to come up with some explanation or excuse for its conduct in a given case. But when

10

evaluating that explanation or excuse, a district court should bear in mind that the DOJ has policies, practices, and strategies it follows across the many civil forfeiture actions the government initiates; that what may seem like anomalous behavior by the government is in fact systemic; that civil forfeiture is enormously lucrative for the government and must be understood as the billion-dollar industry it is; and that the government is a repeat-player that responds to incentives. In short, a district court should consider the larger context for the specific facts before it. Had the district court here adopted such a perspective, it likely would have avoided the error of concluding that the *Zagano* analysis favored granting the government an unconditional dismissal without prejudice.

## CONCLUSION

For the reasons set forth above and in Claimant-Appellant Ross's brief, the district court erred by granting the government an unconditional voluntary dismissal without prejudice.

Respectfully submitted,

NATHANIEL G. FOELL
CARLTON FIELDS, P.A.
4221 W. Boy Scout Blvd., Ste. 1000
Tampa, FL 33607
(813) 229-4188
nfoell@carltonfields.com

August 16, 2024

/s/ Michael L. Yaeger
MICHAEL L. YAEGER
CARLTON FIELDS, P.A.
405 Lexington Ave, 36th Floor
New York, New York 10174
(212) 785-2577
myaeger@carltonfields.com

*Attorneys for* Amici Curiae

# CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(g) of the Federal Rules of Appellate Procedure, I certify that, according to the word-count feature of the word processing program, this brief contains 2,466 words including headings, footnotes and quotations, but excluding the parts exempted by Fed. R. App. P. 32(f), and therefore is in compliance with the type-volume limitations set forth in Rules 29(a)(5) and 32(a)(7)(B). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionately spaced typeface, specifically, 14-point Times New Roman font, using Microsoft Word in Office 365.

Dated: August 16, 2024

Respectfully submitted,

/s/ Michael L. Yaeger
MICHAEL L. YAEGER
CARLTON FIELDS, P.A.
405 Lexington Ave, 36th Floor
New York, New York 10174
(212) 785-2577
myaeger@carltonfields.com

NATHANIEL G. FOELL
CARLTON FIELDS, P.A.
4221 W. Boy Scout Blvd., Ste. 1000
Tampa, FL 33607
(813) 229-4188
nfoell@carltonfields.com