# 24-1421

## In the United States Court of Appeals for the Second Circuit

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

RICHARD STUART ROSS,

*Claimant-Appellant,*

COMPANY 1,

*Claimant,*

$4,183,402.74 IN U.S. CURRENCY, SEIZED FROM REGIONS BANK ACCOUNT *1113 R.S. IOTA TRUST ACCT, **$722,327.52 In U.S. Currency**, seized from Regions General Ledger (GL) *200 Bearing Cost Code (cc) *300,

*Defendants.*

**On appeal from the United States District Court for the Northern District of New York (Syracuse), 5:22-cv-138**

---

**BRIEF OF *AMICUS CURIAE* INSTITUTE FOR JUSTICE IN SUPPORT OF CLAIMANT-APPELLANT**

---

Paul M. Sherman
*Counsel of record*
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, Virginia 22203
(703) 682-9320
psherman@ij.org

*Counsel for Amicus Curiae*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1(a) the Institute for Justice ("IJ") is a private, nonprofit civil liberties law firm. IJ is not a publicly held corporation and does not have any parent corporation. No publicly held corporation owns 10 percent or more of its stock. No publicly held corporation has a direct financial interest in the outcome of this litigation.

Dated: August 15, 2024

/s/ Paul M. Sherman
*Counsel for* Amicus Curiae
*Institute for Justice*

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT.................................................i

TABLE OF AUTHORITIES ....................................................... iii

INTEREST OF AMICUS CURIAE.......................................................1

SUMMARY OF ARGUMENT ....................................................... 2

ARGUMENT ...........................................................................5

   I.   CAFRA's plain text supports an award of fees, costs, and
interest, even in cases dismissed without prejudice. .....................6

   II.   CAFRA's legislative history supports a broader reading of
"substantially prevails." ..................................................11

   III.   The contrary interpretation of CAFRA leads to perverse
incentives and absurd results.........................................15

CONCLUSION ...........................................................................18

CERTIFICATE OF SERVICE.......................................................19

CERTIFICATE OF COMPLIANCE .......................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re $446,651.11,*
No. 2:14-mc-01288 (E.D.N.Y. filed Oct. 16, 2014) .............................. 16

*Brayton v. Off. of the U.S. Trade Rep.,*
641 F.3d 521 (D.C. Cir. 2011) ............................................................. 10

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health*
*& Hum. Res.,*
532 U.S. 598 (2001) ............................................................ 4, 5, 10, 11

*Hardt v. Reliance Standard Life Ins. Co.,*
560 U.S. 243 (2010) ............................................................................. 7

*Kazazi v. CBP,*
No. 1:18-mc-00051 (N.D. Ohio filed May 31, 2018) ........................... 16

*Martin v. FBI,*
No. 1:23-cv-00618 (D.D.C. filed Mar. 7, 2023) .................................. 16

*Oil, Chem. & Atomic Workers Int'l Union, AFL-CIO v. Dep't*
*of Energy,*
288 F.3d 452 (D.C. Cir. 2002) ............................................................... 9

*Serrano v. CBP,*
No. 2:17-cv-00048 (W.D. Tex. filed Sept. 6, 2017) ............................. 16

*Union of Needletrades, Indus. & Textile Emps. v. INS,*
336 F.3d 200 (2d Cir. 2003) ................................................................... 9

*United States of America v. $107,702.66,*
No. 7:14-cv-00295 (E.D.N.C. filed Dec. 23, 2014) .............................. 16

*United States v. $32,820.52,*
838 F.3d 930 (8th Cir. 2016) ............................................................... 10

*United States v. $33,244.86*,
No. 2:13-cv-13990 (E.D. Mich. filed Sept. 18, 2013) ........................ 16

*United States v. $35,651.11*,
No. 4:13-cv-13118 (E.D. Mich. filed July 19, 2013) ......................... 16

*United States v. $4,183,402.74*,
No. 5:22-cv-138, 2023 WL 2329480 (N.D.N.Y Mar. 2,
2023) ................................................................................................... 11

*United States v. Khan*,
497 F.3d 204 (2d Cir. 2007) ......................................................... 5, 12

*United States v. One Lincoln Navigator 1998*,
328 F.3d 1011 (8th Cir. 2003)..................................................... 12, 17

*United States v. Real Property Located at 2601 W. Ball Road*,
No. 8:12-cv-01345 (C.D. Cal. filed Aug. 21, 2012) ......................... 16

*United States v. Starling*,
76 F.4th 92 (2d Cir. 2023).................................................................. 1

*United States vs. $32,820.56*, No. 5:13-cv-04102 (N.D. Iowa
filed Oct. 24, 2013) ........................................................................... 16

*Vocatura's Bakery, Inc. v. IRS*,
No. 3:16-mc-00147 (D. Conn. filed May 24, 2016) .......................... 16

*Warren v. Colvin*,
744 F.3d 841 (2d Cir. 2014) ............................................................. 10

## Statutes

5 U.S.C. § 552(a)(4)(E)....................................................................... 9

5 U.S.C. § 552(a)(4)(E)(ii) .............................................................. 9, 10

18 U.S.C. § 983(d) ............................................................................. 17

28 U.S.C. § 2465(a) ............................................................................. 8

42 U.S.C. § 1988.................................................................................. 4

iv

42 U.S.C. § 1988(b) ............................................................... 5

Pub. L. No. 106-185, § 2, 114 Stat. 202 ................................. 12

**Other Authorities**

146 Cong. Rec. 5228 (2000) .......................................... 12, 13, 14

H.R. Rep. No. 106-192 (1999) ........................................ 12, 13

Lisa Knepper, et al., *Policing for Profit: The Abuse of Civil
    Asset Forfeiture* (3rd ed. Dec. 2020) ....................................... 1

Richard Miniter*, Ill-Gotten Gains*, Reason (Aug./Sept. 1993) ............... 14

*Substantial,* Merriam-Webster Collegiate Dictionary (10th
    ed. 1993) ............................................................... 7

## INTEREST OF AMICUS CURIAE[1]

The Institute for Justice ("IJ") is a nonprofit public interest law firm committed to defending the essential foundations of a free society. Central to that mission is the defense of property rights. IJ has litigated cases challenging civil forfeiture throughout the country, including at the U.S. Court of Appeals for the Second Circuit. *See, e.g.*, *United States v. Starling*, 76 F.4th 92 (2d Cir. 2023). IJ has also produced extensive original research on the abuse of civil forfeiture at the federal, state, and local level and the financial incentives that drive that abuse. *See, e.g.*, Lisa Knepper, et al., *Policing for Profit: The Abuse of Civil Asset Forfeiture* (3rd ed. Dec. 2020), https://ij.org/report/policing-for-profit-3/.

IJ is particularly concerned about the incentives created by the ruling below, which held that even when a claimant in a civil forfeiture case recovers all of his money and the case against him is dismissed and cannot be refiled, that claimant is categorically barred from recovering attorneys' fees under CAFRA if dismissal is entered without prejudice.

---

[1] No party's counsel authored any portion of this brief. No party or person—other than Amicus—contributed money intended to fund preparing or submitting this brief. All parties have consented to the filing of this brief.

1

As explained in this brief, that rule is not supported by the text or legislative history of CAFRA and will create strong incentives for federal officials to pursue questionable forfeitures that they would be unlikely to pursue if they knew they risked having to pay a successful claimant's attorneys' fees.

## SUMMARY OF ARGUMENT

When the government unlawfully seizes a person's property through civil forfeiture, the owner of that property has one interest: getting it back. They don't care how they get it back or why they get it back—they just care *that* they get it back. For the civil forfeiture claimant, return of the seized property is the only measure of success that matters.

Once forfeiture claimants get their money back, their next concern is being made whole. Contesting a forfeiture action isn't cheap, and the legal fees to do so can rapidly outstrip the value of the forfeited property. For many years, this fact placed forfeiture claimants in a bind: Even where the government had unlawfully seized their cash or other property, fighting to get that property back might not be worth it,

2

a threat that was particularly acute to victims of forfeiture abuse who had relatively small amounts of money seized.

Recognizing this problem, Congress enacted the Civil Asset Forfeiture Reform Act of 2000. Among other things, that law contained a mandatory fee-shifting requirement, under which the federal government must reimburse the legal expenses of any claimant who "substantially prevails" in a forfeiture action.

Unfortunately, the ruling below—and the rulings of other courts to have considered similar situations—has given the federal government a simple trick to get out of CAFRA's mandatory fee-shifting provision. It works like this: Whenever the government decides that a forfeiture action has become more trouble than it's worth, it moves to voluntarily dismiss the case and return the money. But because those dismissals are typically entered without prejudice—and the government could theoretically refile the action if it chose—courts declare that the claimant has not actually prevailed. Even if the claimant got all their money back. Even if the government has no intention of ever refiling the forfeiture action against them. Even if—as in this case—the government is actually barred from refiling by the relevant statute of

3

limitations. And no matter how much the claimant racked up in attorneys' fees before the government threw in the towel.

To justify this result, the court below and other courts have relied on the Supreme Court's ruling in *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598 (2001), in which the Supreme Court considered the requirements to be a "prevailing party" under 42 U.S.C. § 1988.

Appellant's opening brief explains why Mr. Ross should have prevailed even under the more stringent test adopted in *Buckhannon*. *See* Appellant's Br. at 32–33. In this brief, however, Amicus will explain why *Buckhannon* should not even apply to CAFRA's fee-shifting provision. As explained in more detail below, CAFRA's language— awarding fees to any party who "substantially prevails"—is broader than the "prevailing party" language used in § 1988 and does not carry with it the same limitations. This understanding is supported not only by CAFRA's text, but by the legislative history surrounding its enactment, which shows that the overriding purpose of the fees-shifting provision was to make successful forfeiture claimants whole. Finally, this understanding is further supported by the perverse incentives and

4

absurd results that follow from the crabbed view of "substantially prevails" adopted by the court below.

## ARGUMENT

"In passing CAFRA, Congress was reacting to public outcry over the government's too-zealous pursuit of civil and criminal forfeiture." *United States v. Khan*, 497 F.3d 204, 208 (2d Cir. 2007). "As part and parcel of this effort to deter government overreaching, Congress provided for the payment of 'reasonable attorney fees and other litigation costs' to claimants who 'substantially prevail[]' in a 'civil proceeding to forfeit property.'" *Id.*

The court below, like some others to have considered the question, assumed that CAFRA's use of the phrase "substantially prevails" is synonymous with the distinct but similar statutory term "prevailing party." *See, e.g.*, 42 U.S.C. § 1988(b). As a result the court looked to the Supreme Court's test for determining prevailing-party status, which turns, in part, on whether a case resulted in a "court-ordered . . . material alteration of the legal relationship of the parties." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 604 (2001) (cleaned up). And because dismissal without prejudice technically

leaves the government free to refile the same forfeiture action again—although this almost never happens in practice and would be barred here by the statute of limitations—the court held that Mr. Ross is not a "prevailing party" and is not entitled to be made whole, regardless of how much it cost him in attorneys' fees before the government surrendered.

It is tough to imagine a result more at odds with Congress's purposes in enacting CAFRA. Nor is that result compelled by *Buckhannon* or CAFRA's text. As explained in Section I, CAFRA's text is broader than the text of § 1988. As explained in Section II, this variation was the result of a deliberate choice by Congress that was rooted in how civil forfeiture operates—most notably, that claimants are pulled into it unwillingly. Finally, as explained in Section III, the narrow interpretation of "substantially prevails" adopted by the court below will create perverse incentives for federal agencies and absurd results for victims of the most egregious forfeiture abuses. This Court should thus reverse the ruling below

## I. CAFRA's plain text supports an award of fees, costs, and interest, even in cases dismissed without prejudice.

Congress's choice of language indicate4s that an award of fees, costs, and interest should not turn on fine procedural distinctions.

6

CAFRA provides that an award of fees, costs, and interest should be available wherever a civil forfeiture claimant has "substantially prevailed" in the litigation, not just when a claimant prevails on a final ruling on the merits. The facts in Mr. Ross's case fall within the limits of CAFRA's language.

The word "substantially" is defined to mean "consisting of or relating to substance." *Substantial,* Merriam-Webster Collegiate Dictionary 1174 (10th ed. 1993). And Congress's use of this word also indicates that something short of a final judgment on the merits can support an award of fees, as the word "substantially" is further defined to mean "largely *but not wholly* that which is specified." *Id.* (emphasis added). In other words, the word "substantially" directs courts to look to the substance of the result achieved to see if the claimant has "largely" prevailed in the litigation—allowing for something less than "wholly" prevailing as a formal procedural matter. And the Supreme Court, for its part, has confirmed that there is a difference between statutes that award relief to a prevailing party, and statutes that award fees to a party that substantially prevails. *See Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 243, 253 (2010) ("Most fee-shifting provisions permit a court to

7

award attorney's fees only to a 'prevailing party.' Others permit a 'substantially prevailing' party or a 'successful' litigant to obtain fees." (footnotes omitted)).

Statutory context confirms this interpretation; when CAFRA's drafters wanted to refer to a formal judgment for the claimant, they did so explicitly. While CAFRA's provision for fees, costs, and interest appears in section 2465(b)(1), the preceding section directs the court to issue a certificate that "there was reasonable cause for the seizure or arrest" of the property "[u]pon the entry of a judgment for the claimant." 28 U.S.C. § 2465(a). In other words, while the provisions of subsection (a) are triggered by the formal entry of a "judgment," the provisions of subsection (b) turn on the substance of the result achieved in the litigation. The contrast between these two phrases used in such close proximity—one referring to "entry of judgment" and the other referring to a claimant who has "substantially prevail[ed]"—is significant. It reaffirms that Congress did not intend for the availability of fees, costs, and interest to turn on the formal niceties of the "judgment" entered in a forfeiture action.

Indeed, in an analogous context, Congress responded swiftly to correct this Court's overly narrow interpretation of identical statutory language. Like CAFRA, the Freedom of Information Act's ("FOIA") fee-shifting provision also awards fees to any party who "substantially prevail[s]." 5 U.S.C. § 552(a)(4)(E). In the wake of *Buckhannon*, both this Court and the D.C. Circuit interpreted that provision to be synonymous with "prevailing party" fee-shifting provisions. *See Union of Needletrades, Indus. & Textile Emps. v. INS*, 336 F.3d 200, 206 (2d Cir. 2003); *Oil, Chem. & Atomic Workers Int'l Union, AFL-CIO v. Dep't of Energy*, 288 F.3d 452, 454–55 (D.C. Cir. 2002).[2]

Shortly thereafter, Congress made clear that this interpretation was contrary to congressional intent, passing the OPEN Government Act of 2007, which amended FOIA's fee-shifting provision to correct this Court's misreading of what it means to "substantially prevail[]." 5 U.S.C. § 552(a)(4)(E)(ii). Under the Act, a claimant substantially prevails when she "has obtained relief through either . . . a judicial order, or an enforceable written agreement or consent decree; or . . . a

---

[2] *Needletrades*' interpretation of FOIA's fee-shifting provision no longer applies because Congress amended it in 2007. To the extent *Needletrades* has any bearing on other statutes' fee-shifting provisions, it is dicta.

9

voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii). "Congress intended this amendment to prevent federal agencies from denying meritorious FOIA requests, only to voluntarily comply with a request on the eve of a trial to avoid liability for litigation costs." *Warren v. Colvin,* 744 F.3d 841, 845 (2d Cir. 2014) (citing *Brayton v. Off. of the U.S. Trade Rep.*, 641 F.3d 521, 525 (D.C. Cir. 2011)).

Courts, including the Second Circuit, now hold that "FOIA . . . provides for the recovery of litigation costs where an agency voluntarily complies with a records request." *Warren*, 744 F.3d at 845. A FOIA claimant has "substantially prevailed," regardless of the proportion of documents obtained to the amount initially requested. And Congress's guidance should inform this Court's ruling here. While "not dispositive, there is a general practice of treating federal fee shifting statutes consistently." *United States v. $32,820.52*, 838 F.3d 930, 935 (8th Cir. 2016) (citing *Buckhannon*, 532 U.S. at 603 & n.4).

Looking to the substance of the result achieved here, there can be no serious question that Mr. Ross has substantially prevailed. He has obtained the return of his money—the $1,213,113.11 that the

10

government seized more than two years ago was returned to him.
Although dismissal was entered without prejudice, the government
cannot refile its forfeiture claim because it is barred under the
applicable statute of limitations. And "by voluntarily withdrawing the
action as to the Contested Funds, the government [has] conced[ed] that
the Contested Funds are not forfeitable." *United States v.
$4,183,402.74*, No. 5:22-cv-138, 2023 WL 2329480, \*5 (N.D.N.Y Mar. 2,
2023).[3] In short, the court below recognized what we all know to be true:
Even though the dismissal in this case was entered without prejudice to
refiling, there is no realistic possibility of that ever happening.

## II. CAFRA's legislative history supports a broader reading of "substantially prevails."

CAFRA's legislative history further supports this interpretation of
the plain text. Congress intended to curb forfeiture abuses and help

---

[3] This fact alone may satisfy *Buckhannon*'s more restrictive legal
standard. Unlike voluntary cessation in a private-plaintiff lawsuit, the
government's decision to voluntarily return property in a civil forfeiture
action *does* give rise to a "material alteration of the legal relationship of
the parties." *Buckhannon*, 532 U.S. at 604. At the start of the litigation,
the government had lawful possession of Mr. Ross's property, but, when
the government terminated its complaint, it lost any legal basis to retain
possession and, accordingly, the court ordered the government to return
the money to Mr. Ross. *See* Doc. 35.

make property owners whole after wrongful seizures. *See United States v. One Lincoln Navigator 1998*, 328 F.3d 1011, 1012 n.1 (8th Cir. 2003) (stating that CAFRA was enacted "to make federal civil forfeiture procedures fair to property owners and to give owners innocent of any wrongdoing the means to recover their property and make themselves whole after wrongful government seizures" (quoting H.R. Rep. No. 106-192, at 11 (1999) and citing Pub. L. No. 106-185, § 2, 114 Stat. 202)); *cf. United States v. Khan*, 497 F.3d 204, 208 (2d Cir. 2007) ("In passing CAFRA, Congress was reacting to public outcry over the government's too-zealous pursuit of civil and criminal forfeiture.").

CAFRA made "eight 'core reforms.'" *One Lincoln Navigator*, 328 F.3d at 1012 n.1. According to Representative Henry Hyde of Illinois (CAFRA's principal sponsor), among these "core reforms" was the provision of attorneys' fees to any "claimant [who] substantially prevails." 146 Cong. Rec. 5228 (2000) (discussing the bill's "eight fundamental reforms").

CAFRA was intended to rectify the very type of harm Mr. Ross has experienced. Indeed, testimony in the House Judiciary Committee, which Representative Hyde then chaired, supports a finding that a

12

person in Mr. Ross's position should be a "claimant [who has] substantially prevail[ed]." *See id.* at 5230 (stating that "the House Judiciary Committee Report remains the best legislative history" because no report was prepared in the Senate); 5233 (noting Hyde chaired the Judiciary Committee). The Committee heard the case of Billy Munnerlyn, whose story closely mirrors Mr. Ross's experience. H.R. Rep. 106-192 at 9. Mr. Munnerlyn told the committee how his airplane-charter business was ruined after he unwittingly flew a drug dealer from Arkansas to California and, when they landed, his airplane was seized. *Id.* at 8–9. Like Mr. Ross, Mr. Munnerlyn was not charged with a crime but had to spend a lot of money to get his money back— over $85,000. *Id.* Committee members heard how Munnerlyn's air-charter business went bankrupt because of his legal expenses and heard how he was working as a truck driver to make ends meet. *Id.* When CAFRA later came to the House floor for final passage, Representative Hyde described the purpose of the new fee-shifting provision as follows:

> The bill provides that property owners who substantially prevail in court proceedings challenging the seizure of their property will receive reasonable attorney's fees. . . . Currently, property owners who successfully challenge the seizure of their property almost never are awarded attorney's fees.

13

146 Cong. Rec. 5228 (2000).

Representative Sheila Jackson-Lee of Texas—also a member of the Judiciary Committee—echoed the experience of Billy Munnerlyn when she encouraged members to vote for CAFRA. *See id.* at 5233 (noting that, under then-current law, a "property owner may exhaust his or her financial assets in attorney's fees to fight for the return of property"). She stressed the government's disproportionate power in forfeiture proceedings and called on members to restore basic fairness. *Id.* ("These reforms simply balance the scales so that innocent people have a level playing field on which to challenge improper seizures.").

Notably, Mr. Munnerlyn's story was cited as the paradigmatic example of why fee-shifting was necessary, even though his case ultimately ended with Mr. Munnerlyn paying more than $15,500 to settle the case and buy back his seized plane. Richard Miniter*, Ill-Gotten Gains*, Reason (Aug./Sept. 1993), available at https://reason.com/1993/08/01/ill-gotten-gains/. All of this shows how CAFRA was meant to correct what Congress viewed as a fundamental inequity in the nation's forfeiture laws: the high price that innocent people must pay to reclaim their property.

14

Nothing in CAFRA's text or legislative history suggests that a claimant who obtains a dismissal without prejudice is categorically barred from recovering attorneys' fees, costs, and interest. In fact, the opposite is true: Congress wanted people to be compensated for their attorneys' fees and expenses when they succeed "substantially" in getting their property back. And Congress was particularly concerned about cases, like this case, in which innocent people run up huge legal bills in the process.

## III. The contrary interpretation of CAFRA leads to perverse incentives and absurd results.

The ruling below not only conflicts with CAFRA's text and legislative history, it also produces absurd results and perverse incentives for government. It gives government agents the incentive to seize first and ask questions later, knowing that the government will rarely end up on the hook for attorneys' fees if it later decides that a forfeiture is no longer worth pursuing.

This is not a hypothetical. On the contrary, it is a pattern that Amicus has seen play out again and again in which the government seizes property and vigorously pursues forfeiture, only to abandon the

forfeiture once the claimant retains legal counsel.[4] Unfortunately, public-interest firms like Amicus can take on only a fraction of meritorious forfeiture challenges, which means that most claimants will end up paying out of pocket.

These incentives benefit no one. Indeed, perversely, under the ruling below, in a civil forfeiture action supported by better facts than those presented, a claimant would have a *higher* chance of recovering fees

---

[4] *See Martin v. FBI,* No. 1:23-cv-00618 (D.D.C. filed Mar. 7, 2023) (motion to dismiss filed June 8, 2023 (Doc. 15)); *Kazazi v. CBP*, No. 1:18-mc-00051 (N.D. Ohio filed May 31, 2018) (government began process of returning money within one week, see Minutes of Proceedings of June 7, 2018 (Doc. 8)); *Serrano v. CBP*, No. 2:17-cv-00048 (W.D. Tex. filed Sept. 6, 2017) (property returned Oct. 16, 2017; motion to dismiss filed Dec. 13, 2017); *Vocatura's Bakery, Inc. v. IRS*, No. 3:16-mc-00147 (D. Conn. filed May 24, 2016) (dismissed June 17, 2016 following government's voluntary return of property); *United States of America v. $107,702.66*, No. 7:14-cv-00295 (E.D.N.C. filed Dec. 23, 2014) (notice of appearance by IJ attorneys filed Apr. 30, 2015; government's motion to dismiss filed May 13, 2015); *In re $446,651.11*, No. 2:14-mc-01288 (E.D.N.Y. filed Oct. 16, 2014) (case dismissed Jan. 21, 2015); *United States vs. $32,820.56*, No. 5:13-cv-04102 (N.D. Iowa filed Oct. 24, 2013) (notice of appearance by IJ attorneys filed Oct. 13, 2014; government's motion to dismiss filed Dec. 13, 2014); *United States v. $33,244.86*, No. 2:13-cv-13990 (E.D. Mich. filed Sept. 18, 2013) (notice of appearance by IJ attorneys filed Nov. 4, 2013; government motion to dismiss filed Nov. 15, 2013); *United States v. $35,651.11*, No. 4:13-cv-13118 (E.D. Mich. filed July 19, 2013) (notice of appearance by IJ attorneys filed Sept. 20, 2013; government motion to dismiss filed Nov. 15, 2013); *United States v. Real Property Located at 2601 W. Ball Road*, No. 8:12-cv-01345 (C.D. Cal. filed Aug. 21, 2012) (stipulation of dismissal entered Oct. 10, 2013).

because the government would likely allow the case to progress further. Conversely, claimants like Mr. Ross would be barred from receiving attorneys' fees precisely because they could show relatively early on that the government's claim lacked merit. Put differently, awards are more likely in cases where the government's case is strong and unavailable when the government's case lacks merit.

That result conflicts with CAFRA's purpose of "giv[ing] owners innocent of any wrongdoing the means to recover their property and make themselves whole after wrongful government seizures." *See One Lincoln Navigator*, 328 F.3d at 1012 n.1 (citations omitted). It would also render its core provision, the "innocent owner defense," severely weakened. *See* 18 U.S.C. § 983(d). If the cost of litigation is more than the value of the assets seized and if a defendant has a strong case, no reasonable defendant would risk the likely outcome of incurring extra expenses by defending herself in court.

This Court need not reach that absurd result. In keeping with CAFRA's text and Congress's intent, the Court should hold that Mr. Ross is entitled to attorneys' fees, costs, and interest.

## CONCLUSION

This Court should reverse the ruling below and hold that Mr. Ross substantially prevailed under CAFRA.

Dated: August 15, 2024.        Respectfully submitted,

s/ Paul M. Sherman
Paul M. Sherman
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, Virginia 22203
(703) 682-9320
psherman@ij.org
*Counsel for* Amicus Curiae
*Institute for Justice*

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2024, I caused the foregoing document to be filed electronically with the Clerk of the Court of the United States Court of Appeals for the Second Circuit by using the Court's ACMS system, which will send notice of such filing to all registered CM/ECF/ACMS users.

/s/ Paul M. Sherman
*Counsel for* Amicus Curiae
*Institute for Justice*

## CERTIFICATE OF COMPLIANCE

Under Federal Rule of Appellate Procedure 32(g), I hereby certify that:

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) because this brief contains 3,531 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) because this brief has been prepared using Microsoft Office Word and is set in Century Schoolbook font in a size equivalent to 14 points or larger.

/s/ Paul M. Sherman
*Counsel for* Amicus Curiae
*Institute for Justice*